UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ADENA, Deceased, by and through his Co-Successors in Interest, CIRCE ADENA and RICHARD ADENA; et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SHASTA COUNTY, a public entity; et al.,<br><br>Defendants. | No. 2:21-cv-00770-MCE-DMC<br><br>**MEMORANDUM AND ORDER** |

Through this action, Plaintiffs Circe Adena and Richard Adena ("Plaintiffs"), successors-in-interest of Michael Adena ("Decedent"), on behalf of themselves, jointly and individually, and as successors-in-interest of Decedent, seek to recover for violations of his rights that resulted in his death while in the custody of the Shasta County Sheriff. Presently before Court is a Motion to Dismiss filed by Defendants California Forensic Medical Group, Inc., Wellpath Management, Inc., Wellpath LLC, Tracy Lewis, L.M.F.T., Pam Johansen, L.C.S.W., and Daniel Dellwo, P.A. (collectively,

1

the "Wellpath Defendants").  ECF 59.  For the reasons set forth below, the Motion to Dismiss is GRANTED with leave to amend.[1]

## BACKGROUND

Wellpath is the largest for-profit correctional healthcare provider in the United States, providing healthcare for over 550 correctional facilities in 36 states.  First Amended Complaint ("FAC"), ECF No. 38 ¶ 75.  At the time of this incident, Shasta County Jail's mental and medical healthcare services were provided by Defendant California Forensic Medical Group, Inc., one of the 65 entities within the "Wellpath family."  Id. ¶ 76.

On August 21, 2019, Decedent was admitted to the Shasta County Jail on two misdemeanor charges after allegedly violating California Penal Code § 148(a)(1), resisting or obstructing a peace officer in the performance of his duties, and § 594(a)(1), vandalism, in Shasta Lake City, California.  Id. ¶ 29.  On several occasions during his incarceration at Shasta County Jail, Wellpath Defendants conducted various forms of mental health checks on Decedent, beginning with contacting his parents, Plaintiffs here, on August 22, 2019, to learn of his mental health history and whether they knew if he had suicidal ideations.  Id. ¶ 37.  Plaintiffs informed Defendant Traci Lewis, L.M.F.T., that Decedent had exhibited symptoms of mental illness after losing his job and home.  Id.

The next day, August 23, 2019, Decedent was promptly evaluated in a mental health clinic by Defendant Pam Johansen.  Id. ¶ 38.  Johansen had limited success in extracting information from Decedent, which she speculated may have been due to the presence of deputies, so she followed up with Decedent again the following day.

---

[1] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Local Rule 230(g).

2

Id. ¶ 39. She noted that Decedent experienced "auditory hallucinations and expressed feelings of hopelessness, helplessness, and guilt/worthlessness related to losing his job and becoming homeless." Id. During a second evaluation conducted that same day, Decedent noted that he had finally slept after being awake for three days.

On August 26, 2019, Defendant Daniel Dellwo, P.A., evaluated Decedent, concluding that despite having no mental health history, he was "clearly struggling with these issues." Id. ¶ 41. In response to questioning, Decedent replied, "I don't need any fucking [mental health] meds," and attempted to run out of the medical exam room. Id. He was subsequently tackled to the ground by multiple County officers, despite already being restrained by body chains. Id. ¶ 42. Decedent was then restrained, tased, and forcibly controlled by County officers. Id. ¶ 45.

Officers then scheduled Decedent for a rules violation hearing, at which he was found guilty. Id. ¶ 46. He received 30 days disciplinary lockdown and loss of all privileges from September 6, 2019, until October 6, 2019. Id.

On or about September 16, 2019, Decedent was taken to the Shasta Regional Medical Center emergency room after he reportedly fell off the top of his bunk bed, hit the back of his head on the floor, and suffered lacerations on his scalp, for which he received treatment. Id. ¶ 47. Upon his return to the jail, a Wellpath psychiatrist wrote Decedent a prescription for anxiety and scheduled a follow up appointment. Id. ¶ 48. At that follow up appointment, Defendant Dellwo determined that Decedent's injuries were likely the result of self-harm and recommended that he be placed in a safety cell. Id. ¶ 49.

Subsequently, as recommended, Decedent was placed in a safety cell at the Shasta County Jail. Id. ¶ 50. There, County deputies checked on him four times throughout the day. Id. ¶ 51. During his time in the safety cell, Decedent continued to claim that his injuries were merely the result of a fall from his bunk. Id. ¶ 52. Nevertheless, over the course of the next three days, Decedent remained in the safety

cell and received intermittent checks from deputies throughout each day. Id. ¶ 53—60. On September 20, 2019, Johansen assessed Decedent and determined that he was too unstable to remove from the safety cell. Id. ¶ 62. The next day, during yet another mental health evaluation, she finally concluded that Decedent could be discharged from that cell and removed from suicide watch protocol. Id. ¶ 64.

That same day, Decedent informed Johansen that he was sick, needed to see medical, and was vomiting. Id. ¶ 66. Johansen told Decedent that she would advise the nursing staff, but Decedent did not receive medical treatment that day. Id.

On the following day, on September 22, 2019, Decedent was found lying on his side next to his toilet, flailing his arm, with a brown or purple foam coming out of his mouth. Id. ¶ 67. At the direction of a Wellpath nurse, he was immediately removed to the medical unit for assessment. Id. Forty-five minutes later, Decedent was pronounced dead. Id. ¶ 71.

Decedent's autopsy listed carotid artery dissection of unclear etiology as the cause of death, with hyponatremia as a significant condition.[2] Id. ¶ 83. The manner of death was undetermined. Id.

## STANDARD

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6),[3] all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the

---

[2] A full list of Decedent's injuries, taken from the autopsy report, is shown at ¶ 84 of Plaintiff's FAC.

[3] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure.

4

defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted).  A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright & Miller, supra, at 94, 95).  A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570.  If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id.  However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend.  Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice

to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs., Inc. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . .")).

**ANALYSIS**

Plaintiffs set forth claims against individual Defendants Lewis, Johansen, and Dellwo on several theories. First, Plaintiffs pursue constitutional claims under 42 U.S.C. § 1983 on the basis that these Defendants used excessive and unreasonable force and restraint against Decedent. Second, Plaintiffs contend the individual Defendants were deliberately indifferent to Decedent's serious medical needs. Based on these violations, Plaintiffs also seek to recover for their own injuries under given their loss of familial association with Decedent. Finally, as to the individual Defendants, Plaintiffs have attempted to state a claim under state law for violation of California Civil Code § 52.1. As for the Wellpath entity Defendants, Plaintiffs contend that these underlying acts were implicitly authorized by Wellpath's policies and procedures, rendering the entities liable as well under Monell v. Dep. of Soc. Servs. of New York, 436 U.S. 658, 658 (1978).

1  Plaintiffs concede that they have not stated an excessive force cause of action
2  against the individual Wellpath Defendants and do not object to the dismissal of that
3  claim.  Pl.'s Opp. at 9.  Plaintiffs' remaining causes of action all rise and fall with their
4  deliberate indifference claim, which the Court finds insufficiently pled.  Accordingly,
5  Defendants' Motion to Dismiss is granted in its entirety.

**A.  Plaintiffs have not stated a viable § 1983 claim.**

To state a claim under § 1983, a plaintiff must allege both: "(1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law."  Long v. Cnty. of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing West v. Atkins, 487 U.S. 42, 48 (1988)).  Within the context of prison healthcare, it is "deliberate indifference to serious medical needs of prisoners [that] constitutes the unnecessary and wanton infliction of pain … proscribed by the Eighth Amendment."  Estelle v. Gamble, 429 U.S. 97, 104 (1976) (internal quotations and quotation marks omitted).

This standard has two prongs.  First, a plaintiff must allege a serious medical need such that "failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) (citing id.) (overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997)).  Second, a plaintiff must allege that the defendant's response to this need was deliberately indifferent, which is "satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing Estelle, 429 U.S. at 104).

Indifference may appear "when prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care."  McGuckin, 974 F.2d at 1059 (quoting Hutchinson v.

7

United States, 838 F.2d 390, 392 (9th Cir. 1988).  In this circuit, the elements of a pretrial detainee's medical care claim against an individual defendant are as follows:

> (i) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

Gordon v. Cnty. of Orange, 888 F.3d 1118, 1124—25 (9th Cir. 2018).  "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn on the 'facts and circumstances of each particular case.'"  Castro v. Cnty. of Los Angeles, 833 F.3d 1060, 1071 (9th Cir. 2016) (quoting Kingsley v. Hendrickson, 576 U.S. 389, 396 (2015)).

On its own, however, mere negligence in treating or diagnosing a medical condition does not violate a prisoner's Eighth Amendment rights.  Estelle, 429 U.S. at 106.  Similarly, a mere difference of opinion regarding the manner or quality of medical treatment is also insufficient to establish deliberate indifference.  Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004) (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)); Francis v. Hammond, 673 Fed.Appx. 661, 663—64 (9th Cir. 2016) (citing Jackson, 90 F.3d at 332).

Here, Plaintiffs fail to adequately allege facts demonstrating deliberate indifference by the individual Defendants.  As alleged, these facts fall within the realm of a simple difference of medical opinion to, at most, "mere negligence in … treating a medical condition."  Hutchinson, 838 F.2d at 394 (citing Estelle, 429 U.S. at 106).

The Court finds Hutchinson informative.  In that case, as here, the plaintiff alleged that jail medical staff was deliberately indifferent to her medical needs.  Id.  In affirming the dismissal, the Ninth Circuit disagreed, finding it significant that "prison officials and

1    the medical staff were attentive to her needs," that she was seen promptly upon
2    exhibiting symptoms, and received follow-up check-ins from the prison warden. Id. That
3    plaintiff had received tests and medication in accordance with the doctor's good-faith
4    assessment of her condition. Id. Indeed, the depositions of the medical professionals
5    who treated the plaintiff "supported the conclusion that the defendants were not even
6    negligent, much less 'deliberately indifferent' to [the plaintiff's] medical needs." Id.

7          Here, like Hutchinson, Plaintiff's alleged facts demonstrate an adequate level of
8    attentiveness to defeat allegations of deliberate indifference. Immediately after incurring
9    his head injury, Decedent was brought to the emergency room at Shasta Medical
10   Center. After clearance, and upon return to the jail, he was given psychiatric
11   consultation, a prescription for anxiety, and a follow-up appointment. Both the
12   immediacy and the ongoing nature of Decedent's psychiatric treatment are material
13   here.

14         Indeed, upon Defendant's determination that Decedent may actually have harmed
15   himself (despite Decedent's repeated denials), he was placed in a designated safety cell
16   designed to prevent further self-harm. In this cell, Decedent was given a safety smock
17   and blanket, receiving one-on-one observations from officers every few hours. Even if
18   the frequency of observation deviated from Wellpath's policy, this Court is hard-pressed
19   to understand how all these precautions add up to deliberate indifference to Decedent's
20   serious mental health needs. From day one, Defendants demonstrated a clear
21   commitment to Decedent's safety.

22         Moreover, even during Decedent's time in the safety cell, he received several
23   mental health sick calls and psychiatry appointments. Plaintiffs do not allege that any
24   Defendants were ever informed of any further health issues, yet Defendants continued to
25   check in on, and follow up with, Decedent.

26         With respect to Decedent's release from the safety cell, Plaintiffs allege no facts
27   demonstrating deliberate indifference on the part of any defendant. Regardless of the
28

correctness of the decision, "there must be a *conscious* disregard of a serious risk of harm for deliberate indifference to exist." Toguchi, 391 F.3d at 1059 (citing Lolli v. Cnty. of Orange, 351 F.3d 410, 421 (9th Cir. 2003)).  Plaintiffs do not allege that Decedent was even suicidal at the time of his release, much less that Defendants consciously disregarded that risk resulting in his death.[4]  Instead, Plaintiffs make generalized statements regarding generally-accepted truths about mental health, FAC ¶ 64, but do not allege facts demonstrating that any Defendant consciously disregarded a serious risk to Decedent's medical needs, particularly given his apparent changes in behavior prior to release.  These claims are dismissed.

### B. Plaintiffs' loss of familial association and Monell claims also fall short.

Both the loss of familial association claims and the Monell claims against the Wellpath Defendants require an underlying § 1983 violation to succeed.  Lockett v. Cnty. of Los Angeles, 977 F.3d 737, 740 (9th Cir. 2020) ("A Monell claim is derivative of a claim against the officer and requires an underlying civil rights claim against an officer") (internal quotations and quotation marks omitted); Pl.'s Opp. to Mot. to Dismiss at 12 ("This [loss of familial association] claim is essentially derivative of Decedent John Adena's medical needs claim").  Because Plaintiffs fail to state a viable constitutional claim against the Wellpath Defendants, these additional claims necessarily fail as well and are dismissed.

### C. Plaintiffs do not allege adequate facts to support a survival claim under the Bane Act, Cal. Civ. Code § 52.1.

Section 52.1 "provides a cause of action for violations of a plaintiff's state or federal civil rights committed by 'threats, intimidation, or coercion.'"  Chaudhry v. City of

---

[4] While the FAC seems to imply that Decedent's death was the result of a suicide, it is not explicitly stated.  If Decedent indeed died by wounds that were not self-inflicted, it becomes even less clear how these Defendants meet any of prongs (ii), (iii), or (iv) of the objective indifference standard laid out above and in Gordon, 888 F.3d at 1124—25 and Castro, 833 F.3d at 1073.

1 Los Angeles, 751 F.3d 1096, 1105 (9th Cir. 2014) (quoting Cal. Civ. Code § 52.1).
2 Thus, there are two distinct elements of a § 52.1 claim: "(1) intentional interference or
3 attempted interference with a state or federal constitutional or legal right, and (2) the
4 interference or attempted interference was by threats, intimidation or coercion."
5 McFarland v. City of Clovis, 163 F.Supp.3d 798, 806 (E.D. Cal 2016) (citing Allen v. City
6 of Sacramento, 183 Cal.Rptr.3d 654 (2015)).  To prevail on a Bane Act claim, a plaintiff
7 must show that the defendant acted with specific intent to violate their constitutional
8 right.  See Reese v. Cnty. of Sacramento, 888 F.3d 1030, 1043 (9th Cir. 2018) (quoting
9 Cornell v. City and Cnty. of San Francisco, 225 Cal.Rptr.3d 356, 383 (2017)) ("the
10 egregiousness required by Section 52.1 is tested by whether the circumstances indicate
11 the arresting officer had a specific intent to violate the arrestee's right to freedom from
12 unreasonable seizure").

13 Ultimately, "a plaintiff advancing a Bane Act claim for deliberate indifference to his
14 serious medical needs is … alleging prison officials *knowingly* deprived him of a
15 constitutional right or protection through acts that are inherently coercive and
16 threatening." Atayde v. Napa State Hospital, No. 1:16-cv-00398-DAD-SAB, 2016 WL
17 4943959, at *8 (E.D. Cal. 2016) (emphasis added).  Housing a prisoner in an
18 inappropriate cell, failing to provide a mental health treatment plan, and failing to provide
19 sufficient observations would qualify as inherently coercive and threatening acts.
20 Lapachet v. California Forensic Medical Group, Inc., 313 F.Supp.3d 1183, 1195 (E.D.
21 Cal 2018) (citing id. at *8, n.1).

22 Here, for the reasons discussed above, Plaintiffs do not allege facts sufficient to
23 support the conclusion that any of the Wellpath Defendants acts were taken to knowingly
24 deprive Decedent of his constitutional rights, or with deliberate indifference to
25 Decedent's constitutional rights.  As alleged, Defendants made good-faith efforts to treat
26 Decedent.  In these efforts, Defendants do not exhibit the level of specific intent required
27 to sustain a claim under the Bane Act.  These claims are dismissed.

28

**CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss, ECF No. 59, is GRANTED. Not later than twenty (20) days from the date this Memorandum and Order is electronically filed, Plaintiff may, but is not required to, file an amended complaint. If no amended pleading is timely filed, the claims dismissed by virtue of this Order will be deemed dismissed with prejudice upon no further notice to the parties and this action will proceed on the remaining causes of action only.

IT IS SO ORDERED.

Dated: July 24, 2024

MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE