MICHAEL J. HADDAD (SBN 189114)
JULIA SHERWIN (SBN 189268)
HADDAD & SHERWIN LLP
505 Seventeenth Street
Oakland, CA 94612
Telephone: (510) 452-5500
Facsimile: (510) 452-5510

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHN ADENA, Deceased, by and through his Co-Successors in Interest, CIRCE ADENA and RICHARD ADENA; CIRCE ADENA, Individually, and RICHARD ADENA, Individually,<br><br>Plaintiffs,<br>vs.<br><br>SHASTA COUNTY, a public entity; SHASTA COUNTY JAIL DEPUTIES JOSEPH GRADY, NATHANIAL NEVES, HECTOR CORTEZ; CALIFORNIA FORENSIC MEDICAL GROUP, INC., a California Corporation; WELLPATH MANAGEMENT, INC., a Delaware Corporation; WELLPATH LLC, a Delaware Limited Liability Company; TRACI LEWIS, L.M.F.T.; PAM JOHANSEN, L.C.S.W.; DANIEL DELLWO, P.A.; AMANDA REAM, R.N., and DOES 2–20; individually, jointly and severally,<br><br>Defendants. | Case No. 2:21-cv-00770-DC-DMC<br><br>**JOINT STATEMENT RE: PLAINTIFFS' MOTION TO COMPEL DOCUMENTS CONCERNING DEFENDANT CFMG'S FINANCIAL CONDITION (Local Rule 251(c))**<br><br>Date: May 20, 2026<br>Time: 10:00 a.m.<br>Place: Redding Federal Courthouse<br><br>Hon. Dennis M. Cota |

**NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY**

TO ALL DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

Please take notice that on Wednesday, May 20, 2026 at 10:00 a.m. at the United States District Court Redding Federal Courthouse, 2986 Bechelli Lane, Sacramento, CA 96002, Plaintiffs will move this Court, under Federal Rules of Civil Procedure 26 and 34 and Local Rule 251, for an order compelling Defendant California Forensic Medical Group, Inc. (CFMG) and former Defendant Wellpath LLC to produce necessary financial condition records related to Plaintiffs' punitive damages claims against CFMG. Defendants have persistently refused to produce responsive documents, necessitating this motion.

This motion is made on the grounds that the information sought is directly relevant to Plaintiffs' punitive damages claim against CFMG, and that Defendant CFMG and Wellpath LLC have interfered with Plaintiffs' ability to determine CFMG's true financial condition.

This motion is based on the attached Joint Memorandum of Points and Authorities, the declarations and exhibits filed in support of this motion, all documents and records in this matter, and on such further written and oral argument and evidence as may be submitted

Dated: April 30, 2026

HADDAD & SHERWIN LLP

*/s/ Michael J. Haddad*

MICHAEL J. HADDAD
Attorneys for Plaintiffs

Pursuant to Eastern District Local Rule 251(c), Plaintiffs, Defendant California Forensic Medical Group, Inc., and Wellpath LLC submit the following Joint Statement Re: Discovery Disagreement.

**NATURE OF THE ACTION AND ITS FACTUAL DISPUTES**

**PLAINTIFFS' POSITION:**

This case involves the death of John Adena at Shasta County jail on September 21, 2019. Plaintiffs, Decedent's parents, bring federal and state civil rights claims against the medical companies in this motion. Shasta County's jail medical and mental healthcare services were provided by Defendant California Forensic Medical Group, Inc. ("CFMG"), with some policy and management provided by former Defendants Wellpath LLC, and Wellpath Management, Inc. who, post-bankruptcy, have been substituted in this case by the Wellpath Liquidating Trust. This motion concerns the refusal of Defendant CFMG and Wellpath LLC to produce necessary financial documents related to Plaintiffs' federal and state law claims for punitive damages against CFMG.

This exact same issue, involving the same corporate parties and much of the same financial information, previously came before this Court in another civil rights death case, *Johnson v. City of Redding*, CAED No. 2:19-cv-01722-JAM-DB. The Honorable Deborah Barnes ordered CFMG, Wellpath LLC, and other Wellpath non-party companies to produce many of the same categories of documents sought here and others, which Judge Barnes found to be relevant and necessary for the plaintiff's punitive damages claim. See *Johnson v. City of Redding*, 2023 U.S. Dist. LEXIS 101798, 2023 WL 3955354 (E.D. Cal. June 22, 2023). In *Johnson*, the Court found that "[w]ith respect to plaintiff's requests for discovery concerning defendants' **complete financial records**[1] such evidence is relevant and proportional to the needs of plaintiff's case." *Id*. at p. 2 (citing cases) (emphasis added). "The relevance and necessity of this evidence is even greater given the nature of the testimony of defendants' Person Most Knowledgeable, Tabitha Vanns, and the parties' competing financial expert opinions." *Id*. The

---

[1] The complete financial records ordered to be produced in *Johnson* included: the "General Ledger for the Wellpath entities," complete federal tax returns for CFMG and Wellpath LLC, complete audited financial statements for CFMG and Wellpath LLC, and complete tax returns and audited financial statements of non-party CCS-CMGC Intermediate Holdings, Inc. [at that time, the parent of the Variable Interest Entity CFMG and other companies], which Plaintiffs sought, "because they are **Variable Interest Entities** of CCS-CMGC Intermediate Holdings, Inc." (See **Decl. of Michael Haddad, Ex. A**, *Johnson*, No. 2:19-cv-01722-JAM-DB, ECF 196, pp. 4-6 (Joint Discovery Brief)).

*Johnson* case settled before Defendants ever produced any court-ordered financial records.

At the time of the incident in the present case, September 22, 2019, Shasta County contracted with Defendant CFMG to provide jail medical and mental health services. (Second Amended Complaint ("SAC"), ECF 81, ¶ 11). Defendant Wellpath LLC provides comprehensive "management services" for CFMG, controlling virtually all aspects of CFMG's business and finances, including human resources, accounting, hiring and supervising employees, payroll, accounts receivable, accounts payable, tax reporting, finance, liability insurance, contract negotiation, setting staffing plans, legal services (including paying for employees' defense counsel in this case), supplies, and providing policies and procedures for use in the jails. *Id*. In return, CFMG transfers millions of dollars yearly in revenues to Wellpath LLC and possibly other Wellpath entities. *Id*. "At the time of the incident, Shasta County's jail medical and mental healthcare services were provided by Defendants WELLPATH LLC and CALIFORNIA FORENSIC MEDICAL GROUP, INC. ("CFMG), a Variable Interest Entity ("VIE") of CCS-CMGC Intermediate Holdings, Inc., one of the 65 entities within the 'Wellpath family.'" (ECF 81, ¶ 102). [2] "The designation of CFMG as a VIE**,** means that it is not an independent stand-alone entity." *Id*.

On November 11, 2024, Wellpath LLC, along with other Wellpath companies, *but not CFMG*, filed for Chapter 11 bankruptcy. Wellpath LLC emerged from bankruptcy on or about June 4, 2025. Defendant CFMG did not go through bankruptcy. Post-bankruptcy, on October 9, 2025, Defendant CFMG served interrogatory responses in this case to the question: "Is California Forensic Medical Group, Inc. (CFMG) currently a Variable Interest Entity of any other company?" CFMG responded that it remains a VIE, "and is [now] reported on the consolidated financial statements of Wellpath LLC." (CFMG Supplemental Response to Interrogatories (Set One), Answer 1).

Wellpath LLC is thus the "reporting entity," "primary beneficiary," and "parent" of the VIE, CFMG. The relevant GAAP Accounting Standards provide:

> The reporting entity with a variable interest or interests that provide the reporting entity with a controlling financial interest in a variable interest entity (VIE) will have both of the following characteristics: [ FIN 46(R) 1A 56.1 ]
>
> a. The power to direct the activities of a VIE that most significantly impact the VIE's economic performance [ FIN 46(R) 1A 56.1.1 ]

[2] As shown below, post-bankruptcy, June 2025, CFMG is now a VIE on the books of Wellpath LLC.

b. The obligation to absorb losses of the VIE that could potentially be significant to the VIE or the right to receive benefits from the VIE that could potentially be significant to the VIE. [FIN 46(R) 1A 56.1.2 ]

(ASC 810-10-05-8A).[3]

Plaintiffs' forensic accounting expert, Vanessa Hill CPA, CFF, ABV, MBA, explains:

> A Variable Interest Entity ("VIE") is a legal entity that has insufficient equity to independently fund its operations or where control is maintained through contractual agreements instead of by voting rights. Specifically, a legal entity is a VIE if any of the following conditions are met: (a) The equity investment at risk is not sufficient to finance the activities of the entity without additional subordinated financial support provided by any parties; (b) As a group, the holders of the equity investment at risk lack any of the following characteristics of a controlling financial interest: (1) The power to direct the activities that most significantly impact the entity's financial performance; (2) The obligation to absorb expected losses; (3) The right to receive expected residual returns. (See ASC 810-10-05-8).
>
> An entity with a controlling financial interest in a VIE will have (a) The power to direct the activities of a VIE that most significantly impact the VIE's economic performance; and (b) The obligation to absorb losses of the VIE that could potentially be significant to the VIE or the right to receive benefits from the VIE that could potentially be significant to the VIE. (See ASC 810-10-05-8A).
>
> An entity that has a controlling financial interest in a VIE must consolidate the VIE in its financial statements. The reporting entity that consolidates a VIE is called the primary beneficiary of that VIE and **can also be referred to as its parent**. (See ASC 810-10-25-38 and 810-20).

(Decl. of Vanessa Hill, ¶¶ 8-10) (emphasis added).

"By definition as a VIE, CFMG is not independent and relies on other organization(s) for continued funding/existence. Wellpath LLC, as the parent of VIE CFMG, by definition therefore has a controlling financial interest in CFMG." (Hill Decl., ¶ 11).

As noted above, before the Wellpath bankruptcy, CFMG was a VIE reported on the books of

---

[3] See Declaration of Vanessa Hill, CPA, CFF, ABV, MBA, ¶ 8, fn 3:

> The Financial Accounting Standards Board ("FASB") establishes financial accounting and reporting standards for public and private companies and not-for-profit organizations that follow Generally Accepted Accounting Standards ("GAAP"). The FASB Accounting Standards Codification ("ASC") is the authoritative source of U.S. GAAP and is organized by Topic, Subtopic, Section, and Paragraph. References herein are presented in ASC citation format *(e.g., ASC XXX-XX-XX),* which corresponds to this structure.

CCS-CMGC Intermediate Holdings, Inc. Post-bankruptcy, CFMG is a VIE reported on the books of Wellpath LLC. Importantly, before the bankruptcy, Defendants in this case produced the audited financial statements of CFMG's then-parent CCS-CMGC Intermediate Holdings, Inc. – among the very documents that Wellpath LLC now refuses to produce as CFMG's current parent company. Those CCS-CMGC Intermediate Holdings, Inc. financial statements are now largely irrelevant, because CCS-CMGC Intermediate Holdings, Inc. is no longer the parent of the VIE, CFMG, and appears to be out of business. However, CCS-CMGC Intermediate Holdings, Inc.'s 2023 audited financial statements contain this statement about Variable Interest Entities, including the "PC", CFMG, which now should be true for the new parent, "the Company" Wellpath LLC:

> **Variable Interest Entities**—Physician practice entities and physician-owned corporations (collectively, "PCs") employ physicians, dentists, and mental health professionals in compliance with State Corporate Practice of Medicine requirements. The majority of the PCs have entered into Professional Services Agreements ("PSA") with the Company or its subsidiaries to provide professional services on behalf of the Company at its contracted facilities, and the Company has entered into management and administrative services agreements with each PC to provide management and administrative services to the PCs.
>
> **The Company has determined that the PCs are variable interest entities ("VIEs"), and the Company is the primary beneficiary under the power and benefits criterion model of Financial Accounting Standards Board ("FASB") Accounting Standards Codification ("ASC") Topic 810, *Consolidations*. Specifically, for accounting purposes, the Company has the power to direct the activities that most significantly affect the PCs' economic performance, and the obligation to absorb losses or right to receive benefits that are potentially significant to the VIEs, under the management and PSAs described above.** However, the Company's power to direct such economic matters does not include any power to control or interfere with the practice of medicine by the PCs, and the Company believes it is compliant with all applicable laws regarding the State Corporate Practice of Medicine. The control of the Company with respect to the PCs is for accounting and economic purposes only and unrelated to the practice of medicine.
>
> Because the Company is the primary beneficiary, the financial results of the PCs have been consolidated in the accompanying consolidated financial statements. A PC's assets may be used to settle only that PC's obligations, and the PCs' creditors have no recourse to the general assets of the Company. As of December 31, 2023 and 2022, the PCs had total assets of $52,477 and $22,474, respectively, and total liabilities of $206,463 and $114,550, respectively.
>
> The Company's exposure to loss as a result of involvement with the PCs is generally limited to the amounts required to fund the PCs' ongoing payroll and employee benefits-related expenses associated with physician services provided to contracted facilities. With certain PCs that hold contracts with customers, the Company is also exposed to loss due to its funding of costs, such as pharmacy, contract labor, off-site, and other expenses, which it

> pays on behalf of the PC.
>
> **Principles of Consolidation and Basis of Presentation**—The consolidated financial statements include the accounts of the Company, its wholly owned subsidiaries, and VIEs.

(Bates CFMG – 001095-001096) (emphasis added). This statement, or one very similar to it, should be included among the documents that Plantiffs now seek from Wellpath LLC, the current parent company of CFMG.

The Financial Accounting Standards Board warns that VIEs can be used for improper purposes:

> Transactions involving VIEs are common. Some reporting entities have entered into arrangements using VIEs that appear to be designed to avoid reporting assets and liabilities for which they are responsible, to delay reporting losses that have already been incurred, or to report gains that are illusory. At the same time, many reporting entities have used VIEs for valid business purposes and have properly accounted for those VIEs based on guidance and accepted practice. [ FIN 46(R) E5 367 ] ]

(ASC 810-10-05-9).

Even though Defendant CFMG has reported yearly revenues in excess of $300 million from its contracts to provide medical services in jails across California, on paper, CFMG reports yearly losses in the millions, while transferring tens of millions to Wellpath LLC pursuant to their Management Services Agreement (MSA). For example, in 2024, CFMG reported on its federal tax return over $63 million in "Management Fees" paid. Wellpath LLC has so "managed" CFMG through their MSA since 2019. By this MSA and CFMG's VIE relationship with Wellpath LLC, Wellpath LLC controls virtually all aspects of CFMG's management and financial affairs.

On information and belief, after accepting tens of millions of dollars yearly from CFMG, CFMG's managing company and/or parent have "loaned" CFMG money to pay its debts and liabilities, as provided by the MSA or otherwise – keeping CFMG afloat despite yearly losses on its balance sheet. For example, paragraph 4.4 of the MSA between CFMG ("the Company") and Wellpath LLC ("the Management Company") provides:

> **4.4 Deficit Funding Loan Agreement.** If the Company does not have sufficient cash to pay for its liabilities or financial obligations that are permitted to be incurred by the Company (including any portion of the Management Fee or reimbursable expenses owed to the Management Company hereunder), by that certain Deficit Funding Loan Agreement of even date herewith ("Deficit Funding Loan Agreement"), then the Management Company may, in its sole discretion, make "Advances" (as defined in the Deficit Funding Loan Agreement) to the Company upon request for the purpose of enabling the Company to pay such liabilities and meet such financial obligations. Such Advances will bear interest as set

forth in the Deficit Funding Loan Agreement. The Company will repay such Advances in accordance with the terms of the Deficit Funding Loan Agreement.

**Ms. Hill notes that on CFMG's 2024 tax return, CFMG reports owing over $104 million in intercompany payables.** (Hill Decl., ¶ 15(d)).

In connection with Plaintiffs' punitive damages claim against Defendant CFMG, Plaintiffs sought financial condition discovery to determine CFMG's financial condition and ability to pay a punitive damages award, including CFMG's Management Services Agreements ("MSA's"), corporate tax returns and Generally Accepted Accounting Principles ("GAAP")-compliant audited financial statements from 2024 to the present, as well as corresponding documents from CFMG's parent and managing company, Wellpath LLC, including all loan agreements with CFMG (from 2019-present) and contracts for exchange of funds in excess of $5 million between CFMG and Wellpath LLC from 2024-present.

To date, CFMG has only produced its MSA with Wellpath LLC and CFMG's California and federal tax returns for 2024. CFMG has not produced any financial statements whatsoever. CFMG has not produced any evidence of loans or gifts obtained from its manager and parent(s) to stay afloat after transferring tens of millions of dollars of CFMG assets to them every year. Wellpath LLC, despite CFMG's sworn interrogatory answer that CFMG's financial statements are "reported on the consolidated financial statements of Wellpath LLC," has not produced *anything* Plaintiffs have requested and need to determine CFMG's financial position and ability to pay a punitive damages award including access to loans.

**Ms. Hill explains in detail why each of the categories of documents Plaintiffs seek in this motion are necessary to determine CFMG's financial position and ability to pay a punitive damages award at paragraph 15 of her declaration.**

Consistent with the discovery Plaintiffs seek, Blair Lukasik, a CPA and "Vice President of Tax at Wellpath" as of October 28, 2024, has declared: **"It is precisely *because* CFMG is a VIE that the only accurate financial picture of the Defendants must be on a consolidated basis."** [Haddad Decl., **Ex. B**, Decl. of Blair Lukasik, ¶ 5]. That means that Plaintiffs must have access to financial information and history of loans and liability/debt payments to CFMG from CFMG's manager and parent, Wellpath LLC.

If Plaintiffs prevail on their deliberate indifference claims at trial against CFMG, the jury will be permitted to award punitive damages against CFMG. Both sides have the right to produce evidence of

CFMG's financial condition and ability to pay a punitive damages judgment at trial to ensure that any punitive damages award does not offend due process *and* is sufficient to serve the purposes of punitive damages, including deterrence of CFMG and similarly situated companies. To rebut CFMG's claimed inability to pay substantial punitive damages, Plaintiffs must be able to learn about CFMG's financial condition, which is inextricably intertwined with that of its manager and parent Wellpath LLC, including access to loans and capital. Plaintiffs also need this information so they can make a punitive damages request to the jury that will be appropriate to deter future misconduct and punish Defendant CFMG, consistent with CFMG's due process rights.

Plaintiffs are ***not*** seeking to hold Wellpath LLC directly responsible for any damages, including for punitive damages against CFMG. However, the reality that the jury must assess in order to decide an appropriate amount of punitive damages against CFMG must take into account that CFMG is a VIE whose assets and ability to pay are intertwined and consolidated with Wellpath LLC, and that Wellpath LLC as CFMG's manager and parent, *currently* has contractual and financial incentives to continue to provide capital and loans to CFMG for CFMG to pay its liabilities and judgments.

Defendants have never produced any privilege log, as required by Fed. R. Civ. Proc. 26(b)(5)(A)(ii), for the financial documents they have refused to produce, making it very hard for Plaintiffs and this Court to assess their privilege claims, and making it impossible for Defendants to justify their continued to refusal to withhold relevant documents.

Plaintiffs therefore request that this Court order the CFMG and Wellpath LLC to produce all records and information sought in the identified discovery requests below, subject to the Protective Order (ECF 19) where appropriate, including the following general categories of documents (see Hill Decl., ¶ 15):

1. Complete federal and state tax returns for Wellpath LLC from 2024 through date of trial;

2. Wellpath LLC's complete GAAP-compliant audited financial statements (which include CFMG's financial information) with Notes to the financial statements, including audit opinions, annual reports, balance sheets, statements of shareholder/owners' equity, statements of cash flows, statements of operations or profit and loss, and all supplementary information such as consolidat*ing* and combining schedules for consolidated reports, from 2024 through date of trial;

3. The "Deficit Funding Loan Agreement" between CFMG and Wellpath LLC as referenced in

the MSA;

4. All loan agreements between Wellpath LLC and CFMG from 2019 to present, to show Wellpath's history of choosing to loan CFMG capital to pay its debts and liabilities;

5. Information concerning CFMG's ongoing contracts with California counties that form the basis for CFMG's $300+ million in yearly revenues, including the counties involved and yearly contract amounts, from 2024-present;

6. Information from CFMG about any large transfers of capital (over $5 million) to other companies, from 2024-present.

7. All documents that define CFMG's VIE status, including foundational documents;

8. All charts and/or diagrams showing the current, post-bankruptcy corporate/entity structure of the family of companies formerly known as the Wellpath family of companies.

**A Note About the Effect of the Bankruptcy on this Discovery.** Wellpath LLC was a named Defendant in this case until March 5, 2026, when the Court granted the parties' stipulation to substitute the Wellpath Liquidating Trust in its place. (ECF 139, 140). Wellpath LLC was still a Defendant when it responded to Plaintiffs' request for production of documents and interrogatories. After the bankruptcy court ordered that Wellpath entities must by dismissed and substituted by the Trust, counsel for CFMG and Wellpath LLC demanded that Wellpath would only respond to a Rule 45 subpoena, as a (soon to be) non-party. So, Plaintiffs served a proper subpoena on Wellpath LLC's counsel, to which Wellpath LLC objected across-the-board.

Wellpath LLC will claim that bankruptcy court orders protect it from having to respond to any discovery in this matter. That is not true. Wellpath LLC is required to respond to discovery concerning non-bankruptcy-debtor CFMG. First, the bankruptcy case is complete and all bankruptcy stays have been lifted. Second, in their stipulation to substitute the Trust in place of Wellpath LLC, the parties agreed that current bankruptcy orders provide that holders of General Unsecured Claims (like the Adena Plaintiffs) against a Wellpath Debtor-Defendant arising from pre-petition wrongful death, may liquidate the value of those claims "in the appropriate civil court … with the Trust included as a nominal defendant." (ECF 139, Stipulation, ¶¶ 13-14, citing **Ex. C**, ECF 1279, BK Case No. 24-90566). Third, that same bankruptcy court order provides that:

Notwithstanding anything to the contrary in this Order, a court of appropriate jurisdiction

> may determine the responsibility of or liability of any Debtor if necessary **for determining the liability of or judgment against any other person**, provided that no Post-Restructuring Debtor shall be required to participate in any manner (other than through appropriate third-party discovery) in such litigation or be personally liable to the plaintiff on account of such determination of the Debtor's responsibility or liability. **For the avoidance of doubt, the extent to which the Post-Restructuring Debtors or any Debtor need not participate in any such litigation, as described in this Order, does not affect the Post-Restructuring Debtors' or any Debtors' obligation to otherwise comply with subpoenas, requests for production of documents or ESI, depositions including those under Fed. R. Civ. P. 30(b)(6), identification of custodians or witnesses, or other discovery pursuant to Fed. R. Civ. P. 45 and its state equivalents reasonably necessary to determine responsibility, liability, or apportionment.**
>
> * * *
>
> **For the avoidance of doubt, nothing in this Order or the Plan imposes any restrictions upon a party's right or ability to seek third-party discovery from any person or entity, including, but not limited to, the Post-Restructuring Debtors, pursuant to Fed. R. Civ. P. 45 and its state equivalents. The removal or substitution of Wellpath as a party defendant shall not, by itself, be a basis to stay, deny, or limit third-party discovery.**

(ECF 1279, ¶¶ 7, 9, BK Case No. 24-90566) (emphasis added). The discovery sought from Wellpath LLC is "for determining the liability of or judgment against any other person" – here, CFMG. For that purpose, Wellpath LLC is still subject to the full range of discovery tools. *Id*. Further, there are no restrictions on Wellpath LLC's duty to comply with a Rule 45 subpoena for any purpose. *Id.*

The financial discovery that Plaintiffs seek from Wellpath LLC is not to determine Wellpath LLC's liability or duty to indemnify CFMG or pay damages. Plaintiffs agree that Wellpath LLC has no legal duty to pay any damages incurred by CFMG; whether Wellpath LLC currently has contractual duties that may require payment on behalf of CFMG remains to be seen. However, Wellpath LLC maintains a financial interest to continue to choose to pay CFMG's debts and liabilities as CFMG's parent and as part of its lucrative MSA deal as it appears to have done for years. By definition as its VIE, CFMG is financially subordinated and controlled by Wellpath LLC. The financial discovery Plaintiffs seek from Wellpath LLC is strictly to determine Defendant CFMG's true financial condition and ability to pay a punitive damages judgment given CFMG's unique and admitted status as a VIE, with CFMG's financial condition inextricably intertwined with that of Wellpath LLC, its strong manager and parent.

As the Financial Accounting Standards Board warns, VIE relationships can be misused "to avoid reporting assets." CFMG's paper "losses" would create a false impression that it is insolvent and unable

to pay its liabilities and judgments. Understanding CFMG's true business model with Wellpath LLC as its parent and manager that takes CFMG's profits and pays CFMG's liabilities will reveal CFMG's true financial condition and ability to pay a punitive damages award. A jury may someday need to decide CFMG's financial condition and ability to pay a punitive damages award given these realities.

**DEFENDANTS' POSITION:**

As noted by Plaintiff, this case involves the death of John Adena at Shasta County jail on September 21, 2019. Shasta County's jail medical and mental healthcare services were provided by Defendant California Forensic Medical Group, Inc. ("CFMG"), which operated under a Managed Services Agreement ("MSA") with discharged entities Wellpath LLC, and Wellpath Management, Inc. This motion concerns Plaintiffs' fishing expedition into financial discovery for discharged non-party entity, Wellpath, LLC ("Wellpath"), based on the assertion that Plaintiffs cannot get an accurate financial picture for Defendant CFMG based on the financial records already provided.

First, contrary to Plaintiffs' assertions that this "exact same issue" came before this Court in *Johnson v. City of Redding*, CAED No. 2:19-cv-01722-JAM-DB, *Johnson* involved a discovery dispute among *named defendants* over categories of documents that have nothing to do with the MSA contract referenced by Plaintiffs here. The dispute in *Johnson* was plainly limited to "Plaintiff's requests related to **defendants'** complete financial records," which Defendant CFMG has provided in this case. *Johnson, supra* (emphasis added). Specifically, Defendant CFMG has already produced completed tax returns and consolidated financials for CFMG and CCS-CMGC Intermediate Holdings, Inc., that were ordered to be produced in *Johnson* in response to Plaintiffs' discovery requests. Whatever standard *Johnson* set (and Defendants do not agree that one has been set) has been met. Moreover, *Johnson* is not relevant to Plaintiffs' request for documents from discharged non-party entity Wellpath.

Plaintiffs' assertion that they are unable to get the "complete" financial picture for CFMG based on the documents provided is inaccurate. Unlike Plaintiffs' cited case, the matters of *Overfield v. Wellpath Community Care, LLC* et al, No. 2:24-CV-0199-TLN-AC and *Smith v. California Forensic Medical Group, Inc.*, No. 5:21-cv-00421-EJD (N.D. Cal. Apr. 21, 2026) (order re discovery dispute) squarely address the issues raised in this dispute. In *Overfield,* Plaintiffs sought additional financial documents from Defendant CFMG even after receiving the relevant tax returns based on the assertion that

CFMG did not maintain "sufficient standalone financial records" to provide an accurate picture of its financial condition. *Overfield* at *1. The Court in *Overfield* disagreed; Plaintiffs' motion to compel was denied on the basis that "the requested records [would not] provide anything other than a tenuous basis for conjecture" about the defendants' financial status. *Overfield* at *2. The tax returns and financials produced by CFMG in *Overfield* are virtually identical to what has been produced here. Similarly, in *Smith*, the Court expressly limited financial discovery to Defendant CFMG and rejected Plaintiffs' attempt to reach affiliated-entity information for Wellpath, LLC. *Smith* at *3. The Court held that Plaintiffs failed to show that discovery into "management services agreements between CFMG and Wellpath or affiliated entities" was "proportional to the needs of the case" under Rule 26(b)(1), and it therefore denied both document requests. *Id.* The Court further denied any request seeking "confidential commercial agreements, nonparty financial information, or matters concerning Wellpath or affiliated entities." *Id.* at *2. *Overfield* and *Smith* confirm that there is no justifiable reason to compel production of additional financial documents given Wellpath's non-party status and bankruptcy discharge in this matter. These cases make clear thatthere is no justifiable reason to compel production of additional financial documents that are nothing more than a transparent attempt to back-door into Wellpath's records, despite Wellpath's non-party status and bankruptcy discharge in this matter.

Additionally, Plaintiffs attempt to argue that because CFMG is a VIE entity, they must be entitled to documents related to corporate structure and potential loan agreements with Wellpath. Although CFMG previously provided consolidated financials for CCS-CMGC Intermediate Holdings, Inc. prior to any bankruptcy proceedings, that does not mean that financials of Wellpath, a non-party discharged entity, are now relevant simply because of CFMG's VIE status. This is a gross exaggeration of the way VIE entities operate; as explained by Plaintiffs' own expert, VIEs operate through contractual agreements instead of by voting rights. (Decl. of Vanessa Hill, ¶ 8). The contractual agreement at issue here is the MSA, which contains two relevant provisions for purposes of this motion: 4.4 Deficit Funding Loan Agreement and 7.1 Indemnification**.**

Plaintiffs attempt to utilize section 4.4 to argue that Wellpath LLC's *ability to issue a loan* to CFMG is somehow the same thing as Defendant CFMG's ability to pay a judgment; this conflates the role of indemnification and financial agreements among entities. Here, Plaintiffs state above that they "agree

that Wellpath LLC has no legal duty to pay any damages incurred by CFMG." This should end the analysis – there is no obligation on the part of discharged non-party entity Wellpath to pay for any judgment against CFMG. Furthermore, as laid out in the attached declaration of Sean K. Tussey, the Senior Vice President and Chief Accounting Officer of non-party Wellpath, Section 4.4 of the MSA has never been invoked or used during the life of the business relationship between Wellpath and CFMG. (Decl. of Sean Tussey, ¶ 4). Plaintiffs' argument that Section 4.4 – which grants CFMG the *option* to seek a loan from Wellpath at some point in the future – somehow entitles them to sensitive financial discovery of Wellpath is unavailing. Plaintiffs may believe that Wellpath has a "strong financial incentive," *infra*, to elect to pay CFMG's potential debts, but that alone does not make these discovery requests relevant, proportional, or appropriate.

Finally, Wellpath is not indemnifying CFMG pursuant to 7.1 of the MSA, nor are they obligated to pay Plaintiff any judgments on behalf of CFMG in this case as a result of the bankruptcy court orders discharging Wellpath. The Bankruptcy Court  explicitly ordered that "Holders of […]claims may not seek satisfaction of, and are permanently enjoined from seeking payment of, any judgment, award, settlement, claim, distribution, **indemnification right, or any other payment amount resulting from their lawsuit from, or in connection with, the Debtors, the Debtors' estates, or the Post-Restructuring Debtor**", (ECF 2907, 4 BK Case No. 24-90533) (emphasis added), and no Post-Restructuring Debtor shall be required to participate in any manner (other than through <u>appropriate</u> third-party discovery) in such litigation **or be personally liable to the plaintiff on account of such determination of the Debtor's responsibility or liability."** (ECF 1279, ¶¶ 7, 9, BK Case No. 24-90566) (emphasis added).

In sum, the additional discovery sought from CFMG and the documents sought via subpoena to Wellpath are not appropriate, proportional, or relevant to the case at bar. Plaintiffs' assertion that they are seeking a "clear" financial picture of CFMG, despite having access to CFMG's tax returns and relevant financial documents, is a poorly disguised attempt access the sensitive internal financial and organization documents of Wellpath in an end-run around the bankruptcy discharge and the proper scope of punitive damages discovery. Plaintiffs, should they prove their case, would be entitled to collect money from CFMG; Plaintiffs simply cannot collect a judgment from Wellpath in this matter, making these discovery requests irrelevant, unduly burdensome and disproportionate to the needs of case.

**PLAINTIFFS' REPLY TO DEFENDANTS' POSITION**

Defendant's statement that Plaintiffs have already received "over 800 pages of financial documents from CFMG" is grossly misleading. The only documents that either CFMG or Wellpath LLC have produced in response to Plaintiffs' current discovery requests at issue in this motion are CFMG's 2024 tax returns (69 pages). As explained above, those do not show CFMG's current financial position given its VIE status, its definitional inability to stand on its own as an independent company, nor its ability to secure loans and capital infusions from its parent, Wellpath LLC. Defendants assert below: "Defendant CFMG has already produced consolidated tax returns and GAAP-compliant financials for the relevant entities and does not dispute its status as a VIE entity." The only GAAP-compliant financials Defendants have produced (much earlier in this case) were from the 2022-23 financials of non-party CCS-CMGC Intermediate Holdings, Inc., because before the bankruptcy, CFMG was a VIE consolidated on the books of CCS-CMGC Intermediate Holdings, Inc. Post-bankruptcy, CCS-CMGC Intermediate Holdings, Inc. no longer exists. And now, CFMG is a VIE consolidated on the books of Wellpath LLC. If Defendants were going to produce "GAAP-compliant financials for the relevant entities" at this time, those relevant entities would obviously be CFMG and Wellpath LLC.

Only a defendant's *current* financial condition at the time of trial is relevant to punitive damages. See *Vieste, LLC v. Hill Redwood Dev*., No. 09-cv-04024-JSW (DMR), 2011 U.S. Dist. LEXIS 29137, at * 8-10 (N.D. Cal. Mar. 9, 2011). Thus, CFMG's management at the time of the 2019 incident in this case is irrelevant to its ability to pay a punitive damages award at trial. Only its financial condition, including its ability to secure loans and capital infusions, *now and at the time of trial* matters. Therefore, obsolete records that CFMG and Wellpath LLC produced pre-bankruptcy for CFMG's previous parent company, CCS-CMGC Intermediate Holdings, Inc., are meaningless now, especially since CFMG's current parent company is Wellpath LLC.

Wellpath LLC is indeed CFMG's "parent" company. As Ms. Hill explains, "the reporting entity that consolidates a VIE [here, Wellpath LLC] is called the primary beneficiary of that VIE and **can also be referred to as its parent**. (See ASC 810-10-25-38 and 810-20)." (Decl. of Vanessa Hill, ¶ 10). The Glossary at ASC 810-20 defines "parent" as "an entity that is the primary beneficiary of a variable interest

entity" (citing ARB 51 B1 79.6). A "primary beneficiary" is "an entity that consolidates a variable interest entity (VIE)." The definition of "subsidiary" includes "a variable interest entity that is consolidated by a primary beneficiary" (citing ARB 51 B1 79.7). Wellpath LLC is the parent and primary beneficiary; CFMG is the VIE and the subsidiary.

Defendants have produced a declaration from Sean K. Tussey, Wellpath's Senior Vice President and Chief Accounting Officer, saying that the Deficit Funding Agreement, "Section 4.4 of the MSA has never been invoked" between CFMG and Wellpath LLC. Defendants do not mention the **$104 million in intercompany payables** listed on CFMG's 2024 tax returns – those are loans. (Hill Decl., ¶ 15(d)). And Defendants do not claim that they have no documents responsive to Plaintiffs' request for all loan agreements between Wellpath LLC and CFMG from 2019 to present. (Since Defendants never produced a privilege log, it is impossible to tell what they are withholding). Defendants also did not object that such loan agreements were confidential. Clearly there are such loan agreements and Defendants are trying to hide them. Those loan agreements would show Wellpath LLC's history of choosing to loan CFMG capital to pay its debts and liabilities. And, those loan agreements would impeach claims, like Mr. Tussey's, that Section 4.4 has never been invoked.

**Because Wellpath LLC is now CFMG's parent company, consolidating CFMG's financials on Wellpath LLC's books, and because this VIE arrangement is lucrative to Wellpath LLC, which received over $63 million in "Management Fees" paid by CFMG in 2024 alone, Wellpath LLC has a strong financial interest to provide additional loans or capital to CFMG, and a jury can find that Wellpath LLC is highly likely to provide additional loans or capital to CFMG in the event that CFMG is liable for punitive damages.**

Defendants write, "VIEs operate through contractual agreements instead of by voting rights. (Decl. of Vanessa Hill, ¶ 8). The contractual agreement at issue here is the MSA." That is why Plaintiffs have requested that CFMG and Wellpath LLC produce "all documents that define CFMG's VIE status, including foundational documents." Plaintiffs and the Court do not need to take CFMG and Wellpath LLC at their word when they claim that only the MSA matters – the discovery process is intended to reveal relevant material, whether or not the party producing it may prefer not to produce it. And again, Defendants do not claim that other documents defining CFMG's VIE status, including foundational

documents, do not exist. The absence of a privilege log makes it possible for Defendants to obfuscate.

Defendants' long discussion about indemnity also misses the mark. Plaintiffs are not claiming that Wellpath LLC is required to indemnify CFMG, nor are Plaintiffs seeking to compel such indemnification. Defendants' indemnification arguments merely distract from the real issue here – that CFMG's financial position and ability to pay a punitive damages award can only be assessed with complete information, including its ability and likelihood to secure additional loans and capital from its parent and managing company, Wellpath LLC. As a VIE, CFMG has no meaningful financial condition standing alone. As a VIE, it is a part of its parent company. That's why CFMG's financials are consolidated into Wellpath LLC's financials.

The unpublished order in *Overfield* does not help Defendants here. That case arose in a different context, where the plaintiffs sought CFMG's receipts for management services fees paid (that Plaintiffs here do not seek). The *Overfield* plaintiffs did not raise or address CFMG's VIE status. In *Overfield*, unlike here, CFMG had produced its own "GAAP audited financials, tax returns, and other financial information." Here, CFMG has only produced its 2024 tax returns; nothing more.

The unpublished order in *Smith v. California Forensic Medical Group, Inc.*, No. 5:21-cv-00421-EJD (N.D. Cal. Apr. 21, 2026) is a bare-bones order, with no context, and is not illuminating. The Court there apparently did not consider any VIE arguments, yet did order CFMG to produce a Rule 30(b)(6) witness to testify concerning line items in its tax returns, which include intercompany loans to CFMG and CFMG's payment of management services and other fees. The *Smith* Court simply denied without prejudice the plaintiff's request for commercial agreements that CFMG or Wellpath objected were "confidential" or for financial information of non-parties. In contrast, here, CFMG and Wellpath LLC have already produced their non-confidential MSA, Defendants have waived any privilege objections by their refusal to serve a privilege log, and most importantly, CFMG's VIE status is squarely at issue.

The orders in *Overfield* and Smith certainly do not negate the order in *Johnson v. City of Redding*, that ordered production of Wellpath LLC's, CFMG's, as well as non-party CCS-CMGC Intermediate Holdings, Inc.'s, "complete financial records." The *Johnson* Court ordered those companies' complete financial records not because Wellpath LLC was a defendant, but *because of* CFMG's VIE status. Back then, pre-bankruptcy, both CFMG and Wellpath LLC were consolidated on CCS-CMGC Intermediate

Holdings, Inc.'s accounting statements. See footnote 1, above and **Ex. A**, *Johnson*, No. 2:19-cv-01722-JAM-DB, ECF 196, pp. 4-6 (Joint Discovery Brief).

Bankruptcy Court orders do not shield Wellpath LLC from discovery. As shown above, the order at ECF 1279, BK Case No. 24-90566, specifically subjects Wellpath LLC to any and all discovery "for determining the liability of or judgment against any other person" – here, CFMG's punitive damages liability. And, that order further provides that there are no restrictions on Wellpath LLC's duty to comply with a Rule 45 subpoena for any purpose.

Defendants also cite portions from an earlier Bankruptcy Court order that states, in part, "Holders of […]claims may not seek satisfaction of, and are permanently enjoined from seeking payment of, any judgment, award, settlement, claim, distribution, indemnification right, or any other payment amount resulting from their lawsuit from, or in connection with, the Debtors, the Debtors' estates, or the Post-Restructuring Debtor." (Haddad Decl., **Ex. D**, ECF 2907, BK Case No. 24-90533). That order is not relevant here, because Plaintiffs do not seek any judgment or indemnification right from Wellpath LLC; rather, Plaintiffs simply seek a punitive damages judgment against CFMG. Wellpath LLC's resources and history of providing loans and capital to CFMG must be assessed in connection with the punitive damages claim against CFMG, because as a VIE, CFMG's financial position cannot be assessed in a vacuum. That is not to compel Wellpath LLC to pay a judgment for CFMG. However, a jury would need to assess the likelihood that Wellpath LLC could and would provide its subsidiary with resources given how financially valuable CFMG is to Wellpath LLC (over $63 million transferred from CFMG to Wellpath LLC in 2024). The Bankruptcy Court even recognized Wellpath LLC's continuing ability to elect to pay holders of Claims, including through indemnification provisions: "… holders of Claims and Interests remain enjoined from enforcing recovery from the Debtors, the Debtors' estates, or the Post-Restructuring Debtors with respect to any indemnification obligations for such employees; **provided, that nothing shall prevent the Post-Restructuring Debtors from electing to honor such indemnification rights pursuant to the provisions of the Plan**." (**Ex. D**, ECF 2907, ¶ 5, BK Case No. 24-90533).

**<u>MEET AND CONFER EFFORTS</u>**

In 2024, pre-bankruptcy, the parties met and conferred extensively on these issues and had nearly

finished a comprehensive joint discovery brief when the bankruptcy case was filed and all of the present claims were stayed. Due to Wellpath's reorganization, discovery concerning CFMG's financial position had to start over.

After Wellpath LLC emerged from bankruptcy in June, 2025, Plaintiffs served multiple new rounds of financial discovery on CFMG and Wellpath LLC. CFMG and Wellpath LLC served timely objections. On January 12, 2026, Michael Haddad, counsel for Plaintiffs, and Allison Becker and Elizabeth McGowan, counsel for CFMG and Wellpath LLC, met by a Zoom videoconference to confer about the financial discovery sought and Defendants' objections to it. The parties were unable to reach a compromise, however Ms. Becker did agree to accept service of any Rule 45 subpoena served on Wellpath LLC. Because Defendants stated in interrogatory answers that CFMG is a Variable Interest Entity "reported on the consolidated financial statements of Wellpath LLC," Plaintiffs agreed not to seek additional responses from Wellpath Management, Inc.

The parties have continued to meet and confer by email, and have worked together on this joint discovery brief.

**<u>THE CONTENTIONS OF EACH PARTY AS TO EACH CONTESTED ISSUE</u>**

**PLAINTIFFS' INTERROGATORY NO. 3 TO CFMG:**

Please list each entity with which CFMG has, or has had, a contract to provide medical or mental health services in 2024, 2025, and/or 2026.

**ANSWER TO INTERROGATORY NO. 3:**

CFMG objects to this Interrogatory as it is overbroad as to scope and time, unduly burdensome, not proportional to the needs of the case, not reasonably calculated to lead to the discovery of admissible evidence, and not likely to be relevant for any findings of punitive damages. Specifically, the Ninth Circuit stated that "the rule established by the lower California courts is that only net, not gross, figures are relevant" for punitive damages purposes. *Kaffaga v. Est. of Steinbeck*, 938 F.3d 1006 (9th Cir. 2019) (Quoting *Boyle v. Lorimar Prods., Inc.*, 13 F.3d 1357, 1360 (9th Cir. 1994)). Additionally, CFMG objects to this Interrogatory because certain information is equally available to Plaintiffs, as county contracts are a matter of public record.

**PLAINTIFFS' INTERROGATORY NO. 4 TO CFMG:**

Please list the contractual amount owed to CFMG from each such contact listed in your answer to No. 3, above, for the years 2024, 2025, and 2026.

**ANSWER TO INTERROGATORY NO. 4:**

CFMG objects to this Interrogatory as it is overbroad as to scope and time, unduly burdensome, not proportional to the needs of the case, not reasonably calculated to lead to the discovery of admissible evidence, and not likely to be relevant for any findings of punitive damages. Specifically, the Ninth Circuit stated that "the rule established by the lower California courts is that only net, not gross, figures are relevant" for punitive damages purposes. *Kaffaga v. Est. of Steinbeck*, 938 F.3d 1006 (9th Cir. 2019) (Quoting *Boyle v. Lorimar Prods., Inc.*, 13 F.3d 1357, 1360 (9th Cir. 1994)). Additionally, CFMG objects to this Interrogatory because certain information is equally available to Plaintiffs, as county contracts are a matter of public record.

**PLAINTIFFS' INTERROGATORY NO. 5 TO CFMG:**

What is the total amount of money owed to CFMG from all contracts listed in your answer to No. 3, above, for each year, 2024, 2025, and 2026?

**ANSWER TO INTERROGATORY NO. 5:**

CFMG objects to this Interrogatory as it is overbroad as to scope and time, unduly burdensome, not proportional to the needs of the case, not reasonably calculated to lead to the discovery of admissible evidence, and not likely to be relevant for any findings of punitive damages. Specifically, the Ninth Circuit stated that "the rule established by the lower California courts is that only net, not gross, figures are relevant" for punitive damages purposes. *Kaffaga v. Est. of Steinbeck*, 938 F.3d 1006 (9th Cir. 2019) (Quoting *Boyle v. Lorimar Prods., Inc.*, 13 F.3d 1357, 1360 (9th Cir. 1994)). Additionally, CFMG objects to this Interrogatory because certain information is equally available to Plaintiffs, as county contracts are a matter of public record.

**PLAINTIFFS' INTERROGATORY NO. 6 TO CFMG:**

In 2024, did CFMG pay or transfer to any other company or entity more than $5 million ($5,000,000)?

**ANSWER TO INTERROGATORY NO. 6:**

CFMG objects to this Interrogatory as it is overbroad as to scope and time, unduly burdensome, not

proportional to the needs of the case, not reasonably calculated to lead to the discovery of admissible evidence, and not likely to be relevant for any findings of punitive damages. Specifically, the Ninth Circuit stated that "the rule established by the lower California courts is that only net, not gross, figures are relevant" for punitive damages purposes. *Kaffaga v. Est. of Steinbeck*, 938 F.3d 1006 (9th Cir. 2019) (Quoting *Boyle v. Lorimar Prods., Inc.*, 13 F.3d 1357, 1360 (9th Cir. 1994)).

**PLAINTIFFS' INTERROGATORY NO. 7 TO CFMG:**

If CFMG paid or transferred to any other company or entity more than $5 million ($5,000,000) in 2024, please identify that company/entity and the exact amount CFMG paid or transferred to it.

**ANSWER TO INTERROGATORY NO. 7:**

CFMG objects to this Interrogatory as it is overbroad as to scope and time, unduly burdensome, not proportional to the needs of the case, not reasonably calculated to lead to the discovery of admissible evidence, and not likely to be relevant for any findings of punitive damages. Specifically, the Ninth Circuit stated that "the rule established by the lower California courts is that only net, not gross, figures are relevant" for punitive damages purposes. *Kaffaga v. Est. of Steinbeck*, 938 F.3d 1006 (9th Cir. 2019) (Quoting *Boyle v. Lorimar Prods., Inc.*, 13 F.3d 1357, 1360 (9th Cir. 1994)).

**PLAINTIFFS' INTERROGATORY NO. 8 TO CFMG:**

In 2025, did CFMG pay or transfer to any other company or entity more than $5 million ($5,000,000)?

**ANSWER TO INTERROGATORY NO. 8:**

CFMG objects to this Interrogatory as it is overbroad as to scope and time, unduly burdensome, not proportional to the needs of the case, not reasonably calculated to lead to the discovery of admissible evidence, and not likely to be relevant for any findings of punitive damages. Specifically, the Ninth Circuit stated that "the rule established by the lower California courts is that only net, not gross, figures are relevant" for punitive damages purposes. *Kaffaga v. Est. of Steinbeck*, 938 F.3d 1006 (9th Cir. 2019) (Quoting *Boyle v. Lorimar Prods., Inc.*, 13 F.3d 1357, 1360 (9th Cir. 1994)).

**PLAINTIFFS' INTERROGATORY NO. 9 TO CFMG:**

If CFMG paid or transferred to any other company or entity more than $5 million ($5,000,000) in 2025, please identify that company/entity and the exact amount CFMG paid or transferred to it.

**ANSWER TO INTERROGATORY NO. 9:**

CFMG objects to this Interrogatory as it is overbroad as to scope and time, unduly burdensome, not proportional to the needs of the case, not reasonably calculated to lead to the discovery of admissible evidence, and not likely to be relevant for any findings of punitive damages. Specifically, the Ninth Circuit stated that "the rule established by the lower California courts is that only net, not gross, figures are relevant" for punitive damages purposes. *Kaffaga v. Est. of Steinbeck*, 938 F.3d 1006 (9th Cir. 2019) (Quoting *Boyle v. Lorimar Prods., Inc.*, 13 F.3d 1357, 1360 (9th Cir. 1994)).

**PLAINTIFFS' REQUEST FOR PRODUCTION NO. 2 TO CFMG:**

Please produce all contracts and/or agreements between California Forensic Medical Group, Inc. (CFMG) and any other company or entity under which CFMG paid such company(ies) or entity(ies) more than $5 million ($5,000,000) in 2024 and/or 2025.

**RESPONSE TO REQUEST NO. 2:**

CFMG objects to this Interrogatory as it is overbroad as to scope, unduly burdensome, not proportional to the needs of the case, not reasonably calculated to lead to the discovery of admissible evidence, and not likely to be relevant for any findings of punitive damages. Specifically, the Ninth Circuit stated that "the rule established by the lower California courts is that only net, not gross, figures are relevant" for punitive damages purposes. *Kaffaga v. Est. of Steinbeck*, 938 F.3d 1006 (9th Cir. 2019) (Quoting *Boyle v. Lorimar Prods., Inc.*, 13 F.3d 1357, 1360 (9th Cir. 1994)).

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 2:**

CFMG states that the Eastern District has recently denied a request seeking individual information about CFMG's expenses because it was not relevant to punitive damages. Specifically, the Court held "while CFMG's financial status itself is indisputably relevant, the court is unpersuaded that the requested receipts will provide anything other than a tenuous basis for conjecture." *Overfield v. California Forensic Medical Group, Inc, et al.*, Case No. 2:24-cv-00199- TLN-AC, ECF p. 4 (September 24, 2025, E.D. Cal.). "The specific receipts will not provide unique information as to CFMG's financial health." *Id*.

**PLAINTIFFS' REQUEST FOR PRODUCTION NO. 4 TO CFMG:**

Please produce all financial documentation that describes California Forensic Medical Group, Inc., as a Variable Interest Entity of another company or entity, from June 1, 2025 to present, with supplemental responses no less than 30 days before trial.

**RESPONSE TO REQUEST NO. 4:**

CFMG objects to this Request as it is overly broad as to "all financial documentation." CFMG objects to this Request to the extent it seeks documents outside of its possession, custody, and control. Specifically, CFMG objects to this Request to the extent Plaintiff seek documents from Wellpath, LLC. Plaintiffs are enjoined from requiring that Wellpath participate in discovery. See ECF 122. Moreover, this Request seeks documents from third parties who are not a party to this lawsuit.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 4:**

CFMG objects to this Request as it is not proportional to the needs of the case, not reasonably calculated to lead to the discovery of admissible evidence, and not likely to be relevant for any findings of punitive damages. CFMG objects to this Request as vague and confusing. Specifically, a Variable Interest Entity (VIE) is an accounting term, which is determined by an accounting test, and not a type of structured legal entity. Accordingly, it is impossible to be a VIE "of any other company or entity," and CFMG is unable to respond to this Request as phrased. Subject to and without waiving these objections, for accounting purposes, CFMG is a VIE and is reported on the consolidated financial statements of Wellpath, LLC.

**PLAINTIFFS' REQUEST FOR PRODUCTION NO. 5 TO CFMG:**

Please produce all California Forensic Medical Group, Inc.'s, GAAP-compliant audited financial statements, with Notes to the financial statements, including audit opinions, annual reports, balance sheets, statements of shareholder/owners' equity, statements of cash flows, statements of operations or profit and loss, and all supplementary information such as combining schedules for consolidated reports, for the years January 1, 2024, to the present, with supplemental responses no less than 30 days before trial.

**RESPONSE TO REQUEST NO. 5:**

CFMG objects to this Request to the extent it seeks documents outside of its possession, custody,

and control. CFMG further objects that the Request is excessive and unduly burdensome as to scope. *E.E.O.C. v. California Psychiatric Transitions*, 258 F.R.D. 391 (E.D. Cal. 2009) (Finding that the amount of documents requested was excessive). Moreover, CFMG objects to the type of documents requested as it is not proportional to the needs of the case. *L.S. v. Oliver*, No. 19CV746-JLS-LL, 2019 WL 4849174, *4 (S.D. Cal. Oct. 1, 2019) (Limiting the scope of documents required to be produced to the propounding party).

**PLAINTIFFS' REQUEST FOR PRODUCTION NO. 6 TO CFMG:**

For each company or entity of which California Forensic Medical Group, Inc., is a Variable Interest Entity, please produce all of such company/entity's GAAP-compliant audited financial statements, with Notes to the financial statements, including audit opinions, annual reports, balance sheets, statements of shareholder/owners' equity, statements of cash flows, statements of operations or profit and loss, and all supplementary information such as combining schedules for consolidated reports, for the years January 1, 2024, to the present , with supplemental responses no less than 30 days before trial.

**RESPONSE TO REQUEST NO. 6:**

CFMG objects to this Request on the grounds that it is vague, ambiguous, and overly broad. CFMG further objects that the Request is excessive and unduly burdensome as to scope. *E.E.O.C. v. California Psychiatric Transitions*, 258 F.R.D. 391 (E.D. Cal. 2009) (Finding that the amount of documents requested was excessive). Moreover, CFMG objects to the type of documents requested as it is not proportional to the needs of the case. *L.S. v. Oliver*, No. 19CV746-JLS-LL, 2019 WL 4849174, *4 (S.D. Cal. Oct. 1, 2019) (Limiting the scope of documents required to be produced to the propounding party). Additionally, CFMG objects to this Request to the extent it seeks documents outside of its possession, custody, and control. Specifically, CFMG objects to this Request to the extent Plaintiffs seek documents from Wellpath, LLC. Plaintiffs are enjoined from requiring that Wellpath participate in discovery. See ECF 122.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 6:**

CFMG objects to this Request as it is not proportional to the needs of the case, not reasonably calculated to lead to the discovery of admissible evidence, and not likely to be relevant

for any findings of punitive damages. CFMG objects to this Request as vague and confusing. Specifically, a Variable Interest Entity (VIE) is an accounting term, which is determined by an accounting test, and not a type of structured legal entity. Accordingly, it is impossible to be a VIE of any other "company or entity," and CFMG is unable to respond to this Request as phrased. Subject to and without waiving these objections, for accounting purposes, CFMG is a VIE and is reported on the consolidated financial statements of Wellpath, LLC.

**PLAINTIFFS' REQUEST FOR PRODUCTION NO. 8 TO CFMG:**

For each company or entity of which CFMG is a Variable Interest Entity, please produce complete federal and California tax returns, with all schedules and attachments, for the years 2024 to the present (date of trial), with supplemental responses no less than 30 days before trial.

**RESPONSE TO REQUEST NO. 8:**

CFMG objects to this Request on the grounds that it is vague, ambiguous, and overly broad. CFMG further objects that the Request is excessive and unduly burdensome as to scope. *E.E.O.C. v. California Psychiatric Transitions*, 258 F.R.D. 391 (E.D. Cal. 2009) (Finding that the amount of documents requested was excessive). Moreover, CFMG objects to the type of documents requested as it is not proportional to the needs of the case. *L.S. v. Oliver*, No. 19CV746-JLS-LL, 2019 WL 4849174, *4 (S.D. Cal. Oct. 1, 2019) (Limiting the scope of documents required to be produced to the propounding party). Additionally, CFMG objects to this Request to the extent it seeks documents outside of its possession, custody, and control. Specifically, CFMG objects to this Request to the extent Plaintiffs seek documents from Wellpath, LLC. Plaintiffs are enjoined from requiring that Wellpath participate in discovery. See ECF 122.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 8:**

CFMG objects to this Request as it is not proportional to the needs of the case, not reasonably calculated to lead to the discovery of admissible evidence, and not likely to be relevant for any findings of punitive damages. CFMG objects to this Request as vague and confusing. Specifically, a Variable Interest Entity (VIE) is an accounting term, which is determined by an accounting test, and not a type of structured legal entity. Accordingly, it is impossible to be a VIE of any other "company or entity," and CFMG is unable to respond to this Request as phrased.

Subject to and without waiving these objections, for accounting purposes, CFMG is a VIE and is reported on the consolidated financial statements of Wellpath, LLC.

**PLAINTIFFS' REQUEST FOR PRODUCTION NO. 9 TO CFMG:**

Please produce all documentation that reflects CFMG's financial condition and/or ability to pay a punitive damages award for the years 2024 to the present (date of trial), including but not limited to assets, liabilities, revenue, cash flow, profit, expenses, loss, gross income, net income, net worth, value, loans, mortgages, lines of credit, solvency, and financial stability.

**RESPONSE TO REQUEST NO. 9:**

CFMG objects to this Request on the grounds that it is vague as to the phrase "all documentation," ambiguous, and overly broad. CFMG further objects that the Request is excessive and unduly burdensome as to scope. *E.E.O.C. v. California Psychiatric Transitions*, 258 F.R.D. 391 (E.D. Cal. 2009) (Finding that the amount of documents requested was excessive). Moreover, CFMG objects to the type of documents requested as it is not proportional to the needs of the case. *L.S. v. Oliver*, No. 19CV746-JLS-LL, 2019 WL 4849174, *4 (S.D. Cal. Oct. 1, 2019) (Limiting the scope of documents required to be produced to the propounding party).

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 9:**

Subject to the above objections, CFMG directs Plaintiffs to documents previously produced as CFMG 000299-000378 [2022 Tax Returns]. CFMG will also produce its 2024 tax returns when they become available.

**SECOND SUPPLEMENTAL RESPONSE TO REQUEST NO. 9:**

Subject to the above objections, CFMG directs Plaintiffs to the following CONFIDENTIAL documents produced with these responses: CFMG 001466-001536 [2024 Tax Returns]

**PLAINTIFFS' REQUEST FOR PRODUCTION NO. 10 TO CFMG:**

Please produce all charts and/or diagrams showing the current, post-bankruptcy corporate/entity structure of the family of companies formerly known as the Wellpath family of companies.

**RESPONSE TO REQUEST NO. 10:**

CFMG objects to this Request as vague as to the phrase "all charts and/or diagrams." Additionally, CFMG objects to this Request to the extent it seeks documents outside of its possession, custody, and

control. Specifically, CFMG objects to this Request to the extent Plaintiff seek documents from Wellpath, LLC. Plaintiffs are enjoined from requiring that Wellpath participate in discovery. See ECF 122. Moreover, this Request seeks documents from third parties who are not a party to this lawsuit. CFMG objects to this Request as it seeks sensitive and proprietary corporate information that is not proportional to the needs of the case.

**PLAINTIFFS' REQUEST FOR PRODUCTION NO. 2 TO WELLPATH LLC:**

Please produce all contracts and/or agreements between California Forensic Medical Group, Inc. (CFMG) and DEFENDANT WELLPATH MANAGEMENT, INC. and/or DEFENDANT WELLPATH LLC under which CFMG paid such company(ies) or entity(ies) more than $5 million ($5,000,000) in 2024 and/or 2025.

**RESPONSE TO REQUEST NO. 2:**

Wellpath, LLC objects to this Request on the grounds that it violates the bankruptcy discharge order. *See In re Wellpath SF Holdco, LLC*, Case No. 24-90566, Dkt. 1279 (TXSB, January 25, 2026) (Attached as Exhibit A). Additionally, Wellpath, LLC is no longer a party to this matter for purposes of Plaintiffs' claims. Therefore, Plaintiff must "substitute the Liquidating Trust as a nominal defendant in place of the Post-Restructuring Debtor in that litigation." *Id*. at ¶ 3. Specifically, the "Liquidating Trust has assumed the Debtors' liability for all General Unsecured Claims, including personal injury and wrongful death claims that arose before the Petition Date." *See* Dkt. 115, ¶ 9. The Bankruptcy Court recently clarified that holders of a general unsecured claim arising from alleged pre-petition injury tort or wrongful death may proceed against the Liquidating Trust as a nominal defendant. *See In re Wellpath SF Holdco, LLC*, Case No. 24-90566, Dkt. 1279, ¶ 1 (TXSB, January 25, 2026). Importantly, "[a]s a nominal defendant, the Trust is not required to file answers, **participate in discovery or hearings**, or take an active role in any such litigation." *Id* (emphasis added). Additionally, "the Plan does not permit any party to proceed against the Post-Restructuring Debtors or any Debtor, including but not limited to Wellpath, LLC, in any capacity, including as a nominal defendant." *Id.* Should Plaintiffs continue to improperly seek discovery from Wellpath, LLC, it will be forced to file for

sanctions for violating the bankruptcy discharge. *Id* at ¶ 5.

**PLAINTIFFS' REQUEST FOR PRODUCTION NO. 3 TO WELLPATH LLC:**

Please produce all financial documentation that describes California Forensic Medical Group, Inc., as a Variable Interest Entity related to, or listed on reports of, DEFENDANT WELLPATH MANAGEMENT, INC. and/or DEFENDANT WELLPATH LLC, from June 1, 2025 to present, with supplemental responses no less than 30 days before trial.

**RESPONSE:**

Same as Response No. 2 to Plaintiffs Request for Production No. 2 to Wellpath LLC, above.

**PLAINTIFFS' REQUEST FOR PRODUCTION NO. 4 TO WELLPATH LLC:**

Please produce all California Forensic Medical Group, Inc.'s, GAAP-compliant audited financial statements, with Notes to the financial statements, including audit opinions, annual reports, balance sheets, statements of shareholder/owners' equity, statements of cash flows, statements of operations or profit and loss, and all supplementary information such as combining schedules for consolidated reports, for the years January 1, 2024, to the present, with supplemental responses no less than 30 days before trial.

**RESPONSE:**

Same as Response No. 2 to Plaintiffs Request for Production No. 2 to Wellpath LLC, above.

**PLAINTIFFS' REQUEST FOR PRODUCTION NO. 5 TO WELLPATH LLC:**

Please produce all of DEFENDANT WELLPATH MANAGEMENT, INC. and DEFENDANT WELLPATH LLC's GAAP-compliant audited financial statements, with Notes to the financial statements, including audit opinions, annual reports, balance sheets, statements of shareholder/owners' equity, statements of cash flows, statements of operations or profit and loss, and all supplementary information such as combining schedules for consolidated reports, for the years January 1, 2024, to the present , with supplemental responses no less than 30 days before trial.

**RESPONSE:**

Same as Response No. 2 to Plaintiffs Request for Production No. 2 to Wellpath LLC, above.

**PLAINTIFFS' REQUEST FOR PRODUCTION NO. 6 TO WELLPATH LLC:**

Please produce complete federal and California tax returns, with all schedules and

attachments, for DEFENDANT WELLPATH MANAGEMENT, INC. and/or DEFENDANT WELLPATH LLC, for the years 2024 to the present, with supplemental responses no less than 30 days before trial.

**RESPONSE:**

Same as Response No. 2 to Plaintiffs Request for Production No. 2 to Wellpath LLC, above.

**PLAINTIFFS' REQUEST FOR PRODUCTION NO. 7 TO WELLPATH LLC:**

Please produce all documentation that reflects financial condition and/or ability to pay a punitive damages award of Defendants CFMG, WELLPATH MANAGEMENT, INC., and DEFENDANT WELLPATH LLC for the years 2024 to the present (date of trial), including but not limited to assets, liabilities, revenue, cash flow, profit, expenses, loss, gross income, net income, net worth, value, loans, mortgages, lines of credit, solvency, and financial stability.

**RESPONSE:**

Same as Response No. 2 to Plaintiffs Request for Production No. 2 to Wellpath LLC, above.

**PLAINTIFFS' REQUEST FOR PRODUCTION NO. 8 TO WELLPATH LLC:**

Please produce all charts and/or diagrams showing the current, post-bankruptcy corporate/entity structure of the family of companies formerly known as the Wellpath family of companies.

**RESPONSE:**

Same as Response No. 2 to Plaintiffs Request for Production No. 2 to Wellpath LLC, above.

**PLAINTIFFS' RULE 45 SUBPOENA SERVED ON WELLPATH LLC 2/4/26, REQUEST NO. 2**

Please produce the Deficit Funding Loan Agreement referenced in paragraph 4.4 of the Management Services Agreement dated December 31, 2012 (assigned to Wellpath LLC effective January 1, 2019.

**RESPONSE TO REQUEST NO. 2:**

Wellpath, LLC objects to this Request on the grounds that it violates the Bankruptcy Discharge Order and Bankruptcy Clarifying Order. *See* Dkt. 115, ¶ 5 (Holders of Claims and Causes of Action that are discharged are permanently enjoined from commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with

respect to any such claims or interests*.); In re Wellpath Holdco, LLC*, Case No. 24-90566, Dkt. 1279, ¶ 2 (TXSB January 26, 2026).

Specifically, Wellpath, LLC objects to this Request as it improperly seeks financial information from a Debtor entity that is no longer a party to this lawsuit for purposes of enforcing a judgment on a pre-petition claim that has been discharged in bankruptcy. Specifically, Plaintiffs are enjoined from "enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests." *See* Dkt. 115, ¶ 5. The bankruptcy court clarified that Plaintiffs are not to proceed against Wellpath LLC. *See In re Wellpath SF Holdco, LLC*, Case No. 24-90566, Dkt. 1279, ¶ 4-5 (TXSB, January 25, 2026). While Debtors like Wellpath, LLC are subject to Rule 45 subpoena for purposes of determining "responsibility, liability, or apportionment," *Id* at ¶ 7, the Clarifying Order does not allow Plaintiffs to request sensitive financial records to explore a Debtor's ability to pay a judgments for a pre-petition claim that has been discharged in bankruptcy. Plaintiffs' option to pursue payment against a Debtor entity like Wellpath LLC lie exclusively through the bankruptcy proceedings. Therefore, any such Request for financial information is not only improper per the Bankruptcy Discharge and Clarifying Orders but not proportional to the needs of the case, not reasonably calculated to lead to the discovery of admissible evidence, not relevant for any findings of punitive damages, and not relevant regarding CFMG's ability to pay.

Wellpath, LLC objects to Plaintiffs' Request because Paragraph 4.4 of the Management Service Agreement (CFMG 000112-000137) does not pertain to indemnification. Even if Paragraph 4.4 was relevant to indemnification, which it is not, Wellpath is not required to indemnify CFMG with respect to this case per the plain language of the Management Service Agreement. (CFMG 000112-000137). Instead, CFMG is required to indemnify, defend, and hold harmless, Wellpath, LLC, its affiliates and their respective directors, managers, officers, equity holders, employees, agents (including the Management Company Representatives), successors, and permitted assigns…from and against all losses, liabilities, demands, claims, actions or causes of action, regulatory, legislative or judicial proceedings or investigations, assessments, levies,

fines, penalties, damages, costs and expenses…incurred in connection with the defense or investigation of any claim sustained or incurred by any Management Company Indemnified Party arising from or related to illegal activity, intentional misconduct, negligence, or breach of this Agreement by the Company and its employees. *See* MSA, Article VII, ¶ 7.1. The only remaining claims not discharged by the bankruptcy are against CFMG and its employees, not Wellpath, LLC; thus, the Management Service Agreement requires CFMG to indemnify Wellpath, LLC for the claims at issue in this lawsuit, and not the other way around. Therefore, this Request is irrelevant to Plaintiffs remaining claims against CFMG and its employees, irrelevant to CFMG's ability to pay any judgment in this matter and is a backdoor attempt at financial discovery into a Debtor entity in violation of multiple bankruptcy court orders. Wellpath, LLC will not be producing any documents responsive to this Request.

**PLAINTIFFS' RULE 45 SUBPOENA SERVED ON WELLPATH LLC 2/4/26, REQUEST NO. 3**

Please produce all loan agreements between WELLPATH LLC and CFMG from 2019 to the present.

**RESPONSE TO REQUEST NO. 3:**

Wellpath, LLC objects to this Request on the grounds that it violates the Bankruptcy Discharge Order and Bankruptcy Clarifying Order. *See* Dkt. 115, ¶ 5 (Holders of Claims and Causes of Action that are discharged are permanently enjoined from commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests*.); In re Wellpath Holdco, LLC*, Case No. 24-90566, Dkt. 1279, ¶ 2 (TXSB January 26, 2026).

Specifically, Wellpath, LLC objects to this Request as it improperly seeks financial information from a Debtor entity that is no longer a party to this lawsuit for purposes of enforcing a judgment on a pre-petition claim that has been discharged in bankruptcy. Specifically, Plaintiffs are enjoined from "enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests." *See* Dkt. 115, ¶ 5. The bankruptcy court clarified that Plaintiff is not to proceed against Wellpath LLC. *See In re Wellpath SF Holdco, LLC*, Case No.

24-90566, Dkt. 1279, ¶ 4-5 (TXSB, January 25, 2026). While Debtors like Wellpath, LLC are subject to Rule 45 subpoena for purposes of determining "responsibility, liability, or apportionment," *Id* at ¶ 7, the Clarifying Order does not allow Plaintiff to request sensitive financial records to explore a Debtor's ability to pay a judgment for a pre-petition claim that has been discharged in bankruptcy. Plaintiff's options to pursue payment against a Debtor entity like Wellpath LLC lie exclusively through the bankruptcy proceedings. Therefore, any such Request for financial information is not only improper per the Bankruptcy Discharge and Clarifying Orders but not proportional to the needs of the case, not reasonably calculated to lead to the discovery of admissible evidence, not relevant for any findings of punitive damages, and not relevant regarding CFMG's ability to pay. This request is a backdoor attempt at financial discovery into a Debtor entity in violation of multiple bankruptcy court orders. Wellpath, LLC will not be producing any documents responsive to this Request.

**PLAINTIFFS' RULE 45 SUBPOENA SERVED ON WELLPATH LLC 2/4/26, REQUEST NO. 4**

Please produce all contracts and/or agreements between California Forensic Medical Group, Inc. (CFMG) and WELLPATH LLC under which CFMG paid Wellpath LLC more than $5 million ($5,000,000) in 2024 and/or 2025.

**RESPONSE TO REQUEST NO. 4:**

Same as Wellpath LLC's response to Subpoena Request No. 3, above.

**PLAINTIFFS' RULE 45 SUBPOENA SERVED ON WELLPATH LLC 2/4/26, REQUEST NO. 5**

Please produce all financial documentation that describes California Forensic Medical Group, Inc., as a Variable Interest Entity related to, or listed on reports of, WELLPATH LLC, from June 1, 2025 to present.

**RESPONSE TO REQUEST NO. 5:**

Wellpath, LLC objects to this Request on the grounds that it violates the Bankruptcy Discharge Order and Bankruptcy Clarifying Order. *See* Dkt. 115, ¶ 5 (Holders of Claims and Causes of Action that are discharged are permanently enjoined from commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests*.); In re Wellpath Holdco, LLC*, Case No. 24-90566, Dkt.

1279, ¶ 2 (TXSB January 26, 2026).

Specifically, Wellpath, LLC objects to this Request as it improperly seeks financial information from a Debtor entity that is no longer a party to this lawsuit for purposes of enforcing a judgment on a pre-petition claim that has been discharged in bankruptcy. Specifically, Plaintiffs are enjoined from "enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests." *See* Dkt. 115, ¶ 5. The bankruptcy court clarified that Plaintiff is not to proceed against Wellpath LLC. *See In re Wellpath SF Holdco, LLC*, Case No. 24-90566, Dkt. 1279, ¶ 4-5 (TXSB, January 25, 2026). While Debtors like Wellpath, LLC are subject to Rule 45 subpoena for purposes of determining "responsibility, liability, or apportionment," *Id* at ¶ 7, the Clarifying Order does not allow Plaintiff to request sensitive financial records to explore a Debtor's ability to pay a judgment for a pre-petition claim that has been discharged in bankruptcy. Plaintiff's options to pursue payment against a Debtor entity like Wellpath LLC lie exclusively through the bankruptcy proceedings. Therefore, any such Request for financial information is not only improper per the Bankruptcy Discharge and Clarifying Orders but not proportional to the needs of the case, not reasonably calculated to lead to the discovery of admissible evidence, not relevant for any findings of punitive damages, and not relevant regarding CFMG's ability to pay.

Wellpath, LLC, also objects to this Request as vague and confusing. Specifically, a Variable Interest Entity (VIE) is an accounting term, which is determined by an accounting test, and not a type of structured legal entity. Accordingly, it is impossible to be a VIE of any other "company or entity," and Wellpath is unable to respond to this Request as phrased.

This Request is a backdoor attempt at financial discovery into a Debtor entity in violation of multiple bankruptcy court orders. Wellpath, LLC will not be producing any documents responsive to this Request.

**PLAINTIFFS' RULE 45 SUBPOENA SERVED ON WELLPATH LLC 2/4/26, REQUEST NO. 6**

For purposes of assessing CFMG's financial position and ability to pay a punitive damages judgment, please produce all California Forensic Medical Group, Inc.'s GAAP-compliant audited

financial statements, with Notes to the financial statements, including audit opinions, annual reports, balance sheets, statements of shareholder/owners' equity, statements of cash flows, statements of operations or profit and loss, and all supplementary information such as combining schedules for consolidated reports, and all consolidating statements regarding CFMG, for the years January 1, 2024, to the present, with supplemental responses no less than 30 days before trial.

**RESPONSE TO REQUEST NO. 6:**

Wellpath, LLC objects to the extent this Request seeks documents from CFMG who is a party to the present litigation. Subject to and without waiving the above objection, Wellpath, LLC directs Plaintiffs to CFMG's responses to Plaintiffs' Request for Documents, Set Five.

**PLAINTIFFS' RULE 45 SUBPOENA SERVED ON WELLPATH LLC 2/4/26, REQUEST NO. 7**

For purposes of assessing CFMG's financial position and ability to pay a punitive damages judgment including through loans as described in paragraph 4.4 of the Management Services Agreement dated December 31, 2012 (assigned to Wellpath LLC effective January 1, 2019), please produce all WELLPATH LLC's GAAP-compliant audited financial statements, with Notes to the financial statements, including audit opinions, annual reports, balance sheets, statements of shareholder/owners' equity, statements of cash flows, statements of operations or profit and loss, and all supplementary information such as combining schedules for consolidated reports, and all consolidating statements regarding CFMG, for the years January 1, 2024, to the present, with supplemental responses no less than 30 days before trial.

**RESPONSE TO REQUEST NO. 7:**

Same as Wellpath LLC's response to Subpoena Request No. 2, above.

**PLAINTIFFS' RULE 45 SUBPOENA SERVED ON WELLPATH LLC 2/4/26, REQUEST NO. 8**

For purposes of assessing CFMG's financial position and ability to pay a punitive damages judgment including through loans as described in paragraph 4.4 of the Management Services Agreement dated December 31, 2012 (assigned to Wellpath LLC effective January 1, 2019), please produce complete federal and California tax returns, with all schedules and attachments, for WELLPATH LLC, for the years 2024 to the present.

**RESPONSE TO REQUEST NO. 8:**

Same as Wellpath LLC's response to Subpoena Request No. 2, above.

**PLAINTIFFS' RULE 45 SUBPOENA SERVED ON WELLPATH LLC 2/4/26, REQUEST NO. 9**

Please produce all documentation that reflects Defendant CFMG's financial condition and/or ability to pay a punitive damages award for the years 2024 to the present, including but not limited to concerning assets, liabilities, revenue, cash flow, profit, expenses, loss, gross income, net income, net worth, value, loans, lines of credit, loan agreements, loan options, debt forgiveness, mortgages, solvency, and financial stability.

**RESPONSE TO REQUEST NO. 9:**

Wellpath, LLC objects to the extent this Request seeks documents from CFMG who is a party to the present litigation. Subject to and without waiving the above objection, Wellpath, LLC directs Plaintiffs to CFMG's responses to Plaintiffs' Request for Documents, Set Five.

**PLAINTIFFS' RULE 45 SUBPOENA SERVED ON WELLPATH LLC 2/4/26, REQUEST NO. 10**

Please produce all charts and/or diagrams showing the current, post-bankruptcy corporate/entity structure of the family of companies formerly known as the Wellpath family of companies.

**RESPONSE TO REQUEST NO. 10:**

Wellpath, LLC objects to this Request on the grounds that it violates the Bankruptcy Discharge Order and Bankruptcy Clarifying Order. *See* Dkt. 115, ¶ 5 (Holders of Claims and Causes of Action that are discharged are permanently enjoined from commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests.*); In re Wellpath Holdco, LLC*, Case No. 24-90566, Dkt. 1279, ¶ 2 (TXSB January 26, 2026). Wellpath, LLC further objects to this Request as it is outside the scope of the present litigation. Specifically, the post-bankruptcy structure of Wellpath, LLC and its affiliated companies has no tangible relationship to Plaintiffs' pending lawsuit. Therefore, any Request for such documents is overly burdensome and not proportional to the needs of the case.

Additionally, Wellpath, LLC objects to this Request as it improperly proprietary information for purposes of enforcing a judgment that has been discharged in bankruptcy.

Specifically, Plaintiffs are enjoined from "enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests." *See* Dkt. 115, ¶ 5. The bankruptcy court clarified that Plaintiffs are not to proceed against Wellpath LLC. *See In re Wellpath SF Holdco, LLC*, Case No. 24-90566, Dkt. 1279, ¶ 4-5 (TXSB, January 25, 2026). Moreover, the bankruptcy court stated that Wellpath, LLC is subject to a Rule 45 subpoena for purposes of determining "responsibility, liability, or apportionment." *Id* at ¶ 7. It does not allow Plaintiffs to request sensitive financial records for judgments that have been discharged in bankruptcy. Therefore, any such Request for financial information is not only improper per the bankruptcy order but not proportional to the needs of the case, not reasonably calculated to lead to the discovery of admissible evidence, and not likely to be relevant for any findings of punitive damages. Subject to and without waiving the above objections, Wellpath, LLC will not be producing any documents responsive to this Request.

## ARGUMENT

**PLAINTIFFS' POSITION:**

### A. Punitive Damages

"[E]vidence of a tortfeasor's wealth is traditionally admissible as a measure of the amount of punitive damages that should be awarded." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270 (1981). The jury is required to consider Defendants' "financial position" in determining a punitive damages verdict to ensure that the verdict does not violate Defendants' due process rights. See *Pacific Mutual Life Insurance Company v. Haslip*, 499 U.S. 1, 21-22 (1991). California courts frame the issue as the defendant's "financial condition" and "ability to pay" a punitive damages award. See *Adams v. Murakami*, 54 Cal.3d 105, 112 and fn. 7 (1991).

"[T]he Supreme Court has expressly declined to adopt net worth as the standard for determining a defendant's ability to pay in any given situation." *Zaxis Wireless Communications v. Motor Sound Corp.*, 89 Cal.App.4th 577, 582 (2001) (citing *Adams v. Murakami*, *supra*, 54 Cal. 3d at 116, fn. 7 ("Various measures of a defendant's ability to pay a punitive damages award have been suggested. Defendant in this

case contends the best measure of his ability to pay is his net worth. . . . We decline at present, however, to prescribe any rigid standard for measuring a defendant's ability to pay.")). "Net worth is too easily subject to manipulation to be the sole standard for measuring a defendant's ability to pay." *Zaxis, supra,* (citing *Lara v. Cadag,* 13 Cal. App. 4th 1061, 1064-1065 & fn. 3 (1993) ("'Net worth' is subject to easy manipulation and, in our view, it should not be the only permissible standard.")).

"In the end, '[w]hat is required is evidence of the defendant's ability to pay the damage award.'" *Green v. Laibco*, 192 Cal.App.4th 441, 453 (2011) (quoting *Robert L. Cloud & Assoc., Inc. v. Mikesell*, 69 Cal.App.4th 1141, 1152). Noting that "the issue before us does not turn on defendant's net worth" but rather was "whether the amount of damages exceeds the defendant's ability to pay," *Zaxis* upheld a punitive damages award based in part on a line of credit available to the defendant. 89 Cal.App.4th at 582-83.

> Perhaps the most compelling evidence of Motor Sound's ability to pay was Pastrik's testimony that as of the time of trial, Motor Sound had a credit line of $ 50 million of which $ 5.3 million was unexpended at the end of 1999. This line of credit indicates the lender made a determination Motor Sound had the ability to pay amounts well in excess of the $ 300,000 punitive damage award.

*Id*. See also *Devlin v. Kearny Mesa AMC/Jeep/Renault*, 155 Cal.App.3d 381, 391 (1984) (upholding punitive damages award based in part on finding that "a corporate resolution to borrow also serves as an indicator of the continuing health and viability of a business").

"[T]he California standard [for imposition and review of punitive damages] satisfies due process." *Boyle v. Lorimar Products*, 13 F.3d 1357, 1359 (9th Cir. 1994). The Ninth Circuit and courts in California require that a defendant's financial condition and ability to pay be considered in order to determine whether "the amount of the punitive damages will have a deterrent effect in light of the defendant's financial condition." *Boyle*, 13 F.3d at 1359-1360 (citing *Las Palmas Associates v. Las Palmas Center Associates*, 1 Cal.Rptr.2d 301, 313 (1991)). See also*, Neal v. Farmers Insurance Exchange*, 21 Cal.3d 910, 928 (1978) ("Also to be considered is the wealth of the particular defendant; obviously, the function of deterrence … will not be served if the wealth of the defendant allows him to absorb the award with little or no discomfort").

Punitive damages are designed to fulfill public purposes of punishment and deterrence. *Adams v. Murakami*, 54 Cal.3d 105, 110 (1991). Those public purposes are not fulfilled both in cases of over

punishment and under punishment. *Delos v. Farmers Group, Inc.*, 93 Cal. App. 3d 642, 667 (1979) ("a punitive damage award which fails to adequately punish is as legally defective as an award which over-punishes"). It is imperative that Defendant CFMG and its parent, Wellpath LLC, are prevented from obstructing Plaintiffs' efforts to determine CFMG's true financial condition and ability to pay a punitive damages award.

**1. Plaintiffs Do Not Need to Establish a Prima Facie Showing of Entitlement to Punitive Damages Discovery**

Although, the Ninth Circuit has not established "the parameters of the dissemination of financial information during discovery when punitive damages are alleged," a majority of federal courts do not require the plaintiff to make a prima facie showing that punitive damages may be recovered "to discover information relating to the Defendant's financial condition in advance of trial." *EEOC v. Cal. Psych. Transitions*, 258 F.R.D. 391, 394-95 (E.D. Cal. 2009). Courts in the Eastern District have followed this majority view and have held that discovery of financial information is relevant and permissible under the Federal Rules without a prima facie showing by the Plaintiff. See *Johnson v. City of Redding*, 2023 U.S. Dist. LEXIS 101798; *Salisbury v. Hickman*, No. 12-cv-01098-LJO, 2013 U.S. Dist. LEXIS 115024, at *12 (E.D. Cal. Aug. 14, 2013) (citing *E.E.O.C.*, 258 F.R.D. at 394) (noting "a majority of federal courts permit discovery of financial information about the defendant without requiring [the] plaintiff to establish a *prima facie* case on the issue of damages"); *Atayde v. Napa State Hosp.*, No. 1:16-CV-00398-DAD-SAB, 2020 U.S. Dist. LEXIS 21818, *8-10 (E.D. Cal. Feb. 7, 2020) (collecting cases). The Northern District of California also adopted this majority view in *M.H. v. County of Alameda, et al.*, Case No. 11-cv-02868-JST (Doc. 291), when Judge Jon Tigar rejected the argument that disclosure of financial documents should wait until the plaintiffs could show entitlement to punitive damages and held that a Defendants' financial information is "plainly relevant to Plaintiff's entitlement to punitive damages" and ordered the defendants to produce the requested financial information. See also, *Vieste, LLC v. Hill Redwood Dev.*, No. 09-cv-04024-JSW (DMR), 2011 U.S. Dist. LEXIS 29137, at * 8-10 (N.D. Cal. Mar. 9, 2011) (rejecting the argument that disclosure should wait until the plaintiffs could show entitlement to punitive damages, or until the close of the liability phase of the trial, because the case was in an advanced procedural posture, and the defendants' finances would be valuable to all parties in appraising the case

and supporting settlement efforts).

### 2. Corporate Tax Returns are Discoverable for Punitive Damages Purposes

"Tax returns do not enjoy an absolute privilege from discovery." *Premium Service Corp. v. The Sperry & Hutchinson Company*, 511 F. 2d 225, 229 (9th Cir. 1975). Courts in California have repeatedly ordered production of tax returns for punitive damages purposes. See *Johnson*, *supra; Fair Housing Council of Central Cal*., *Inc. v. Nunez*, No 1:10-cv-2073 LJO DLB, 2011 US Dist. LEXIS 127389, at *5-6 (E.D. Cal. November 3, 2011) (ordering production of tax returns and financial records, finding that the "financial information is relevant to Plaintiffs claim for punitive damages and within the scope of permissible discovery.").

In addition, courts in multiple cases against Correct Care Solutions (now part of Wellpath) and other corporate jail healthcare providers have required the Defendants to produce tax returns where punitive damages were sought. See *Johnson*, *supra; Penman v. Correct Care Solutions, LLC*, No. 5:18-cv-00058-TBR-LLK, 2021 US Dist LEXIS 137633, at *22 (W.D. Ky. July 23, 2021) ("CCS SHALL produce, for the current year, and the year immediately prior, state and federal income tax returns (as they become available), balance sheets, income statements, and all attached schedules."); *Pedersen v. Corizon Health Inc*., No. CV-18-00513-TUC-JCH, 2022 U.S. Dist. LEXIS 180824, *14 (D. Ariz. October 3, 2022) ("Corizon shall produce current balance sheet or net worth statement and copies of [its] federal income tax returns from 2020 and 2021, as well as revenue or earnings projections/results from 2022, when available."); *Corizon Health, Inc. v. Correctek, Inc.*, No. 5:17-CV-35-TBR-LLK, 2017 US Dist. LEXIS 218247, at *12 (W.D. Ky. December 12, 2017) (courts "have consistently held that state and federal income tax returns..., balance sheets, income statements, and all attached schedules, as well as revenue or earnings projections/results...are discoverable.").

Moreover, Courts have routinely found that a corporation's privacy rights may give way where the information requested is material, not available from another source, and protected from disclosure by a protective order. See *Lazaro v. Lomarey, Inc*., No. C 09-02013 RMW (PVT), 2010 U.S. Dist. LEXIS 101346, *5 (N.D. Cal. September 14, 2010) (requiring production of corporate tax returns).

Defendants should be ordered to produce the requested tax returns. Their privacy rights will be adequately protected under the parties' Protective Order.

### 3. **Financial Information from Parent Corporations is Discoverable for Punitive Damages Purposes**

Courts recognize that where a subsidiary is liable for punitive damages, and financial information is on consolidated financial statements as it is here, the wealth of the parent or parent company is relevant for determining what amount of damages should be assessed. See *Johnson*, *supra; TXO Production Corp. v. Alliance Resources Corp.*, 419 S.E.2d 870, 890 (W.Va. 1992) aff'd, 113 S.Ct. 2711 (1993); *Mihara v. Dean Whitter & Co., Inc.*, 619 F.2d 814, 824 (9th Cir. 1980); *Riley v. Empire Airlines, Inc.*, 823 F.Supp. 1016, 1023 (N.D.N.Y. 1993) (if punitive damages appropriate, fact finder should consider wealth of defendant including any parent or subsidiary); *Dushaw v. Roadway Exp., Inc.*, 816 F.Supp. 1229, 1239 (N.D. Ohio 1992) (court takes judicial notice of parent's wealth in awarding punitive damages); *Schlang v. Key Airlines*, 794 F.Supp. 1493, 1513 (D. Nev. 1992) (court considered earnings and value of defendant's parent company in assessing punitive damages).

This is not "piercing the corporate veil" – rather as these cases explain, it is the only way to assess CFMG's true financial position. Defendants agree with this proposition, asserting that as a VIE, CFMG's financial position is that of the parent and managing company, Wellpath LLC. (See Lukasik Decl., ¶ 5: "It is precisely *because* CFMG is a VIE that the only accurate financial picture of the Defendants must be on a consolidated basis."). Defendants refuse to produce complete financial statements for either CFMG or Wellpath LLC, even though they admit that CFMG is a VIE "reported on the consolidated financial statements of Wellpath LLC." (CFMG Supplemental Response to Interrogatories (Set One), Answer 1). However, in a similar case involving consolidated financial statements, the Supreme Court affirmed a state supreme court permitting not only discovery, but also admission into evidence, of the parent company's wealth for punitive damages purposes. In *TXO Production Corp. v. Alliance Resources Corp.*, 419 S.E.2d 870, 890 (W.Va. 1992) *aff'd*, 509 U.S. 443 (1993), the West Virginia Supreme Court explained the basis for allowing a jury to consider the net worth of a parent corporation in a punitive damages case:

> If we did not allow trial judges in their sound discretion to admit evidence of the worth of parent corporations, corporations could escape liability simply by incorporating separate departments as a number of undercapitalized subsidiaries. It is the management of USX that must ultimately make the decision that its employees will not engage in malicious and nefarious business activities, and, therefore, it is the pocketbook of USX that the jury

verdict must reach.

In affirming the award of punitive damages, which was based in part on evidence of the defendant's parent corporation's wealth, the United States Supreme Court noted that while TXO had objected to such evidence, TXO itself had not offered any evidence in rebuttal with respect to whether some of the net wealth evidence presented included the wealth of affiliated companies. *TXO Products Corporation v. Alliance Res. Corporation*, 509 U.S. 443, 450-51 and fn. 9 and 28 (1993).

Similarly, in *Mihara v. Dean Witter & Co.*, 619 F.2d 814, 824 (9th Cir. 1980), the defendant, Dean Witter & Company, objected to the admission of annual financial reports of itself and its parent corporation, Dean Witter Organization. The Ninth Circuit held "The annual reports (though they reflect the income of the parent corporation, Dean Witter Organization, rather than Dean Witter & Company) and Gracis' tax returns, were clearly relevant for the determination of punitive damages."

Furthermore, district courts have ordered the production of similar "consolidated financials" of variable interest entities ("VIEs") for purposes of punitive damages. See *Johnson*, *supra; Meeker v. Life Care Ctrs. Of Am., Inc.*, No. 14-cv-02101-WYD-NYW, 2015 U.S. Dist. LEXIS 162989 at *20-23 (D. Colo. Dec. 4, 2015).

As a variable interest entity of Wellpath LLC, CFMG is not a stand-alone company. Its financial viability is dependent on Wellpath LLC, which manages and controls all aspects of CFMG's finances to the extent that CFMG claims it does not even have access to its own financial statements that are a part of Wellpath LLC's financial statements. Plaintiffs cannot assess Defendant CFMG's true financial condition without the requested tax returns, audited consolidated financial records, and loan documents requested from both CFMG and Wellpath LLC.

**4. Plaintiffs' Requests are Reasonably Limited in Time**

Plaintiffs limited their requests for Defendants' financial records from 2024-present. Courts in the Ninth Circuit permit discovery relating to a defendant's financial condition going back several years. See, *e.g., Santa Monica Baykeeper v. Kramer Metals, Inc.*, No. CV 07-3849 DDP (FMOx), 2009 U.S. Dist. LEXIS 69130, *7-16 (C.D. Cal. Feb. 27, 2009) (permitting discovery of defendant's financial documents going back **7 years**); *Salisbury v. Hickman*, No. 1:12-cv-01098-LJO-JLT, 2013 U.S. Dist. LEXIS 115024 (E.D. Cal. August 14, 2013) (permitting discovery of defendant's financial documents going back **5 years**

where punitive damages were claimed); *EEOC v. Braun Electric Company*, No. 1:12-cv-01592-LJO-JLT, 2014 U.S. Dist. LEXIS 9262 (E.D. Cal. January 24, 2014) (permitting discovery of defendant's financial documents going back **4 years** where punitive damages were claimed); *Phillips v. Clark County School District*, No. 2:10-cv-02068-GMN-GWF, 2012 U.S. Dist. LEXIS 5309 (D. Nev. January 18, 2012) (permitting discovery of defendant's financial documents going back **3 years** where punitive damages were claimed).

Plaintiffs' request for financial records going back only 2 years is reasonable.

**B. <u>By Failing to Provide a Privilege Log Over Many Months of Conferring, Defendants Have Waived Their Objections</u>**

A privilege log is required "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged …." Fed. R. Civ. Proc. 26(b)(5)(A)(ii). By its own terms, Rule 26 requires a party to produce a privilege log for *any* privilege, not just attorney-client privilege or attorney work-product privilege as Defendants baselessly assert below. Failure to provide a privilege log may constitute waiver of the privilege. *Ramirez v. County of L.A.*, 231 F.R.D. 407, 410 (C.D. Cal. 2005). See also *Burlington Northern & Santa Fe Ry. V. United States District Court*, 408 F.3d 1142, 1147-1150 (9th Cir. 2005) (affirming district court ruling that "defendant waived its privilege objections by failing to provide a privilege log at the time it served its discovery responses.").

CFMG and Wellpath LLC are sophisticated litigants who frequently appear before this Court and other courts. CFMG/Wellpath have objected to producing its financial information in no less than four cases handled by Plaintiffs' counsel in the Eastern District alone: *Johnson, supra.*; *Atayde v. Napa State Hospital and CFMG*, Case No. 1:16-cv-00398-DAD-SAB; *Adena v. Shasta County*, No. 2:21-cv-00770-MCE-DMC; and *Deppe v. Shasta County*, No. 2:22-cv-00187-DAD-JDP. CFMG/Wellpath LLC have never produced a privilege log for its financial documents in any of those cases.

Multiple courts have sanctioned Wellpath for discovery abuse, destruction of evidence, and "deceptive conduct," including with terminating sanctions.[4]

---

[4] See *Dence v. Wellpath, LLC*, No. 1:20-cv-00671, 2024 U.S. Dist. LEXIS 178953 (D. Or., Jan. 29, 2024) (default judgment granted for Wellpath's intentional destruction of evidence), *Dence v. Wellpath, LLC*, 2024 U.S. Dist. LEXIS 177086 (D. Or., Sept. 30, 2024) (adopting magistrate's recommendation); *Estate of Moreno v. Corr. Healthcare Cos.*, No. 4:18-cv-5171-RMP, 2020 U.S. Dist. LEXIS 108370, 2020 WL 5740265 (E.D. Wash., June 1, 2020) (default judgment granted for Wellpath company's intentional

Defendant CFMG and Wellpath LLC have never described what exactly they continue to withhold and why, nor have they ever asserted that the documents Plaintiffs seek do not exist. Defendants' blatant disregard for the requirements of Rule 26 make it much harder for Plaintiffs and this Court to review their blanket privilege claims. As in *Burlington Northern*, this Court should find that Defendants have waived any privilege claims.

**C. <u>Defendants Have a Duty to Supplement Their Financial Condition Discovery</u>**

Federal Rule of Civil Procedure 26(e) requires a party to supplement its initial disclosures or discovery responses "in a timely manner" when it learns that the disclosure or response is incomplete or incorrect and the information has not otherwise been made known to the opposing party. See *Persian Gulf Inc. v. BP W. Coast Prod. LLC*, No. 15cv1749-JO-AGS, 2022 U.S. Dist. LEXIS 180134, at *38 (S.D. Cal. Sept. 30, 2022). The Advisory Committee Notes to the 1993 Amendments suggest that the obligation to supplement under Rule 26(e) does not end with the fact discovery cutoff, and provides that supplementations "should be made at appropriate intervals during the discovery period, and with special promptness as the trial date approaches." *Yellowcake, Inc. v. Morena Music, Inc.*, No. 1:20-cv-00988-AWI-BAM, 2022 U.S. Dist. LEXIS 191701, at *10 (E.D. Cal. Oct. 20, 2022).

Because Defendants' financial condition at trial is to be assessed based on their then-current assets and liabilities, *Vieste*, 2011 U.S. Dist. LEXIS 29137, at *8-10, Plaintiffs' requests include tax returns and financial records to date, with supplemental responses no less than 30 days before trial.

**D. <u>Plaintiffs' Response to Defendants' Discovery Objections</u>**

In response to Plaintiffs' requests to CFMG to produce "all financial documentation that describes California Forensic Medical Group, Inc., as a Variable Interest Entity of another company or entity, from June 1, 2025 to present" and for CFMG's complete financial statements, CFMG objected "to the extent it seeks documents outside of its possession, custody, and control." (RFP to CFMG, Nos. 4 and 5). CFMG's assertion that it does not have possession or control of its own foundational documents and

---

destruction of evidence); *Johnson v. Coos Cnty.*, No. 6:19-cv-01883-AA, 2023 U.S. Dist. LEXIS 103305, 2023 WL 4002680 (D. Or. June 14, 2023) (default judgment granted for Wellpath's intentional destruction of evidence and for Wellpath's "deceptive conduct in this case"); *Jones v Wellpath LLC*, No. 0:22-cv-00042-KKC, 2024 U.S. Dist. LEXIS 85880 (E.D. KY, May 31, 2024) (monetary sanctions against Wellpath for discovery abuse and failing to disclose evidence).

financial statements defies credulity. If it is true that CFMG has no access to its own critical legal and financial documents, which are controlled by Wellpath LLC, then that further demonstrates CFMG's complete financial subordination to Wellpath LLC. It also necessitates Wellpath LLC's production of that information.

In response to requests for information about CFMG's county contracts (counties and amounts), Defendant CFMG objects that "the rule established by the lower California courts is that only net, not gross, figures are relevant" for punitive damages purposes, citing *Kaffaga v. Est. of Steinbeck*, 938 F.3d 1006 (9th Cir. 2019) (quoting *Boyle v. Lorimar Prods., Inc.*, 13 F.3d 1357, 1360 (9th Cir. 1994)). Defendants omit the very next sentence from *Kaffaga*: "The record thus must contain sufficient evidence of Gail's assets, income, and liabilities and expenses for the punitive damages award to stand." 938 F.3d at 1018. The request for information about CFMG's yearly revenues from its County contracts goes directly to its assets and income.

Further, as shown above, "[T]he Supreme Court has expressly declined to adopt net worth as the standard for determining a defendant's ability to pay in any given situation." *Zaxis*, 89 Cal.App.4th at 582 (citing *Adams v. Murakami*, *supra*, 54 Cal. 3d at 116, fn. 7 ("Various measures of a defendant's ability to pay a punitive damages award have been suggested. Defendant in this case contends the best measure of his ability to pay is his net worth. . . . We decline at present, however, to prescribe any rigid standard for measuring a defendant's ability to pay.")). "Net worth is too easily subject to manipulation to be the sole standard for measuring a defendant's ability to pay." *Zaxis, supra,* (citing *Lara v. Cadag,* 13 Cal. App. 4th 1061, 1064-1065 & fn. 3 (1993) ("'Net worth' is subject to easy manipulation and, in our view, it should not be the only permissible standard.")). "In the end, '[w]hat is required is evidence of the defendant's ability to pay the damage award.'" *Green v. Laibco*, 192 Cal.App.4th 441, 453 (2011) (quoting *Robert L. Cloud & Assoc., Inc. v. Mikesell*, 69 Cal.App.4th 1141, 1152).

A defendant's ability to pay includes its access to capital, loans, and lines of credit. *Zaxis*, 89 Cal.App.4th at 582-83; *Devlin v. Kearny Mesa AMC/Jeep/Renault*, 155 Cal.App.3d 381, 391 (1984) (upholding punitive damages award based in part on finding that "a corporate resolution to borrow also serves as an indicator of the continuing health and viability of a business").

In addition, CFMG's objection that the amounts and parties to CFMG's annual county contracts

"is equally available to Plaintiffs, as county contracts are a matter of public record" would place an incredible burden on Plaintiffs to seek copies of those contracts from every county in California under the Public Records Act, when CFMG undoubtedly has easy access to that information.

Defendants also rely on an unpublished order, *Overfield v. California Forensic Medical Group, Inc, et al.*, Case No. 2:24-cv-00199- TLN-AC, ECF p. 4 (September 24, 2025, E.D. Cal.), in a different context, that denied a motion to compel production of CFMG's receipts for management services fees paid. The *Overfield* plaintiffs did not raise or address CFMG's VIE status. In *Overfield*, unlike here, CFMG had produced its own "GAAP audited financials, tax returns, and other financial information." And the order in *Overfield* certainly does not negate the order in *Johnson v. City of Redding*, 2023 U.S. Dist. LEXIS 101798, 2023 WL 3955354 (E.D. Cal. June 22, 2023) for the "complete financial records" of CFMG, Wellpath LLC, and other Wellpath companies due to CFMG's VIE status.

In response to Plaintiffs' request for CFMG's and Wellpath LLC's complete, GAAP-compliant audited financial statements from 2024-present (RFP to CFMG, Nos. 5-7), Defendant CFMG objects that that request is "excessive and unduly burdensome as to scope," citing *E.E.O.C. v. California Psychiatric Transitions*, 258 F.R.D. 391 (E.D. Cal. 2009). *E.E.O.C.* provides no support for Defendant's intransigence: the Court found only that the request for financial records from 2002 was too remote in time, but *did* order the production of "balance sheets, statements of income, and statements of cash flow for the years for the years 2007, 2008, and any available information through 2009." 258 F.R.D. at 395. Here, Plaintiffs' generally limit their requests for records to 2024-present.

Defendant CFMG also objected to producing its financial statements claiming that "the type of documents requested" are not "proportional to the needs of the case," citing *L.S. v. Oliver*, 2019 U.S. Dist. LEXIS 170529, 2019 WL 4849174, *4 (S.D. Cal. Oct. 1, 2019). In *L.S.*, the defendant person agreed to produce his balance sheets, statements of income and statements of cash flow. 2019 U.S. Dist. LEXIS 170529 at *9. The court simply held that production of bank statements and investment account statements would not be proportional to the needs of that case. *Id*, at *2, *9. And, obviously, the defendant from whom the discovery was sought in *L.S.* was an individual, ***not*** a company with over $300 million in annual revenues, VIE status, and a comprehensive MSA with a parent company that regularly provides capital infusions in addition to withdrawals.

In response to Plaintiffs' requests for production to then-Defendant Wellpath LLC, that company claimed that the bankruptcy shielded it from having to comply with any discovery whatsoever. That assertion was false, and any doubt has been clarified by the bankruptcy court in its January 26, 2026 order explained above at pp. 8-9. (See **Ex. C**, ECF 1279, ¶¶ 7, 9, BK Case No. 24-90566). Defendants have a tendency to cite only the portions of bankruptcy orders that they agree with. The entire January 26, 2026 order (**Ex. C**, ECF 1279) that Defendant cite, particularly paragraphs 7 and 9, clearly requires Wellpath LLC to participate in discovery concerning CFMG's financial condition and ability to pay a punitive damages judgment.

In response to the subpoena to Wellpath LLC – the very method of discovery that counsel for Wellpath LLC demanded was the only appropriate method of discovery – Wellpath LLC continues to falsely claim that the January 26, 2026, bankruptcy order prohibits any discovery from it. One simply needs to read that order to know that that claim is not true. Further, Wellpath LLC's objection does not address its *current* status as manager and parent of its VIE, CFMG. The information sought from Wellpath LLC is necessary for a jury to determine CFMG's financial condition and ability to pay a punitive damages judgment, given the realities of Wellpath LLC's total management and financial control over CFMG.

Defendants object to producing organizational charts and diagrams showing the current relationships of CFMG/Wellpath companies based on the bankruptcy order and their claim that such information is "proprietary." Plaintiffs have already shown that the bankruptcy order is no impediment to this discovery. Failing to file a privilege log, Defendants have waived any objection that an organizational chart is proprietary. *Burlington Northern*, 408 F.3d 1142 at 1147-1150. And, if necessary, any claim that such information is proprietary could be ameliorated by the protective order, although it is not clear at all why such information should be classified as proprietary.

**DEFENDANTS' POSITION:**

**A. Financial discovery is presumptively privileged and should be reasonably limited.**

Financial information is "protected by the right to privacy under California law and these privacy rights are generally recognized in federal court." *E.E.O.C. v. California Psychiatric Transitions*, 258 F.R.D. 391, 395 (E.D. Cal. 2009). CFMG acknowledges that Plaintiffs are entitled to reasonable

discovery into its financial health for purposes of punitive damages, however, the documents requested by Plaintiffs are not indicative of CFMG's present financial health but instead a fishing expedition into the financials of non-party discharged entity Wellpath. *Mengistu v. Forestview Apartments, LLC*, No. 2:19-CV-05118-ODW-JC, 2020 WL 12029101 (C.D. Cal. June 5, 2020) (Finding that a request for documents from 2019 to present (2020) was sufficient to determine a defendants present financial condition); *See Also R. R. Donnelley & Sons Co. v. Pappas*, No. 2:21-CV-00753 DJC AC, 2024 WL 150249, *5 (E.D. Cal. Jan. 12, 2024) (Finding that a request for non-current financial information is irrelevant to a punitive damages determination).

Federal courts possess broad authority to limit discovery where requests are invasive, overbroad, or disproportionate to the needs of the case. Under Federal Rule of Civil Procedure 26(b)(1), discovery is limited to nonprivileged matter that is both relevant to a party's claims or defenses and proportional to the needs of the case, and courts routinely narrow discovery that exceed those limits. *See Scherer v. FCA US, LLC*, 538 F. Supp. 3d 1002, 1008 (S.D. Cal. 2021) (recognizing district courts' broad discretion to limit discovery to prevent its abuse"); *Walker v. AT&T Benefit Plan No. 3*, 338 F.R.D. 658, 663 (C.D. Cal. 2021) (explaining that proportionality considerations under Rule 26 operate to limit the scope of discovery). Courts apply these principles with particular caution when discovery seeks sensitive financial information, which is widely recognized as a category deserving heightened protection. In *Davis v. Leal*, 43 F. Supp. 2d 1102 (E.D. Cal. 1999), the court explained that financial information is "presumptively privileged," and that "even where the balance weighs in favor of disclosure of private information, the scope of disclosure will be narrowly circumscribed; such an invasion of the right to privacy must be drawn with narrow specificity and is permitted only to the extent necessary for a fair resolution of the lawsuit." *See also Amy Evans v. DSW Inc.,* No. CV 16-3791-JGB (SPX) at *5 (C.D. Cal. Aug. 24, 2017). These authorities confirm that courts not only have the power—but the obligation—to cabin discovery where requests intrude into private financial matters without a sufficiently narrow and proportional justification.

**B. The financial information requested from discharged non-party entity Wellpath is not relevant or proportional to the needs of this case.**

Here, all claims against Wellpath have been discharged in bankruptcy, and the Plaintiffs are

enjoined from any Rule 26 discovery against them with regard to pre-petition claims like this one. (ECF 1279, ¶ 5 BK Case No. 24-90566). When Plaintiffs realized they could not get access to financial information for Wellpath through the discovery process as a result of the bankruptcy, they attempted to use a subpoena issued under Rule 45 to Wellpath to access that same information. However, just because a subpoena is properly issued does not mean that its requests are relevant, proportional, or otherwise appropriate for the needs of the case. The proportionality rule of Rule 26(b)(2)(C) applies equally to non-party subpoenas. *See Life Fitness, LLC v. Forward Motion Pictures, LLC,* No. 2:24-MC-00494 DC CKD, 2025 WL 435834, at *5 (E.D. Cal. Feb. 7, 2025) ("This proportionality limitation applies to Rule 45 subpoenas to non-parties."); *citing St. Jude Medical S.C., Inc. v. Janssen-Counotte,* 305 F.R.D. 630 (2015)("[W]hat constitutes an 'undue burden' is the same when a nonparty is subpoenaed under Rule 45 as when a party receives a request for production under Rule 34," and the rule of proportionality applies to both Rule 34 requests and Rule 45 subpoenas to non-parties). Moreover, the Federal Rules specifically require parties to avoid creating undue burdens on third parties via subpoenas. Fed. R. Civ. P. 45(d)(1); *Jacoby v. Bd. of Supervisors of Univ. of Louisiana Sys*., 709 F. Supp. 3d 1087, 1089 (E.D. Cal. 2023)

To be clear, Wellpath is *not* suggesting that it is immune from complying with a properly issued subpoena, as Plaintiffs seem to imply *supra*; rather, Wellpath is asserting proper objections to Plaintiffs' subpoena based on the applicable law. Wellpath is under no obligation to provide documents to Plaintiffs in response to unduly burdensome, irrelevant, and otherwise disproportionate requests, even pursuant to a lawfully issued subpoena. *Life Fitness, LLC*, 2025 WL 435834.

Wellpath has objected to the financial discovery sought in the subpoena on several grounds. First, there is no indemnification of Defendant CFMG, and therefore no responsibility for paying potential punitive damages, from Wellpath. California law enforces indemnification provisions according to the parties' contractual allocation of risk, including agreements that make indemnification the exclusive remedy for specified claims. Courts have long recognized the validity of limitation-of-liability provisions negotiated by contracting parties. *Golden Gate Way, LLC v. Enercon Servs., Inc.*, 572 F. Supp. 3d 797, 814 (N.D. Cal. 2021) (quoting *Lewis v. YouTube, LLC*, 244 Cal. App. 4th 118, 125 (2015)). Where an agreement clearly provides that indemnification is the sole remedy, courts will enforce that contractual

limitation and confine the indemnitee to the remedies expressly set forth in the agreement. See *Nelson v. Spence*, 182 Cal. App. 2d 493, 497 (1960) (exclusive remedy provisions are enforceable where the contract clearly indicates the parties' intent to make the specified remedies exclusive). Accordingly, when parties expressly contract with respect to indemnification, "the extent of the duty must be determined from the contract and not by reliance on the independent doctrine of equitable indemnity." *Wells Fargo Bank, N.A. v. Renz*, 795 F. Supp. 2d 898, 906 (N.D. Cal. 2011). In other words, the parties' agreement governs both the scope of the indemnity obligation and the remedies available, and courts should not expand those remedies beyond the contract's terms.

Here, the relevant contractual term for the indemnification agreement between Wellpath and CFMG can be found in Section 7.1 of the MSA, which states:

> **7.1 Indemnification.** The Company will indemnify, defend and hold harmless the Management Company…from and against all losses, liabilities, demands, claims, actions or causes of action, regulatory, legislative or judicial proceedings or investigations, assessments, levies, fines, penalties, damages, costs and expenses (including reasonable attorneys', accountants', investigators' and experts' fees and expenses) incurred in connection with the defense or investigation of any claim ("Damages") sustained or incurred by any Management Company Indemnified Party arising from or related to illegal activity, intentional misconduct, negligence or breach of this Agreement by the Company and its directors, managers, officers, equityholders, employees, agents, successors and permitted assigns (the "Company Indemnified Parties"). Provided further, that the Management Company will indemnify, defend and hold harmless the Company Indemnified Parties from and against all Damages sustained or incurred by the Company Indemnified Parties arising from or related to illegal activity, intentional misconduct, negligence or breach of this Agreement by the Management Company Indemnified Parties.

The terms of this clause are clear and, under *Wells Fargo*, "the extent of the duty must be determined from the contract." *Wells Fargo Bank, N.A. v. Renz*, 795 F. Supp. 2d 898, 906 (N.D. Cal. 2011). By its plain language, the indemnification provision allows Defendant CFMG to indemnify the Management Company, Wellpath, and vice versa when damages are "sustained or incurred" as a result of

intentional misconduct, negligence or breach of the MSA by each respective entity. In this case, the remaining claims at issue deal with allegations that CFMG and/or its employees were deliberately indifferent to Mr. Adena. As such, if this provision were invoked, indemnification in this case would flow *from* CFMG *to* Wellpath, and not the other way around. This indemnification provision is explicit and complete – it is Section 7.1, *not* Section 4.4, that speaks to the relationship between CFMG and Wellpath when it comes to liability for damages arising out of a lawsuit. *See Nelson* 182 Cal. App. 2d at 497 (1960) (exclusive remedy provisions are enforceable where the contract clearly indicates the parties' intent to make the specified remedies exclusive). It appears that Plaintiffs do not dispute that Wellpath is not required to indemnify CFMG for any judgment in this case, otherwise, they would have argued as such. Further, they admit that "Wellpath LLC has no legal duty to pay any damages incurred by CFMG." *Supra Plaintiff's Introduction.* If Wellpath has no legal obligation to pay for any judgment in this case, financial discovery into Wellpath to determine CFMG's ability to pay cannot be proportional to the needs of this case.

Second, the lack of Wellpath's responsibility for any potential damages is further strengthened by the Bankruptcy Court Orders. Specifically, the Bankruptcy Court ordered that "Holders of […]claims may not seek satisfaction of, and are permanently enjoined from seeking payment of, any judgment, award, settlement, claim, distribution, **indemnification right, or any other payment amount resulting from their lawsuit from, or in connection with, the Debtors, the Debtors' estates, or the Post-Restructuring Debtor**", (ECF 2907, 4 BK Case No. 24-90533) (emphasis added), and no Post-Restructuring Debtor shall be required to participate in any manner (other than through appropriate third-party discovery) in such litigation **or be personally liable to the plaintiff on account of such determination of the Debtor's responsibility or liability."** (ECF 1279, ¶¶ 7, 9, BK Case No. 24-90566) (emphasis added).

Here, the Bankruptcy Court has expressly held that Plaintiffs may not pursue recovery against the Debtor entities themselves and may proceed only against the Liquidating Trust as a nominal defendant for purposes of litigating pre-petition personal injury claims. (ECF 1279, ¶ 1 BK Case No. 24-90566). The order further clarifies that the confirmed plan bars attempts to proceed against the post-restructuring

debtors and that such claims are subject to the plan injunction and discharge injunction under 11 U.S.C. § 524(a)(2). (ECF 1279, ¶ 4 BK Case No. 24-90566). Because the Debtor entities cannot be held liable for or required to satisfy any pre-petition judgment, their financial condition is not relevant to CFMG's financial condition.

Moreover, Plaintiffs spend a significant amount of time attempting to explain what a VIE structure looks like and how it is somehow relevant to Wellpath and CFMG's financial discovery obligations; none of this is relevant to the issue of Wellpath's compliance with the subpoena or CFMG's production of additional discovery. The issue is far more simple than Plaintiffs' multi-paragraph recitation of VIE operations would have this Court believe: (1) CFMG is a VIE and pre-bankruptcy consolidated financials have been produced; (2) Wellpath has been discharged in bankruptcy from being required to satisfy any pre-petition judgments; (3) Wellpath and CFMG's relationship is defined by the terms of the MSA; (4) The MSA is clear that when it comes to liability for damages arising from a lawsuit, there is no responsibility for Wellpath to pay a judgment against CFMG. In other words, CFMG's status as a VIE does not somehow make relevant the financials of a separate entity who *cannot be required to pay a judgment in this case.*

**i. Plaintiffs' arguments are unavailing since Wellpath is not a parent company of CFMG, and this case does not involve allegations of improper financial dealings.**

Plaintiffs seek the following categories of documents from Wellpath: (1) Complete federal and state tax returns for Wellpath LLC from 2024 through date of trial; and (2) Wellpath LLC's complete GAAP-compliant audited financial statements. These documents are irrelevant to the case at bar for the following reasons.

First, as a threshold matter, Plaintiffs' case law that discusses the relevance or applicability of financial records between a parent and a subsidiary has no relevance to Wellpath's obligations to produce documents in this case, where a parent-subsidiary relationship does not exist. While CFMG is a VIE of Wellpath, CFMG is wholly-owned by physicians and Wellpath is <u>not</u> the "parent company" of CFMG. (Decl. of Sean Tussey, ¶ 5). Rather, as discussed at length in Plaintiffs' own briefing, *supra*, CFMG is a VIE whose relationship with Wellpath is defined by contractual agreements. (Decl. of Vanessa Hill, ¶ 8).

Although Plaintiffs repeatedly refer to and describe Wellpath as a "parent" of CFMG, there are significant differences between parent/subsidiary relationships and a VIE. See generally, *Culcal Stylco, Inc. v. Vornado,* Inc., 26 Cal.App.3d 879 (1972)("a parent corporation is one which has working control through stock ownership of its subsidiary corporations"); *Credit Risk Retention* (Release No. 34-64148; File No. S7-14-11), 2011 WL 3556369 (S.E.C. Misc., 2011)(the controlling enterprise — called the "primary beneficiary" — acquires control contractual arrangements: service agreements, pledges of equity, irrevocable powers of attorney). Plaintiffs' reliance on cases holding that a jury may consider the financial condition of a parent company when assessing punitive damages is further misplaced in light of the Bankruptcy Court's order enforcing the confirmed Chapter 11 plan. (ECF 1279, ¶ 4 BK Case No. 24-90566). Here, permitting discovery or argument about consolidated financial statements between Wellpath and CFMG would improperly circumvent the Bankruptcy Court's order which has already held the Debtor entities, like Wellpath, cannot legally be required to pay the judgment. *Supra*.

Second, many of the cases relied upon by Plaintiffs to support their assertion that Wellpath's financial information is relevant for a "parent" company deal with discovery of financial information where their financial activities were relevant to the underlying causes of action. See *TXO Production Corp. v. Alliance Resources Corp*., 419 S.E.2d 870, 890 (W.Va. 1992) aff'd, 113 S.Ct. 2711 (1993) (case involved a declaratory judgment action as leverage to reduce royalty payments and a fraudulent quitclaim deed); *Mihara v. Dean Whitter & Co., Inc.*, 619 F.2d 814, 824 (9th Cir. 1980) (Holding that excessive trading in a client's brokerage account constituted a fraudulent scheme under SEC Rule 10b-5, supporting liability and an award of compensatory and punitive damages). Such is not the case here. Instead, Plaintiffs are seeking financial discovery relative to their claims for punitive damages, which is limited in scope, as discussed above, and has no bearing on a liability determination.

For example, Plaintiffs' reliance on *TXO Prod. Corp. v. Alliance Res. Corp.*, is misplaced because the facts of that case bear no resemblance to a discovery dispute seeking financial documents from a discharged entity. In *TXO*, the defendant—TXO Production Corporation—knowingly recorded a frivolous quitclaim deed and filed a declaratory judgment action as leverage to reduce royalty payments under an oil and gas lease, conduct the jury found constituted slander of title. *TXO Prod. Corp. v. Alliance Res. Corp.*, 419 S.E.2d 870, 875–77 (W. Va. 1992). The Court determined that Defendant TXO's parent

company's financial condition was relevant given the nature of the relationship between the entities and emphasized that "trial judges in their sound discretion [should be able to] admit evidence of the worth of parent corporations," if needed. *TXO Prod. Corp. v. All. Res. Corp.,* 187 W. Va. 457, 477, 419 S.E.2d 870, 890 (1992). *TXO* stands for the proposition that *in certain circumstances*, a parent entity's finances may be relevant to a subsidiary's financial picture, especially when financial dealings are at issue in the case. Those circumstances do not apply here.

Moreover, the sole case cited by Plaintiffs from the Ninth Circuit and, therefore, the sole case that is binding on this Court, was focused on evaluating whether annual reports "admitted for the purpose of establishing a fiduciary relationship between plaintiff and defendants" could also be relevant for the determination of punitive damages, even though they involved a parent company's financials. *Mihara v. Dean Witter & Co.*, 619 F.2d 814, 824 (9th Cir. 1980). Critically, the Ninth Circuit emphasized that the relevance of the records was tied to Section 3294 of the California Civil Code, which establishes that punitive damages are recoverable for a breach of fiduciary duty. Even if Wellpath were a "parent" entity, this is *not* a circumstance where its finances would be relevance because this case does not involve negligence tied to a breach of fiduciary duties or, in fact, any monetary issues at all. The alleged tortious conduct in this case has nothing to do with financial dealings, unlike the cases cited by Plaintiffs in support of their arguments.

Additionally, Plaintiffs' cited authorities do not support their sweeping proposition that a parent corporation's wealth is always relevant when assessing punitive damages. *Supra* A(3). To begin with, *Johnson v. City of Redding* does not address a parent–subsidiary relationship at all; it merely recognizes the uncontroversial point that a defendant's own financial condition may be relevant to punitive damages and therefore provides no authority for discovery or consideration of a non-party related entity's finances. 2023 WL 3955354. Likewise, *Riley v. Empire Airlines, Inc.* did not even involve a corporate relationship; the court addressed only whether punitive damages were appropriate against an employer under the Railway Labor Act, observing that the defendant's <u>net worth</u>—not the broader "wealth" of related entities—may be relevant in evaluating punitive damages. 823 F.Supp. 1016, 1023 (N.D.N.Y. 1993).

The same is true of *Dushaw v. Roadway Express, Inc.,* where the Ohio court was concerned with the propriety of punitive damages and which contains only a single reference to judicial notice of a parent

company's revenues and assets at the damages stage. 816 F.Supp. 1229, 1239 (N.D. Ohio 1992). *Dushaw* suggests when a defendant's net worth is unable to be ascertained without a parent company's financials, it may be appropriate for a court to consider a parent company's revenues and assets. *See Dusha* wat 816 F. Supp at 1239. Here, however, CFMG has produced more than enough documents to provide Plaintiffs with an accurate picture of its net worth.

Taken together, the cases from other jurisdictions on which Plaintiffs rely merely reflect the uncontested principle that a *defendant's* financial condition or net worth may be considered when punitive damages are at issue; none of these cases, notwithstanding the lack of precedential value given the court venues, stand for the far broader rule plaintiffs assert that a parent company's wealth is automatically relevant whenever punitive damages are sought against a subsidiary.

Finally, and most importantly, none of the cases cited by Plaintiffs involve financial discovery sought through a Rule 45 subpoena. Instead, Plaintiffs rely on isolated statements from decisions in other jurisdictions to argue broadly that a parent corporation's wealth is relevant whenever punitive damages are at issue. *Supra* A(3). The authorities cited by Plaintiffs do not address the distinct considerations governing discovery directed to a nonparty through subpoena. For subpoenas specifically, courts balance the relevance of the discovery sought, the requesting party's need, and the potential hardship to the subpoenaed party. *ATS Products, Inc v. Champion Fiberglass, Inc.*, 309 F.R.D. 527 (2015). When assessing undue burden under Rule 45, non-parties receive special protection, and concern for unwanted burden on non-parties is entitled to special weight in this analysis. *Jacoby v. Board of Supervisors of University of Louisiana System*, 709 F.Supp.3d 1087 (2023). In these circumstances, Plaintiffs' citations do not provide a sufficient basis to support compelling the production of sensitive financial information from a non-party in response to a subpoena.

In sum, Plaintiffs' authorities concerning the relevance of a parent corporation's financial condition to punitive damages do not apply when the relationship between the parties and the relevant contracts between CFMG and Wellpath do not contemplate that Wellpath having any legal obligation to pay the judgment and the obligations have been further discharged in bankruptcy. The financial information sought by Plaintiffs is plainly outside the scope of relevant and proportional discovery for punitive damages claims.

**C. Defendant CFMG has fully complied with its obligation to produce financial documents for purposes of a punitive damages analysis.**

In response to Plaintiffs' discovery requests, Defendant CFMG has produced all the documents Plaintiffs need to assess its financial health for punitive damages purposes. Specifically, CFMG has produced, among others:

1. Complete federal and state tax returns for CCS-CMGC Intermediate Holdings, Inc. and Subsidiaries, California Forensic Medical Group ("CFMG"), and Jessamine Healthcare Inc. & Affiliates from 2022 as documents CFMG 000379-000606, CFMG 000299-000338, CFMG 000339-000378, and CFMG 000607-000797.
2. Consolidated financial statements and GAAP-compliant audited reports for CCS-CMGC Intermediate Holdings, Inc. and Subsidiaries from 2022 and 2023 as documents CFMG 001086-001167.
3. Consolidated balance sheets for CCS-CMGC Intermediate Holdings, Inc. and Subsidiaries from 2022 and 2023 as documents CFMG 000798-000802.

Curiously, Plaintiffs spend several paragraphs discussing the general discoverability of tax returns, *supra,* despite the fact that CFMG has produced tax returns in this matter and is not disputing their relevance *generally*. None of Plaintiffs' cited case law, notably all from the Western District of Kentucky, supports their argument that all tax returns are discoverable or erases the requirement for relevance and proportionality under Federal Rule of Civil Procedure 26(b)(1). Moreover, "nothing in [Rule 26(b)(1)] imposes a never ending obligation to produce documents continuously as they are created." *Dong Ah Tire & Rubber Co. v. Glasforms, Inc.*, No. C06-3359JFRS, 2008 WL 4786671, at *2 (N.D. Cal. Oct. 29, 2008). Rather, Federal Rule of Civil Procedure 26(e) requires a party to supplement its initial disclosures or discovery responses "in a timely manner" when it learns "that the disclosure or response is incomplete or incorrect." *See Yellowcake, Inc. v. Morena Music, Inc.,* No. 120CV00787AWIBAM, 2022 WL 12073782, at *3 (E.D. Cal. Oct. 20, 2022).

Here, Defendant CFMG has produced relevant, correct, and complete state and federal tax returns from 2022 to 2024 in addition to consolidated financials and balance sheets from 2022 and 2023. The fact that CFMG is a VIE does not, importantly, mean that Plaintiffs are somehow entitled to "[a]ll documents

that define CFMG's VIE status, including foundational documents." *Plaintiffs' Conclusion.* Defendant CFMG has already produced consolidated tax returns and GAAP-compliant financials for the relevant entities and does not dispute its status as a VIE entity. Further, CFMG has already provided Plaintiffs with an unredacted Management Services Agreement (MSA) detailing the monthly payment percentage to Wellpath for management services and tax documents which detail the total amount of management service fees paid during the relevant years. The present requests seek to go outside the bounds of reasonable, proportional, or relevant financial discovery.

The court in *Overfield* already made clear that requests not directly related to the financial picture of Defendant CFMG constitute "a tenuous basis for conjecture," particularly when some of the requested documents relate to sensitive financial of a non-party entity that has been expressly discharged from any obligation to pay pre-bankruptcy petition claims. *Overfield* at *2. Similarly, in *Smith*, the Court expressly limited financial discovery to Defendant CFMG and rejected Plaintiffs' attempt to reach affiliated-entity information for Wellpath, LLC. *Smith* at *3. The Court held that Plaintiffs failed to show that discovery into "management services agreements between CFMG and Wellpath or affiliated entities" was "proportional to the needs of the case" under Rule 26(b)(1), and it therefore denied both document requests. *Id.* The Court further denied any request seeking "confidential commercial agreements, nonparty financial information, or matters concerning Wellpath or affiliated entities." *Id.* at *2. The Court further clarified that Plaintiffs may obtain the relevant financial information through CFMG's own tax returns and testimony limited to those materials, confirming that CFMG-specific discovery is sufficient. *Id.*

In this case, despite receiving over 800 pages of financial documents from CFMG, Plaintiffs request additional documents that either do not exist, are not responsive to the requests for production, or would not aid in accurately assessing the financial condition of CFMG. Plaintiffs argue that they "generally limit their requests for records to 2024-present" – but this "limit" comes only after receiving responsive documents from previous years and mischaracterizes the nature of the discovery requests over the course of this litigation. As Plaintiffs note above, "[i]n the end, '[w]hat is required is evidence of the defendant's ability to pay the damage award.'" *Green v. Laibco*, 192 Cal.App.4th 441, 453 (2011) (quoting *Robert L. Cloud & Assoc., Inc. v. Mikesell*, 69 Cal.App.4th 1141, 1152). Defendant CFMG has

provided more than enough information to allow Plaintiffs to assess its ability to pay a potential damages award.

**i. Section 4.4 of the MSA is not relevant to CFMG's ability to pay a judgment in this matter.**

Plaintiffs also attempt to utilize section 4.4 to argue that Wellpath's *ability to issue a loan* to CFMG is somehow the same thing as Defendant CFMG's ability to pay a judgment and means that discovery necessary must involve Wellpath's financials. Plaintiffs' argument fails on multiple grounds.

First, as outlined above, for purposes of liability and damages between Wellpath and CFMG, Section 7.1 of the MSA is the complete and therefore exclusive remedy for damages liability between the entities. *See Nelson v. Spence*, 182 Cal. App. 2d 493, 497 (1960) (exclusive remedy provisions are enforceable where the contract clearly indicates the parties' intent to make the specified remedies exclusive). There is no indemnification in this case and, as outlined above, the Bankruptcy Court orders foreclose any requirement for Wellpath, the non-party discharged entity, from being responsible for paying CFMG's potential damages in this matter. See *Section i., supra.*

Second, even if this Court were to determine that hypothetical financial assistance on the part of Wellpath is relevant to CFMG's financial picture, the declaration of Sean Tussey makes clear that Section 4.4 of the MSA would have absolutely no impact on CFMG's *current* financial condition because the Deficit Funding Loan Agreement has never been utilized. In other words, no money has ever been exchanged between these entities pursuant to this contractual provision and there is no available loan from which CFMG could currently draw. (Decl. of Sean Tussey, ¶ 4). Plaintiffs' requests for (1) The "Deficit Funding Loan Agreement" between CFMG and Wellpath; and (2) All loan agreements between Wellpath LLC and CFMG from 2019 to present, therefore seek documents that either do not exist or would have absolutely no impact on CFMG's financial condition.

Third, Plaintiffs cite *Zaxis Wireless Communications, Inc. v. Motor Sound Corp*., 89 Cal.App.4th 577 (2001) for the broad proposition that "[a] defendant's ability to pay includes its access to capital, loans, and lines of credit," but *Zaxis* was a unique case that, critically, involved an existing, drawn credit line. The issue in *Zaxis* was not the product of discovery into a defendant's hypothetical creditworthiness—it was a specific, existing, drawn credit line with Wells Fargo Bank, documented in the defendant's own financial statements presented at trial. 89 Cal. App.4th at 580. *Zaxis* does not stand for the

proposition that discovery into hypothetical borrowing capacity is appropriate; rather, it confirms that existing, documented credit facilities reflected in financial statements may be considered as part of comprehensive financial evidence. In contrast, Defendant CFMG has not drawn on an "existing line of credit" with Wellpath, and to assert that CFMG's financial condition would be more accurate by considering hypothetical borrowing potential is, by definition, "a tenuous basis for conjecture." *Overfield*, at *2.

**ii. CFMG's net worth is readily ascertainable from the documents provided.**

A foundational principle in California punitive damages law is that only *net*, not gross, figures are relevant in assessing a defendant's financial condition. The Ninth Circuit, applying California law, squarely held in *Boyle v. Lorimar Productions, Inc.*, 13 F.3d 1357 (9th Cir. 1994), that "the rule established by lower California courts is that only net, not gross, figures are relevant," citing the principle that "[g]ross income might be very large but if expenses are even larger, the company would be incurring a loss." *See also Kaffaga v. Est. of Steinbeck,* 938 F.3d 1006, 1018 (9th Cir. 2019).

First, this net-figures requirement is fatal to Plaintiffs' argument that credit access or borrowing capacity in this case should be considered part of CFMG's ability to pay. A potential line of credit is not an asset on a balance sheet—it is a contingent liability. If a defendant actually *draws* on a line of credit, the borrowed funds are matched dollar-for-dollar by a corresponding debt obligation. The defendant's net worth does not increase; in fact, it may decrease once interest and transaction costs are factored in. Presenting a line of credit as evidence of ability to pay is precisely the kind of gross, rather than net, financial analysis that California courts have rejected. *See e.g., Kaffaga v. Est. of Steinbeck,* 938 F.3d at 1018.The same logic applies with equal force to borrowing capacity: access to a loan does not demonstrate that a defendant can pay a punitive damages award—it only demonstrates that the defendant can incur debt which, in this case, has never even occurred. (Decl. of Sean Tussey, ¶ 4).

Second, this net-figures analysis highlights why Plaintiffs' request for documents related to (1)"CFMG's ongoing contracts with California counties that form the basis for CFMG's $300+ million in yearly revenues, including which counties and yearly contract amounts, from 2024-present" and (2) "[i]nformation from CFMG about any large transfers of capital (over $5 million) to other companies, from 2024-present" are irrelevant and unnecessary. Revenue figures, standing alone, are gross financial

metrics that say nothing about expenses, liabilities, or overall financial condition. A company may generate substantial annual revenue yet have minimal or negative net worth once operational costs, debt obligations, and other liabilities are accounted for. *See Boyle v. Lorimar Productions, Inc.,* 13 F.3d at 1361 (explaining that gross figures may appear large while expenses render the company unprofitable); see also *Kaffaga v. Estate of Steinbeck*, 938 F.3d at 1018. The same is true of inquiries into capital transfers: such transactions do not reveal a defendant's present net ability to pay punitive damages. Plaintiffs' own authority cited in support of their argument notes that it is the defendant's net worth—not the broader "wealth" of related entities—that is relevant in evaluating punitive damages. *Riley v. Empire Airlines, Inc.* 823 F.Supp. at 102)\. Because Plaintiffs' requests seek precisely the kind of gross financial information that California courts have deemed irrelevant for punitive-damages purposes, they fall outside the limited scope of financial discovery permitted for assessing CFMG's financial condition.

**ii. Neither Defendant CFMG nor Wellpath have waived privilege by failing to produce a specific privilege log to accompany its explanations of discovery objections.**

Plaintiffs' argument that CFMG waived privilege because it did not produce a separate privilege log is contrary to controlling Ninth Circuit authority. However, CFMG has not withheld any documents based on attorney-client or work product privileges that would require production of a privilege log under the federal rules. Federal Rule of Civil Procedure 26(b)(5)(A). Instead, CFMG and Wellpath are withholding its sensitive financial and proprietary information, including Plaintiffs' request for "charts and/or diagrams showing the current, post-bankruptcy corporate/entity structure of the family of companies formerly known as the Wellpath family of companies," pursuant to valid objections based on, among other things, the fact that the discovery is not relevant nor proportional to the needs of this case as to a discharged non-party like Wellpath under Rule 45. *See Life Fitness, LLC* 2025 WL 435834, at *5 (the discovery "proportionality limitation applies to Rule 45 subpoenas to non-parties."). These objections have not yet been ruled upon.

To the extent this Court determines that such objections amount to assertions of privilege, the Ninth Circuit has also expressly rejected any per se rule that privilege is automatically waived if a privilege log is not produced within Rule 34's deadline. In *Burlington Northern & Santa Fe Railway Co. v. U.S. District Court for the District of Montana*, the court held that although boilerplate objections or

blanket refusals are insufficient to assert privilege, courts may not apply a categorical waiver rule merely because a privilege log was not produced. 408 F.3d 1142, 1149 (9th Cir. 2005). Instead, the Ninth Circuit directed courts to apply a holistic reasonableness analysis, considering four factors: (1) the degree to which the privilege assertion enables the requesting party and the court to evaluate the withheld information; (2) the timeliness of the objection and accompanying information; (3) the magnitude of the document production; and (4) any other particular circumstances that make responding unusually easy or unusually difficult. *Id.* at 1149. District courts in this Circuit consistently apply this Burlington Northern framework rather than imposing automatic waiver. For example, in *RG Abrams Insurance v. Law Offices of C.R. Abrams*, the Central District of California analyzed each of the four Burlington Northern factors before determining whether sanctions were appropriate for an inadequate privilege log. 342 F.R.D. 461, 466–67 (C.D. Cal. 2022). The court emphasized that waiver is not automatic and must be evaluated in light of the circumstances of the discovery response.

Here, the discovery responses and objections provided by CFMG and Wellpath more than satisfy the requirement under Federal Rule of Civil Procedure 26(b)(5) to "make [any privilege] claim expressly and […] describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection."

Accordingly, the absence of a separate privilege log accompanying CFMG's objections does not constitute waiver. Under the controlling *Burlington Northern* standard, the relevant inquiry is whether CFMG reasonably asserted privilege in a manner that allows Plaintiff and the Court to assess the claim of privilege—not whether a particular logging format was used. Because the Ninth Circuit expressly rejects automatic waiver, Plaintiffs' argument for waiver fails.

**DEFENDANTS' CONCLUSION**

Plaintiffs specifically ask the Court to compel production of eight document categories, as laid out below. Based on the law and argument above, Defendant CFMG and Wellpath contend that these categories of documents are irrelevant, disproportionate, unduly burdensome, and are not necessary for Plaintiffs to determine CFMG's financial picture for purposes of punitive damages. CFMG has already produced sufficient information for Plaintiffs to assess its ability to pay for purposes of their punitive

damages claims.

First, Plaintiffs' requests for additional granular, line-item financial information from Wellpath is unnecessary and improper. Further, Plaintiffs' request for the Deficit Funding Loan Agreement and other financials are not proportional to the needs of this case. CFMG has already produced significant financial information, and Plaintiffs already possesses the information needed to assess the relevant financial picture of Defendant CFMG and demanding additional detail or other extraneous documents does nothing to change that analysis.

Moreover, the law is clear that the scope of financial discovery for purposes of punitive damages should be narrowly limited; it does not permit a party to force an opposing litigant to open their entire financial books merely to conduct a fishing expedition. *See EEOC v. California Psychiatric Transitions*, 258 F.R.D. at 395 (recognizing that financial information is protected by privacy interests and discovery into such information should be limited); *Mengistu v. Forestview Apartments, LLC,* 2020 WL 12029101, at *3 (limiting discovery to recent financial information sufficient to assess a defendant's present financial condition for punitive damages); *R. R. Donnelley & Sons Co. v. Pappas*, 2024 WL 150249, at *5 (finding non-current financial information irrelevant to punitive damages); *Davis v. Leal,* 43 F. Supp. 2d at 1110 (financial information is "presumptively privileged," and disclosure must be narrowly circumscribed); *see also Scherer v. FCA US, LLC*, 538 F. Supp. 3d at 1008; *Walker v. AT&T Benefit Plan No. 3*, 338 F.R.D. at 663 (recognizing courts' broad discretion under Rule 26(b)(1) to limit discovery to information that is relevant and proportional). That concern is particularly acute here, where the discovery seeks to probe the finances of an entity who has already been discharged and who has been determined not to be responsible for payment of any judgments in this case.

Finally, Plaintiffs' attempts to expand discovery into speculative sources of funds—such as whether CFMG could theoretically obtain a loan—does not alter this analysis. Notwithstanding the fact that the loan funding agreement mentioned in the MSA has never been invoked or used during the life of the business relationship between Wellpath and CFMG, CFMG's mere ability to obtain credit is not the same as CFMG's ability to pay, and a party cannot be compelled to incur debt in order to satisfy a judgment.

Because the requested discovery would provide no meaningful additional information beyond the

net-worth evidence already available through tax returns and other financial documents and instead serves only to intrude into private financial affairs of a discharged debtor entity, this Court should decline to permit this unwarranted expansion of financial discovery.

**PLAINTIFFS' CONCLUSION**

Defendants' punitive damages exposure is significant, Defendant CFMG is undercapitalized and financially and substantively controlled by its VIE parent and manager, Wellpath LLC. Plaintiffs must be able to learn CFMG's true financial condition and ability to pay a punitive damages award. Defendant CFMG has not produced any of its current financial statements, claiming it lacks access to those documents because they only exist on Wellpath LLC's balance sheet. The only responsive documents that CFMG has produced are its 2024 tax returns – that do not reflect CFMG's true ability to pay a punitive damages award. Defendants have never provided any sworn declaration asserting any undue burden to produce the requested documents, nor do they claim such documents do not exist. Defendants' obfuscation is made possible by their refusal to produce a privilege log. Defendants should be compelled to produce the entirety of the documents requested herein, including the following general categories of documents, each of which Vanessa Hill, CPA, explains is necessary at paragraph 15 of her declaration:

1. Complete federal and state tax returns for Wellpath LLC from 2024 through date of trial;

2. Wellpath LLC's complete GAAP-compliant audited financial statements (which include CFMG's financial information) with Notes to the financial statements, including audit opinions, annual reports, balance sheets, statements of shareholder/owners' equity, statements of cash flows, statements of operations or profit and loss, and all supplementary information such as consolidat*ing* and combining schedules for consolidated reports, from 2024 through date of trial;

3. The "Deficit Funding Loan Agreement" between CFMG and Wellpath LLC as referenced in the MSA;

4. All loan agreements between Wellpath LLC and CFMG from 2019 to present, to show Wellpath's history of choosing to loan CFMG capital to pay its debts and liabilities;

5. Information concerning CFMG's ongoing contracts with California counties that form the basis for CFMG's $300+ million in yearly revenues, including which counties and yearly contract amounts, from 2024-present;

6. Information from CFMG about any large transfers of capital (over $5 million) to other companies, from 2024-present.

7. All documents that define CFMG's VIE status, including foundational documents;

8. All charts and/or diagrams showing the current, post-bankruptcy corporate/entity structure of the family of companies formerly known as the Wellpath family of companies.

The protective order will adequately protect any privacy concerns Defendants may have.

Respectfully Submitted,

DATED: April 30, 2026

HADDAD & SHERWIN LLP

*/s/ Michael J. Haddad*

MICHAEL J. HADDAD
Attorneys for Plaintiffs

DATED: April 30, 2026

GORDON REES SCULLY MANSUKHANI

*/s/ Allison Becker*

LINDSEY ROMANO
ALLISON BECKER
Attorneys for Defendants
CALIFORNIA FORENSIC MEDICAL GROUP, INC.; WELLPATH MANAGEMENT, INC.; WELLPATH LLC; TRACY LEWIS, L.M.F.T.; PAM JOHANSEN, L.C.S.W.; and DANIEL DELLWO, P.A