MICHAEL J. HADDAD (SBN 189114)
JULIA SHERWIN (SBN 189268)
HADDAD & SHERWIN LLP
505 Seventeenth Street
Oakland, CA 94612
Telephone: (510) 452-5500
Facsimile: (510) 452-5510

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHN ADENA, Deceased, by and through his Co-Successors in Interest, CIRCE ADENA and RICHARD ADENA; CIRCE ADENA, Individually, and RICHARD ADENA, Individually,<br><br>Plaintiffs,<br>vs.<br><br>SHASTA COUNTY, a public entity; SHASTA COUNTY JAIL DEPUTIES JOSEPH GRADY, NATHANIEL NEVES, HECTOR CORTEZ; CALIFORNIA FORENSIC MEDICAL GROUP, INC., a California Corporation; WELLPATH LIQUIDATING TRUST substituted in place of WELLPATH MANAGEMENT, INC. and WELLPATH LLC; TRACI LEWIS, L.M.F.T.; PAM JOHANSEN, L.C.S.W.; DANIEL DELLWO, P.A.; AMANDA REAM, R.N., and DOES 3–20; individually, jointly and severally,<br><br>Defendants. | Case No. 2:21-cv-00770- DC-DMC<br><br>**DECLARATION OF MICHAEL J. HADDAD IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DOCUMENTS CONCERNING DEFENDANT CFMG'S FINANCIAL CONDITION**<br><br>Date: May 20, 2026<br>Time: 10:00 a.m.<br>Place: Redding Federal Courthouse<br><br>Hon. Dennis M. Cota |

STATE OF CALIFORNIA )
)
COUNTY OF ALAMEDA )

I, Michael J. Haddad, attest and declare as follows:

1. I am admitted to practice law in the State of California and State of Michigan, and I am admitted to practice before this Court.

2. I am one of the attorneys for Plaintiff Michael Deppe in this matter.

3. Attached as **Exhibit A** is a true and correct copy of the Joint Discovery Brief filed in *Johnson v. City of Redding*, 2023 U.S. Dist. LEXIS 101798 at ECF 196.

4. Attached as **Exhibit B** is a true and correct copy of the Declaration of Blair Lukasik, a CPA and "Vice President of Tax at Wellpath," dated October 28, 2024. This declaration was produced by Defendants CFMG and Wellpath LLC in connection with the joint discovery brief the parties were preparing before the Wellpath Bankruptcy in 2024.

5. Attached as **Exhibit C** is a true and correct copy of ECF 1279 from the Wellpath bankruptcy Case No. 24-90566. This Bankruptcy Court order is dated January 26, 2026.

6. Attached as **Exhibit D** is a true and correct copy of ECF 2907, from the Wellpath bankruptcy Case No. 24-90533. This Bankruptcy Court order is dated June 4, 2025.

7. I have personal knowledge of the facts stated in this declaration. If called upon to testify to same, I am competent to do so.

I declare under penalty of perjury pursuant to the laws of the United States and the State of California that the foregoing information is true and correct.

Dated: April 30, 2026

By: _*/s/ Michael J. Haddad*__
MICHAEL J. HADDAD

# EXHIBIT A

MICHAEL J. HADDAD (SBN 189114)
JULIA SHERWIN (SBN 189268)
TERESA ALLEN (SBN 264865)
HADDAD & SHERWIN LLP
505 Seventeenth Street
Oakland, CA 94612
Telephone: (510) 452-5500
Facsimile: (510) 452-5510

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RANDALL SCOTT JOHNSON, DECEASED, by and through his Successor in Interest, KATHERINE JOHNSON, KATHERINE JOHNSON, Individually,<br><br>Plaintiff,<br><br>vs.<br><br>CALIFORNIA FORENSIC MEDICAL GROUP, INCORPORATED, a California corporation; CORRECTIONAL MEDICAL GROUP COMPANIES, INC., a Delaware Corporation; WELLPATH INC., a Delaware corporation; WELLPATH MANAGEMENT, INC., a Delaware Corporation; WELLPATH LLC, a Delaware Limited Liability Company; DOE Defendant 1; KERI RUBALCAVA, R.N.; AMANDA REAM, R.N.; LINDA SMITH, R.N.; JOHN MAIKE, Psychiatric R.N.; CYNTHIA COLLINS, L.V.N.; SHELBY CALLAHAN, L.V.N.; DEBORAH SAEGER, MFT; THOMAS HAMMOND, L.V.N.; and DOES 7–20; individually, jointly, and severally,<br><br>Defendants. | Case No. 2:19-cv-01722-JAM-DB<br><br>**JOINT STATEMENT RE: DISCOVERY DISAGREEMENT (Local Rule 251(c))**<br><br>Date:<br>Time: 10:00 a.m.<br>Place: Courtroom 27, 8th Floor |

**NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY**

TO ALL DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

Please take notice that on a date to be determined by the Honorable Deborah Barnes per ECF No. 192, in Courtroom 27, 8th Floor, United States District Court for the Eastern District of California, 501 I Street, Sacramento, CA 95814, Plaintiff will move this Court, under Federal Rules of Civil Procedure 26 and 34 and Local Rule 251(c), for an order compelling the Wellpath Defendants to produce necessary financial condition records related to Plaintiff's punitive damages claims. Defendants have persistently refused to produce responsive documents, necessitating this motion.

The District Court expressly permitted this motion in its Order re Parties' Objections to Pretrial Conference Order, dated May 23, 2023 (ECF No. 188):

> "Defendants alleged failure to produce financial documents or supplement prior discovery responses is a matter that should be brought before a Magistrate Judge. The Court will permit Plaintiff to file a motion to compel before the assigned Magistrate Judge so long as the motion can be heard and decided on an expedited basis and does not to affect the trial date."

This motion is made on the grounds that the information sought is directly relevant to Plaintiff's punitive damages claim, and that the Defendants have consistently interfered with Plaintiff's ability to determine their true financial condition.

This motion is based on the attached Memorandum of Points and Authorities, the declarations and exhibits filed in support of this motion, all documents and records in this matter, and on such further written and oral argument and evidence as may be submitted

Dated: June 2, 2023

HADDAD & SHERWIN LLP

*/s/ Michael J. Haddad*

MICHAEL J. HADDAD
Attorneys for Plaintiff

Pursuant to Eastern District Local Rule 251(c), Plaintiff KATHERINE JOHNSON and Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INCORPORATED, a California corporation; CORRECTIONAL MEDICAL GROUP COMPANIES, INC., a Delaware Corporation; WELLPATH INC., a Delaware corporation; WELLPATH MANAGEMENT, INC., a Delaware Corporation; WELLPATH LLC, a Delaware Limited Liability Company; (collectively, the "Wellpath entities") submit the following Joint Statement Re: Discovery Disagreement.

## NATURE OF THE ACTION AND ITS FACTUAL DISPUTES

**PLAINTIFF'S POSITION:**

This case involves the death of Randall Johnson at Shasta County jail on August 16, 2018. At the time of the incident, Shasta County's jail medical and mental healthcare services were provided by Correctional Medical Group Companies, Inc. ("CMGC") and California Forensic Medical Group, Inc. ("CFMG). On October 1, 2018, H.I.G. Capital, the private equity firm that owned CMGC and CFMG, acquired Correct Care Solutions ("CCS") and combined it with CMGC to form Wellpath, which is now responsible for the health care at the Shasta County Jail. This motion concerns Defendants CMGC and CFMG, Wellpath LLC, and Wellpath Management, Inc.'s (collectively the "Wellpath entities") refusal to produce necessary financial documents related to Plaintiff's claims for punitive damages.

In connection with Plaintiff's punitive damages claim, Plaintiff sought financial condition discovery, including Defendants' corporate tax returns from 2018 to the present. Defendants produced partial tax returns and partial unaudited financial statements created especially for this case, and refused to produce more. Defendants only agreed to produce some responsive information in their response to Plaintiff's motion to re-open discovery and name a financial condition expert. (ECF Nos. 137 and 150).

In their opposition brief to the motion to re-open discovery, Defendants listed several financial documents they agreed to produce. (ECF No. 150). The District Court ultimately granted Plaintiff's motion to reopen discovery and ordered Defendants to produce those documents they had offered to produce. (ECF No. 158). These Defendants produced additional documents on November 1, 2022. This supplemental document production did not include any GAAP-compliant audited financial statements Plaintiff has repeatedly requested, nor all of the tax returns from the Wellpath entities for the agreed years of 2018 to the present. Defendants filed a declaration from Wellpath's Controller and Vice President of

Finance, Tabitha Vanns, with their opposition to Plaintiff's motion. Ms. Vanns declared, under penalty of perjury, that the "Wellpath Entities and CFMG do not prepare audited financial statements in the normal course of business. **Instead, consistent with Generally Accepted Accounting Principles (GAAP), the Wellpath Entities and CFMG are included in consolidated financial statements for CCS-CMGC Intermediate Holding, Inc**…." (Decl. of Tabitha Vanns, ECF No. 150-2, ¶ 13(a) (emphasis added)).

On December 7, 2022, Judge Mendez granted Plaintiff's motion to reopen discovery to compel the Wellpath Defendants to supplement their financial condition discovery and to permit Plaintiff to designate an expert witness on Defendants' financial condition. (ECF No. 158). Specifically, Judge Mendez ordered Defendants to produce the documents enumerated in their opposition brief and added, "To the extent that Defendants' production does not satisfy Plaintiff's requested relief, Plaintiff may seek additional discovery in a future motion brought before the assigned Magistrate Judge." (*Id*. at p. 6).

Defendants' supplemental financial condition document production included some responsive documents, but excluded tax returns from the pertinent Wellpath companies, and further excluded audited financial statements.

On January 23, 2023, Plaintiff's counsel deposed Tabitha Vanns, the Wellpath Defendants' designated 30(b)(6) Person Most Knowledgeable on:

> [T]he Defendant(s)' financial condition, including but not limited to assets, liabilities, revenue, cash flow, profit, expenses, loss, gross income, net income, net worth, value, loans, mortgages, lines of credit, solvency, and financial stability, from January 1, 2018, to the present.

During Ms. Vanns's deposition, she was not prepared to respond to even the most basic questions concerning Wellpath's financial condition. Ms. Vanns responded, "I don't know" to numerous basic financial questions on which she was designated to testify, and repeatedly responded that she could not answer the questions without reviewing Wellpath's general ledger or its management services agreements ("MSA"), including for example:

- Which banks, other than Credit Suisse, finance CFMG (pp. 30:14-31:18);
- Which entities paid management fees to Wellpath LLC (p. 64:3-6);
- What services were provided to CFMG for the millions of dollars in professional services expense (pp. 69:23-70:18);
- What millions of dollars in management fees paid by Wellpath LLC was for, to who was paid, or how the fees were calculated (pp. 69:23-70:18);
- What services were provided to CFMG for the multi-million-dollar professional fees paid by Wellpath LLC (p. 73:5-12);

- Who received loans from Wellpath LLC in the nine figures, what were the loans for, when the loans matured, and what was the interest rates on the loans (pp. 76:5-77:2; 78:19 – 79:4);
- To whom Wellpath LLC paid millions of dollars in management fee expense (pp. 111:15 – 114:6);
- What a nine-figure office and administrative expense deduction was for (pp. 114:14 – 115:13);
- Whether the tens of millions in "Other Income, Management Fees," included management fees paid to Wellpath LLC by CFMG (pp.115:14 – 116:14);
- What the millions of dollars in "Other Deductions" amount was for (pp. 117:18 – 118:10);
- Which legal entities paid the professional fees expenses, including attorneys' fees, for all the years' tax returns (pp. 118:13 – 120:4);
- Who received nine figures in loans from Wellpath LLC, what the loans were for, what the interest rates were on the loans, and whether there was an amortization of the payment schedule for repayment of the loans (pp.124:19 – 126:16;126:21 – 127:23);
- What Wellpath LLC's multi-million "Other Deductions" was for (p. 130:16-20)
- Why Wellpath LLC expensed millions of dollars for contract labor (pp. 130:21-131:3);
- What services were provided to Wellpath LLC for millions in professional services fee (p. 131:13-16);
- Who received almost half a million dollars in lobbying fees and what the fees were for (pp. 131:21 – 132:3);
- Which partners received loans from Wellpath LLC in the high eight figures (p. 133:21-134:7);
- To whom CFMG paid tens of millions in management fees to and what services were provided (pp. 139:8-17; 141:25 – 143:6; 143:21-144:3; 145:12-146:4);
- To whom CFMG paid a $1.5 million cash distribution (pp. 148:17-149:14);
- How CFMG calculated its negative goodwill (p. 150:13-21);
- What millions of dollars in intercompany payables were for (p. 153:6-15);
- To which Wellpath entities CFMG owed money and which entities owed CFMG money (p. 153:15-21);
- Whether there is any financial statement that says how much money CFMG owes to Wellpath LLC pursuant to any deficit agreement (p. 164:9-20);
- Which entity owed CCS-CMGC Intermediate Holdings 2, Inc. in the mid nine figures (p. 175:25 – 176:12);
- What entity invested over half a billion dollars in Wellpath LLC (p. 183:19 – 184:4).

(Haddad Decl., Ex. A, Vanns Deposition).

It is clear from Ms. Vanns's deposition that she needed to review the Wellpath entities' general ledger and management services agreement. Ms. Vanns also testified, contrary to her declaration, that she reports Wellpath's financial statement audits to an audit committee consisting of H.I.G. Capital board members. Ms. Vanns testified that the financial statement audits include audits of Defendants Wellpath, LLC, Wellpath Management, Inc. (formerly Defendant CMGC), and CFMG, and that they are done on an annual basis going back to 2018. (Haddad Decl., Ex. A, Vanns Dep., 38:13 – 45:2).

Defendants do have GAAP-compliant audited financial statements, they just simply refuse to produce them. **Ms. Vanns further testified that CFMG is a variable interest entity of CCS-CMGC Intermediate Holdings, Inc.** (*Id*. at 13:5 – 22). Plaintiff's forensic accounting expert, Annette Stalker, CPA/CFF, CFE, explained, **"[A] variable interest entity, by definition, is not an independent organization. [CFMG's] financial condition and its financial viability is dependent on another organization or series of organizations."** (Haddad Dec., Ex. B, Stalker Dep., 33:21 – 34:5). Importantly, that means here:

> **Based on the testimony of Vanns and the FASB requirements with regard to variable interest entities, CFMG is not and should not be considered as a stand alone entity. Rather, it should be consolidated into, in this case, the "Wellpath family" of 65 entities, all of which appear to be ultimately owned by a limited partnership for which no financial records have been provided.**

(Haddad Decl, Ex. C, Stalker Report, p. 11). Defendants' PMK Ms. Vanns further testified that CCS-CMGC Intermediate Holdings, Inc., is the entity with consolidated financial statements that include CFMG, Wellpath Management Inc., and Wellpath LLC's financial information. (Haddad Decl., Ex. A, Vanns Dep. 105:5-10; 102:20-103:5; 103:17-19). Defendants refuse to produce the consolidated tax returns or consolidated financial statements for CCS-CMGC Intermediate Holdings, Inc.

Based on the financial information she had at the time, Ms. Stalker rendered her opinions concerning Defendants' financial condition. Defendants *then* hired an accountant, Frank Wisehart, purely as a rebuttal expert to criticize Ms. Stalker's analysis of Defendants' financial documents. Mr. Wisehart criticized Ms. Stalker's opinions because she did not consider further information **Defendants refused to produce to Plaintiff or even to Mr. Wisehart**. For example, in Mr. Wisehart's rebuttal expert report dated March 10, 2023, he asserts that Ms. Stalker did not consider the management services agreement between CFMG and Wellpath LLC when forming her opinions, and that Ms. Stalker failed to consider the fair value of CFMG's and Wellpath LLC's assets or debts to determine their solvency or insolvency. (Haddad Ex. D, Wisehart report, p. 17). Neither Ms. Stalker nor Mr. Wisehart was ever provided the management services agreement because the Wellpath Defendants refuse to produce it. Had Defendants produced the Wellpath entities's shared general ledger, Ms. Stalker would have considered it in her analysis, but was limited to what was provided to her. As Ms. Stalker testified:

"In my experience, the trier of fact wants to know what are the assets? What are the

> liabilities? What is the income? What is the profit of entity A.? And in this case, we don't know what entity A is, so we're provided a set of random various tax returns and some high-level financial statements. And so I tried to do that assessment for CFMG, Inc., based on what was provided, and for Wellpath, based on what was provided.

(Haddad Decl., Ex. B, Stalker Dep., 42:24 – 43:7).

Plaintiff did not know that Defendants planned to disclose a rebuttal expert to say that Plaintiff's expert's opinions are unreliable due to her failure to consider financial documents that Defendants themselves refused to produce even for their own rebuttal expert. Now, having provided incomplete financial information, Defendants apparently wish to claim at trial that there is insufficient evidence from which to determine their financial condition.

If Plaintiff prevails on her deliberate indifference claims at trial against any of the Wellpath entities, the jury will be permitted to award punitive damages. Defendants have the right to produce evidence of their financial condition at trial to ensure that any punitive damages award does not offend due process. Plaintiff must be able to learn about Defendants' financial condition to rebut any claimed inability to pay a substantial punitive damages award by Defendants, which includes facts concerning CFMG's paying money to its parent companies and receiving money, loans, and services from its parent companies. Plaintiff also needs this information so she can make a punitive damages request to the jury that will deter future misconduct, punish Defendants, and accord with Defendants' due process rights.

Plaintiff therefore seeks:

- "The Management Services Agreement," that includes CFMG and Wellpath LLC which Wellpath Controller and Defendants' PMK, Tabitha Vanns, testified she needed to review before she could answer questions in her deposition concerning Defendants' financial condition, and which Defendants' rebuttal expert Mr. Wisehart asserts is needed to consider Defendants' financial condition;
- "The General Ledger for the Wellpath entities," which Ms. Vanns testified she needed to review before she could answer questions in her deposition concerning Defendants' financial condition, and which Mr. Wisehart indicated was essential for Ms. Stalker to consider in determining the fair value of Defendants' assets or debts to determine their solvency or insolvency;
- Complete, audited financial statements with all included notes for all corporate Defendants from 2020 to the present [Ms. Vanns testified 2022 would be completed by April 2023];

- Complete, audited financial statements of CCS-CMGC Intermediate Holdings, Inc., which Ms. Vanns testified is the entity holding consolidated financial information for Defendants CFMG, CMGC, Wellpath Management, Inc., and Wellpath LLC, because they are **Variable Interest Entities** of CCS-CMGC Intermediate Holdings, Inc.;
- 2022 tax returns for CFMG, CMGC, Wellpath Management, Inc., and Wellpath LLC;
- Complete tax returns for CCS-CMGC Intermediate Holdings, Inc., for 2020 through 2022;

In meeting and conferring, Plaintiff has agreed to limit the scope of these requests to 2020 to present, rather than 2018 to present. These requested records will assist Plaintiff and her forensic accounting expert, Ms. Stalker, as well as the jury, in determining Defendants' true financial condition.

In addition, as further explained below, Plaintiff duly requested, and Defendants repeatedly promised to look for and produce, but never produced, their responses to the County of Shasta's Request for Proposals (RFP) for the medical services contract at the jail in place at the time of the incident. Defendants' responses to Plaintiff's request for these documents indicated that they were still searching for such documents and would produce them if they found any. Recently, Shasta County, in another jail wrongful death case being handled by Plaintiff's counsel, produced the very document that Plaintiff requested in the present case, but missing an appendix that contained additional financial information and representations Defendants made to Shasta County to obtain the contract in effect at the time of Randall Johnson's death. Defendants refuse to produce this highly relevant complete document in the present case, despite its existence that Plaintiff discovered in another case.

Therefore, Defendants should also produce:

- Complete responses to Requests for Proposals or Bids produced by CFMG to obtain the contract, in effect at the time of the INCIDENT, with Shasta County and/or the Shasta County Sheriff's Office to provide services at the facility where the INCIDENT occurred, including all attachments and appendices to such documents.

Defendants assert that Plaintiff has created a "fire drill" before trial, but Plaintiff has consistently sought these highly relevant documents, whose importance had become increasingly more apparent. Judge Mendez has already disposed of Defendants' untimeliness argument. (ECF No. 188). Defendants' rhetorical questions merely speculate about things Plaintiff is not asking for in this motion. The remainder of Defendants' arguments go to weight, not admissibility, and certainly not to discoverability.

**DEFENDANTS' POSITION:**

## I. INTRODUCTION

As set forth in Plaintiff's position statement, none of the information Plaintiff seeks in this latest discovery dispute concerns whether any of the defendants is liable for the claims Plaintiff alleges. Instead, Plaintiff (again) seeks additional financial information for its purported punitive damages presentation. Plaintiff, however, has sat on its hands for the last many months and has created a fire drill regarding this information on the eve of trial. As set forth in Section B below, the information Plaintiff demands either does not exist or is not relevant to this case and the named Defendant entities.

Even if Plaintiff could establish some modicum of relevancy (which she cannot), producing additional information at this late stage prejudices Defendants where Plaintiff will most certainly seek to use such information without proper context at trial. For example, Plaintiff suggests that her expert should have had additional financial information to consider and include in her expert opinion. Is Plaintiff intending to supplement her expert disclosure weeks or even days before trial and after the parties have completed expert depositions? Is Plaintiff suggesting that she would seek to reopen the deposition of Defendants' representative regarding financial issues so as to understand this additional information? And if the answer to either of those questions is "yes," how can Plaintiff represent that this intentional and strategic choice to wait months to seek the Court's guidance will not impact the June 26, 2023 trial date? While the Court has permitted Plaintiff to file a motion to compel, the Court did so with the caveat that "the motion can be heard and decided on an expedited basis *and does not affect the trial date*." (ECF 188, ¶ 4 (emphasis supplied).)

To be clear, Defendants' expert did not criticize Plaintiff's financial expert for failing to consider the contents of any documents or information that was not otherwise produced in the case. Defendants' expert criticizes Ms. Stalker for purporting to perform certain financial tests and then failing to do so consistent with industry standards based on the information she *has* received.

## II. PROCEDURAL HISTORY

On September 9, 2022, Plaintiff filed a motion to compel certain financial information and to reopen discovery to disclose an expert on the same. (ECF 137.) The interested Defendants, in response, identified the information that the Defendants had already produced (ECF 150-2, Declaration of T. Vanns,

¶¶ 4-5), and further agreed to supplement that production with specific additional information, including: (i) Federal and State of California tax returns for Wellpath LLC inclusive of its wholly-owned operating LLCs for tax years 2019, 2020, and 2021 (ECF 150-2, ¶ 6b); (ii) Federal and State of California tax returns for Wellpath Group Holdings, LLC for the 2018 tax year (ECF 150-2, ¶ 6c); (iii) unredacted California tax returns for Jessamine Healthcare, Inc. for tax years 2018, 2019, and 2020 (ECF 150-2, ¶ 6d); and (iv) attachments and schedules to the IRS Form 1120 tax returns for CCS-CMGC Intermediate Holdings 2, Inc. for tax years 2018, 2019, 2020, and 2021 (ECF 150-2, ¶ 6e). The Defendants produced all of these documents no later than November 1, 2022. The Defendants further attested to the tax-reporting and financial relationship between the named defendant entities in describing why Plaintiff's demand for audited financial statements (including related notes, comments, etc. to the same) was not a reasonable or relevant request. (ECF 150-2, ¶¶ 13-14.) The only parties to this case with which Wellpath has a relationship are California Forensic Medical Group, Inc., Wellpath Management, Inc. (f/d/b/a Correctional Medical Group Companies, Inc.) and Wellpath LLC. (*See* ECF 150-2, ¶ 2.)

On December 7, 2022, the Court reopened discovery to permit the Plaintiff to disclose a financial expert. (ECF 158, p. 4.) The Court <u>did not</u> order Defendants to produce documents beyond those that the Defendants enumerated in their briefing and had, by that date, already produced. (ECF 158, p. 4.) Plaintiff was instructed to bring a separate motion to the extent Plaintiff determined that the information Defendants agreed to produce did not "satisfy Plaintiff's requested relief." (ECF 158, p. 4.) The Court certainly did not suggest that Plaintiff should wait to do so until less than a month before trial is set to begin. Notably, Plaintiff had requested in that earlier motion – and the Court declined to compel – the same umbrella of GAAP-compliant audited financial statements Plaintiff now seeks. (*See* ECF 137, p. 10; ECF 158, p. 4.)

On January 4, 2023, Plaintiff served an Amended Notice of Deposition regarding the "financial condition" of certain Defendants. (Cardinale Decl., Ex. 1, Amended Deposition Notice.)Plaintiff identified the topic(s) for deposition only as:

> [T]he Defendant(s)' financial condition, including but not limited to assets, liabilities, revenue, cash flow, profit, expenses, loss, gross income, net income, net worth, value, loans, mortgages, lines of credit, solvency, and financial stability, from January 1, 2018 to the present …

(Cardinale Decl., Exhibit 1.) Thus, Plaintiff demanded that the Defendants produce someone to testify about any and all portions of more than 20 tax returns for multiple entities spanning four years, plus individual defendant balance sheets and statements of operations for three entities across three years – without any further guidance or direction about lines of particular interest or inquiry.

On January 20, 2023, counsel for Wellpath Management, Inc. and Wellpath LLC sent a letter to counsel for Plaintiff regarding the above-quoted scope of the Amended Notice of Deposition. (Cardinale Decl., Ex. 2, Meet and Confer Letter.) Counsel was concerned that the lack of specificity might cause some unnecessary friction at the deposition. Thus, in that letter, among other things, counsel noted:

> … as you know, Defendants have produced financial information for several entities across several years. The witness will be prepared to discuss that information. If any issues arise regarding the breadth of a topic or a specific inquiry, we will work with you to resolve such issues.

(Cardinale Decl., Ex. 2.) Counsel for Plaintiff declined to either narrow the scope of the notice or otherwise specify what information the witness might specifically need to be in a position to explain.

Tabitha Vanns sat for a full-day deposition on January 26, 2023. In the Plaintiff's Position statement, Plaintiff has cherry-picked particular questions about which Plaintiff contends Ms. Vanns was not in a position to testify and, arguably, *could not* have been in a position to testify during the deposition absent a more specific notice. Setting aside the relevance of many of those questions, no witness could have anticipated those particular questions based on the manner in which counsel for Plaintiff chose to notice the deposition topic. The Court should consider whether that vagueness was intentional.

On February 15, 2023, counsel for Plaintiff emailed counsel for the interested Defendants and demanded (again) additional financial information based on Ms. Vanns' testimony, including viewing access into the General Ledger for entities not even named defendants in this case. Defendants declined to capitulate to these demands.

Instead, on February 23, 2023, counsel for Defendants responded that: (i) counsel had objected to the broad scope of the deposition notice before the deposition and had written of their willingness to "work with you to resolve any particular inquiry that the witness might not be in a position to answer during the deposition" as a result of the same; (ii) if a particular fee or expense is relevant to the case, counsel could make that request for information by interrogatory or by deposition upon written question,

to which Plaintiff would receive a verified response; (iii) 2022 tax returns for the filing entities already disclosed would be provided if and when those returns were filed; and (iv) none of the other information was relevant. (Cardinale Decl., Ex. 3, Email Exchange on February 23, 2023.)

Plaintiff did not serve any interrogatories or depositions upon written questions for particular financial information. Rather, on February 23, 2023, counsel for Plaintiff communicated that she would "proceed with seeking relief from the Court."

Nearly three months later – and one month before trial is set to begin – Plaintiff again makes these demands. Plaintiff still has not demonstrated that she is entitled to any of the widespread financial information that Plaintiff seeks. The Court did not determine, in the first instance, that Plaintiff was entitled to receive this information. Plaintiff suggests that subsequent deposition testimony and expert disclosures now support a far-reaching fishing expedition. Plaintiff is incorrect.[1]

**MEET AND CONFER EFFORTS**

In 2022, the parties met and conferred regarding discovery disputes by telephone, Zoom meeting, and email, and had an informal discovery conference with Magistrate Judge Deborah Barnes on August 25, 2022. Because Plaintiff contended that Defendants' financial condition discovery was incomplete and contained substantive redactions and omissions, Plaintiff moved the court to reopen discovery to compel Defendants to produce additional financial records. In response to Plaintiff's motion, and before the Court ruled on that motion, Defendants produced a second batch of financial records.

On February 15, 2023, after deposing Defendants' PMK on their financial condition and in consultation with Plaintiff's forensic accounting expert, Annette M. Stalker, Plaintiff's counsel, Julia Sherwin, again sought to meet and confer with counsel for the Defendants, Paul Cardinale and John Jacobson, concerning Ms. Vanns' testimony, what Plaintiffs contend was her ill-prepared and deficient responses, and additional financial documents. Defendants did not produce the requested records.

Although expert discovery concerning the Defendants' financial condition closed on March 31,

---

[1] It should also be noted that Wellpath LLC and Wellpath Management, Inc. had no involvement whatsoever in the subject incident in August 2018 that gave rise to this lawsuit as they did not become associate entities of CFMG or CMGC until October 2018. Defendants advised the Court during the pretrial conference on May 12, 2023 that they intended to file a motion in limine to exclude punitive damages claims against Wellpath LLC and Wellpath Management, Inc. and the Court indicated it would be inclined to grant it. If the motion is granted, any financial records or information of these entities will be irrelevant and inadmissible at trial.

2023, Judge Mendez issued an Order on May 23, 2023 amending the pretrial order and permitting Plaintiff's counsel to file a motion to compel:

> Defendants' alleged failure to produce financial documents or supplement prior discovery responses is a matter that should be brought before a Magistrate Judge. The Court will permit Plaintiff to file a motion to compel before the assigned Magistrate Judge so long as the motion can be heard and decided on an expedited basis and does not affect the trial date.

(Order Re Parties Objections to Pretrial Conference Order, Doc. 188, ¶ 4).

That same day, on May 23, 2023, Plaintiff counsel, Michael J. Haddad, informed Mr. Cardinale of Plaintiff's intention to file a motion to compel to be heard on an expedited basis so as not to affect the June 26, 2023 trial date. The parties met and conferred by zoom[2] on May 26, 2023, but Defendants continued to decline to supplement their discovery responses or produce certain additional financial information <u>except</u>: (1) Defendants have produced the applications for an extension of time to file the 2022 tax returns for CFMG, Wellpath LLC, and CCS-CMGC Intermediate Holdings 2, Inc. (such that no 2022 returns are yet available); (2) Defendants have agreed to produce the now-available Balance Sheet and Statement of Operations financial information for CFMG, Wellpath Management, Inc., and Wellpath LLC in the same manner already produced for the years 2019, 2020, and 2021; and (3) Plaintiff agreed to limit the scope of records requested to January 2020-present (rather than 2018-present).

---

[2] Plaintiff's counsel, Mr. Haddad and Ms Sherwin were working in Crescent City that week, and Mr. Cardinale and Mr. Jacobson were working from their offices in Sacramento and Nashville.

## THE CONTENTIONS OF EACH PARTY AS TO EACH CONTESTED ISSUE

### 1. PLAINTIFF'S REQUEST FOR DEFENDANTS' COMPLETE FINANCIAL RECORDS

**PLAINTIFF'S REQUEST FOR PRODUCTION NO. 1:**

Please produce all DOCUMENTS reflecting the financial condition at any time from January 1, 2018, to the present, of California Forensic Medical Group, Inc. ("CFMG") and/or Correctional Medical Group, Inc. ("CMGC") and/or Wellpath, Inc., Wellpath Management, Inc., or Wellpath LLC ("Wellpath entities"), including but not limited to: annual financial reports, revenue statements, statements of income, balance sheets, profit and loss statements, shareholder reports, and cash flow statements.

**PLAINTIFF'S REQUEST FOR PRODUCTION NO. 2:**

Please produce all CFMG /CMGC/Wellpath entities' income tax returns (both federal and state) for the tax years 2018 to the present.

**PLAINTIFF'S REQUEST FOR PRODUCTION NO. 4:**

Please produce all DOCUMENTS, provided by CFMG /CMGC/Wellpath entities to any bank, financial institution, or lender with respect to any and all loans or lines of credit sought on behalf of CFMG/CMGC/Wellpath entities, including but not limited to all loan applications, line of credit applications, financial statements, and/or statements of financial condition, income, revenue, value, net worth, solvency, and/or financial stability at any time from January 1, 2018, to the present.

**DEFENDANTS' RESPONSES TO REQUEST FOR PRODUCTION NOs. 1, 2, and 4:**

Objection. Pursuant to FRCP 26(b)(1), the scope of this Request exceeds that which is relevant to the specific claims in this case and is not proportional to the needs of the case. It is also overly broad, vague, ambiguous and unduly burdensome. It additionally seeks documents and information that violates these entities' right to financial privacy and company trade secrets. Subject to the protective order in place and without waiving said objections, see the attached production.

**PLAINTIFF'S POSITION:**

**A. Punitive Damages**

"[E]vidence of a tortfeasor's wealth is traditionally admissible as a measure of the amount of punitive damages that should be awarded." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270

(1981). The jury is required to consider Defendants' financial position in determining a punitive damages verdict, to ensure that the verdict does not violate Defendants' due process rights. *See Pacific Mutual Life Insurance Company v. Haslip*, 499 U.S. 1, 21-22 (1991). It is "well-settled" that a defendant's "net worth" is a factor that is "typically considered in assessing punitive damages." *White v. Ford Motor Company*, 500 F.3d 963, 976-977 (9th Cir. Nev. 2007), *quoting TXO Products Corporation v. Alliance Res. Corporation*, 509 U.S. 443, 462 n. 28 (1993).

Additionally, the Ninth Circuit and courts in California require that a defendant's financial position be considered in order to determine whether "the amount of the punitive damages will have a deterrent effect in light of the defendant's financial condition." *Boyle v. Lorimar Products*, 13 F.3d 1357, 1359-1360 (9th Cir. Cal. 1994), *citing Las Palmas Associates v. Las Palmas Center Associates*, 1 Cal.Rptr.2d 301, 313 (1991). *See also, Neal v. Farmers Insurance Exchange*, 21 Cal.3d 910, 928 (1978) ("Also to be considered is the wealth of the particular defendant; obviously, the function of deterrence. . .will not be served if the wealth of the defendant allows him to absorb the award with little or no discomfort").

Courts in the Ninth Circuit permit discovery relating to a defendant's financial condition going back several years. *See, e.g., Santa Monica Baykeeper v. Kramer Metals, Inc.*, 2009 U.S. Dist. LEXIS 69130, *7-16 (C.D. Cal. Feb. 27, 2009) (permitting discovery of defendant's financial documents going back **7 years**); *Salisbury v. Hickman*, 2013 U.S. Dist. LEXIS 115024 (E.D. Cal. August 14, 2013) (permitting discovery of defendant's financial documents going back **5 years** where punitive damages were claimed); *EEOC v. Braun Electric Company* (E.D. Cal. January 24, 2014) 2014 U.S. Dist. LEXIS 9262 (permitting discovery of defendant's financial documents going back **4 years** where punitive damages were claimed); *Phillips v. Clark County School District*, Page 3 of 4 2012 U.S. Dist. LEXIS 5309 (D. Nev. January 18, 2012) (permitting discovery of defendant's financial documents going back **3 years** where punitive damages were claimed). In this case, the parties agreed that Defendants would produce financial information from 2018 to the present, and Defendants have produced partial information for that time period, and Plaintiff now limits her current request to 2020-present.

Importantly, courts recognize that where a subsidiary is liable for punitive damages, and financial information is on consolidated financial statements as is the case here, the wealth of the parent is relevant for determining what amount of damages should be assessed. *TXO Production Corp. v. Alliance*

*Resources Corp.*, 419 S.E.2d 870, 890 (W.Va. 1992) aff'd, 113 S.Ct. 2711 (1993), *Mihara v. Dean Whitter & Co., Inc.*, 619 F.2d 814, 824 (9th Cir. 1980); *Riley v. Empire Airlines, Inc.*, 823 F.Supp. 1016, 1023 (N.D.N.Y. 1993) (if punitive damages appropriate, fact finder should consider wealth of defendant including any parent or subsidiary); *Dushaw v. Roadway Exp., Inc.*, 816 F.Supp. 1229, 1239 (N.D. Ohio 1992) (court takes judicial notice of parent's wealth in awarding punitive damages); *Schlang v. Key Airlines*, 794 F.Supp. 1493, 1513 (D. Nev. 1992) (court considered earnings and value of defendant's parent company is assessing punitive damages).

This is not "piercing the corporate veil" – rather as these cases explain, it is the only way to assess the financial position of a certain companies. Here, because Defendants are variable interest entities.

For example, Defendants refuse to produce complete tax returns or accurate financial statements of CCS-CMGC Intermediate Holdings, Inc. -- the parent company of CFMG and CMGC -- claiming that the information is contained in consolidated statements that include various related corporations Defendants have created since 2018. However, in a similar case involving consolidated financial statements, the Supreme Court affirmed a state supreme court permitting not only discovery, but also admission into evidence, of the parent company's wealth for punitive damages purposes. In *TXO Production Corp. v. Alliance Resources Corp.*, 419 S.E.2d 870, 890 (W.Va. 1992) *aff'd*, 113 S.Ct. 2711 (1993), the West Virginia Supreme Court explained the basis for allowing a jury to consider the net worth of a parent corporation in a punitive damages case:

> If we did not allow trial judges in their sound discretion to admit evidence of the worth of parent corporations, corporations could escape liability simply by incorporating separate departments as a number of undercapitalized subsidiaries. It is the management of USX that must ultimately make the decision that its employees will not engage in malicious and nefarious business activities, and, therefore, it is the pocketbook of USX that the jury verdict must reach.

In affirming the award of punitive damages, which was based in part on evidence of the defendant's parent corporation's wealth, the United States Supreme Court noted that while TXO had objected to such evidence, TXO itself had not offered any evidence in rebuttal with respect to whether some of the net wealth evidence presented included the wealth of affiliated companies. 113 S.Ct. at 2716 & n. 9.

Similarly, in *Mihara v. Dean Witter & Co.*, 619 F.2d 814, 824 (9th Cir. 1980), the defendant, Dean Witter & Company, objected to the admission of annual financial reports of itself and its parent corporation,

Dean Witter Organization. The Ninth Circuit held "The annual reports (though they reflect the income of the parent corporation, Dean Witter Organization, rather than Dean Witter & Company) and Gracis' tax returns, were clearly relevant for the determination of punitive damages."

Punitive damages are designed to fulfill public purposes of punishment and deterrence. *Adams v. Murakami*, 54 Cal.3d 105, 110 (1991). Those public purposes are not fulfilled both in cases of over punishment and under punishment. *Delos*, *supra* at 667 ("a punitive damage award which fails to adequately punish is as legally defective as an award which over-punishes").

Defendants' punitive damages exposure is significant, Defendants CFMG and CMGC are undercapitalized, and Plaintiff must be able to learn Defendants' true financial condition.

**B. <u>Defendants Have a Duty to Supplement Their Financial Condition Discovery</u>**

Federal Rule of Civil Procedure 26(e) requires a party to supplement its initial disclosures or discovery responses "in a timely manner" when it learns that the disclosure or response is incomplete or incorrect and the information has not otherwise been made known to the opposing party. "Whether supplementation is timely under Rule 26(e) hinges on facts such as when the original disclosure was made, when a party discovered its response was incomplete, and when the supplementation was made in relation to those events." *Yellowcake, Inc. v. Morena Music, Inc*., No. 1:20-cv-00988-AWI-BAM, 2022 U.S. Dist. LEXIS 191701, at *10 (E.D. Cal. Oct. 20, 2022), citing *Persian Gulf Inc. v. BP W. Coast Prod. LLC*, No. 15cv1749-JO-AGS, 2022 U.S. Dist. LEXIS 180134, at *38 (S.D. Cal. Sept. 30, 2022). The Advisory Committee Notes to the 1993 Amendments suggest that the obligation to supplement under Rule 26(e) does not end with the fact discovery cutoff, and provides that supplementations "should be made at appropriate intervals during the discovery period, and with special promptness as the trial date approaches." *Yellowcake*, 2022 U.S. Dist. LEXIS 191701, at *10.

For the first time during the deposition of Defendants' designated PMK on their financial condition, Tabitha Vanns, Plaintiff learned of the importance to Defendants' financial condition of the general ledger for the 65 Wellpath-related companies including CFMG and the management services agreement involving Defendants CFMG and Wellpath LLC, at least according to Defendants and their PMK. Ms. Vanns repeatedly testified that she needed to review the general ledger and/or MSA to answer basic questions concerning Defendants' tax returns and financial records, as identified above. These

documents are directly relevant to Defendants' financial condition and should have been produced to Plaintiff in response to RFP Nos. 1, 2 and 4, as they relate to the financial information provided on the tax returns produced by Defendants. Ms. Vanns made it clear it is impossible for her to answer even the most basic financial questions without reviewing the general ledger and management services agreement.

Ms. Vanns's testimony was also inconsistent with her previously produced declaration where she declared that the "Wellpath Entities and CFMG do not prepare audited financial statements in the normal course of business." (Decl. of Tabitha Vanns, Doc. 150-2, ¶ 13(a)). Ms. Vanns testified that the financial statement audits include audits of Defendants Wellpath, LLC, Wellpath Management, Inc., CFMG, and CMGC and that they are done on an annual basis going back to 2018. (Haddad Decl, Ex. A, Vanns Dep., 38:13 – 45:2). Based on Ms. Vanns's testimony, Plaintiff seeks complete audited financial statements as indicated in the list above, and which should have been produced in response to Plaintiff's RFPs.

Defendants have already produced some incomplete financial records and tax returns from Defendants' parent corporations, including non-party entities Wellpath Group Holdings, LLC, CCS-CMGC Intermediate Holding 2, Inc., and Jessamine Healthcare, Inc. However, Ms. Vanns testified that CFMG is a variable interest entity of CCS-CMGC Intermediate Holdings Inc. and that CCS-CMGC Intermediate Holdings Inc. is the entity with consolidated financial statements onto which CFMG, Wellpath Management Inc., and Wellpath LLC's financial statements are consolidated. (Haddad Decl., Ex. A, Vanns Dep. 105:5-10; 102:20-103:5; 103:17-19). Ms. Vanns also declared that the "Wellpath Entities and CFMG are included in the consolidated financial statements for CCS-CMGC Intermediate Holdings, Inc." (Vanns Decl., Doc. 150-2, ¶ 13). The consolidated tax returns for CCS-CMGC Intermediate Holdings, Inc. have not been produced.

A district court ordered the production of similar "consolidated financials" of variable interest entities ("VIEs") for purposes of punitive damages. *Meeker v. Life Care Ctrs. Of Am., Inc.*, No. 14-cv-02101-WYD-NYW, 2015 U.S. Dist. LEXIS 162989 at *20-23 (D. Colo. Dec. 4, 2015).

This information is important to understand the actual financial position of CFMG, which as Ms. Stalker explained above at p. 4, is a variable interest entity, and CFMG's financial position is closely connected with that of CCS-CMGC Intermediate Holdings, Inc.

Because Defendants' financial condition is to be assessed based on their current assets and

liabilities, *Vieste, LLC v. Hill Redwood Dev*., No. 09-cv-04024-JSW (DMR), 2011 U.S. Dist. LEXIS 29137, at *8-10 (N.D. Cal. Mar. 9, 2011), Plaintiff seeks Defendants' 2022 tax returns as well, which Ms. Vanns testified would be completed by April 2023.

Defendants should be compelled to produce the entirety of the documents listed above, limited to the period of January 2020 to the present, as these documents are clearly relevant to the issue of punitive damages and within the scope of discovery. The protective order will adequately protect any privacy concerns Defendants may have. As trial quickly approaches on June 26, 2023, it is imperative that Defendants are prevented from obstructing Plaintiff's efforts to determine their true financial condition.

**Moreover**, this financial information is highly relevant by Defendants' own admission, since Defendants' rebuttal expert economist, Frank Wisehart, CPA, contends that Plaintiff's expert economist, Annette Stalker's "report is flawed in its principles and methods because: … Ms. Stalker does not consider that the management services agreement (MSA) between CFMG and Wellpath LLC is common and ordinary in the medical services industry." (Haddad Ex. D, Wisehart Report, p. 13). Yet from documents that were produced, it is clear that CFMG is undercapitalized by sending approximately 18% of its gross revenue to Wellpath LLC for "management services" – over $100,000,000 over four years – that even Mr. Wisehart cannot identify or justify, because Defendants did not even provide the MSA to him. (Haddad Decl., Ex. E, Wisehart Dep., 109:16 – 112:14). Mr. Wisehart was only deposed on May 1, 2023. Defendants have stated that they intend to file a motion in limine to exclude Ms. Stalker's opinions due to her inability to consider such financial information of the Wellpath entities. (See doc. 177, p. 5, item 13).

**Plaintiff's Rebuttal to Defendants' Points Below:**

**1. General Ledger.** Ms. Vanns repeatedly testified that the General Ledger was available to her, and "The general ledger is where the economics is recorded for each of the legal entities and ultimately the financial reporting and the financial statements are presented." (Haddad Dec., Ex. A, Vanns Dep, 19:23 – 20:13). For example, for unidentified millions of dollars in "professional fees" paid by CFMG to Wellpath entities, "The details of that number would be supported on a general ledger." (*Id*, at 73:5-12).

2. **MSA.** As shown directly above, Defendants' expert accountant does criticize Plaintiff's

accountant for failing to consider the fact that there is an MSA, and that the MSA would identify what tens of millions of dollars flowing from CFMG to Wellpath LLC were for.

3. **Audited Financial Statements.** Claiming that "CCS-CMGC Intermediate Holdings, Inc. … does not prepare consolidated financial statements with entity-specific financial information in a manner in which Plaintiff might identify the financial condition of the Wellpath Entities and of CFMG" misses the point. CFMG and the other Wellpath Entities are variable interest entities of CCS-CMGC Intermediate Holdings, Inc., and by definition are controlled by CCS-CMGC Intermediate Holdings, Inc. The audited financial information for Defendants, because they are variable interest entities, is on the audited CCS-CMGC Intermediate Holdings, Inc. financial statements.

4. **Tax Returns for CCS-CMGC Intermediate Holdings, Inc.** Defendants have only produced heavily redacted tax returns for a *different company*: CCS-CMGC Intermediate Holdings **2**, Inc. Defendants must produce whichever tax return includes CCS-CMGC Intermediate Holdings, Inc.

**DEFENDANTS' POSITION:**

Less than a month before trial, and despite threatening to seek Court intervention for months, Plaintiff now asks the Court to compel Defendants to produce the following:

1. The General Ledger;
2. The Management Services Agreement ("MSA");
3. Complete audited financial statements;
4. Consolidated tax returns for CCS-CMGC Intermediate Holdings, Inc.; and
5. Defendants' 2022 tax returns.

So focused on using its serial discovery motions as a hammer without regard for the relevancy of such requests, Plaintiff ignores information already in Plaintiff's possession about why these requests are untethered to the issues in the case or otherwise impossible with which to comply. As set forth below, to the extent Defendants produced information, Defendants have complied with their obligations to supplement that production.

First, Plaintiff ignores the untimeliness of her requests and the resulting prejudice to Defendants should the Court grant any portion thereof. Plaintiff provides no good cause for her failure to seek Court intervention at any earlier point over the many months Plaintiff threatened to do so. Plaintiff also fails to

explain how any production of much of the information Plaintiff demands would *not* require resetting the June 26, 2023 trial.

Second, as the party moving to compel information, Plaintiff bears the burden of proving that the information Plaintiff seeks is relevant and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1); *see also Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995); *Mort v. Brennan*, Case No. 1:19-cv-00652-NONE-SKO, 2021 WL 1946523 (E.D. Cal. May 14, 2021) (finding plaintiff failed to meet its burden to establish that the requested discovery was relevant and citing, among others, *Soto*, 163 F.R.D. at 610). Rule 26(b)(1) was amended in 2015 to remove the phrase "reasonably calculated," which had been abused by parties to expand permissible discovery, and to constrain discovery to information that is both relevant and proportional. Here, Plaintiff has repeatedly attempted to use the discovery process to learn information of no relevance to this case about non-party entities, in particular confidential and sensitive financial information about those non-parties. Plaintiff already has sufficient information to determine the named defendants' financial condition, specifically net worth and net profits, from 2018 through 2022.

Plaintiff relies on many of the same cases Plaintiff cited in the earlier Motion to Compel (at ECF 137). Those cases do not support wide-ranging discovery into a non-party's financial information absent exceptional circumstances, circumstances which are not present here and which Plaintiff clearly has not established. Without undertaking to make the requisite motion, Plaintiff effectively asks the Court to pierce the corporate veil such that financial information regarding any and all entities with direct or indirect ownership interest in any of the actual named Defendant entities might be used in making a punitive damages presentation. But "[t]he doctrine of piercing the corporate veil … is the rare exception, applied in the case of fraud or certain other exceptional circumstances." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003). And absent a showing of the need to pierce the corporate veil (or alter ego), Plaintiff cannot meet its burden to show the relevance of upstream entity financial information. To apply these theories in California, Plaintiff must establish "such a unity of interest and ownership between the [named party] and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist" and an inequitable result if only the named party is held responsible. *Gerritsen v. Warner Bros. Entertainment Inc.*, 112 F. Supp.3d 1011, 1042 (C.D. Cal. 2015) (citations

omitted) (granting motion to dismiss). "Conclusory allegations of 'alter ego' status are insufficient to state a claim." *Id.*

Plaintiff first cites a number of cases to support her argument that financial information regarding the named Defendants is relevant. That is not in dispute, and the named Defendants have produced the tax returns on which any of their financial information might be included as well as the Balance Sheet and Statement of Operations by entity for the years 2018 through 2022.

Then, Plaintiff goes on to demand wide-ranging information into non-party entities; the cases Plaintiff cites do not support such demands. For example, Plaintiff cites *TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443 (1993), for the proposition that "the wealth of the parent is relevant for determining what among of damages should be assessed" against a subsidiary where "financial information is on consolidated financial statements." That summary is not correct and the case is distinguishable on its face. The Court in *TXO Production* noted in a footnote that the plaintiff was permitted to rely on public financial statements of the parent "[b]ecause TXO had refused to disclose any financial records." *Id.* at 450, fn. 9. As noted above, the named Defendants have produced all relevant tax filings in which the Defendants' financial information is recorded and for each named Defendant a Balance Sheet and Statement of Operations.

Plaintiff's reliance on *Mihara v. Dean Whitter & Co., Inc.*, 619 F.2d 814 (9th Cir. 1980), is likewise misplaced or, at least, incomplete. The Court noted in *dicta* that an annual report of a parent corporation was relevant to punitive damages of a particular defendant without discussion on the factual basis for that determination. *Id*. at 824.

Similarly, shortly before this filing, Plaintiff added citation to *Meeker v. Life Care Centers of America, Inc.*, 2015 U.S. Dist. LEXIS 162989 (D. Colo. Dec. 4, 2015), to support its claim that courts order the production of consolidated financial statements where entities are variable interest entities. Plaintiff ignores, however, that the *Meeker* court was considering the reverse request. In *Meeker*, one of the defendants is described as the purported parent – the "reporting company." The Court thus ordered that the parent was to produce the consolidated financials of the *down*stream entities in the corporate structure. Here, Plaintiff seeks to expand the discovery requirements to expressly include non-parties. Such a request is not appropriate where the named defendants have provided entity-specific financial

information as well as all tax filings in which those named defendants report revenue and losses.

With respect to the specific documents requested, and setting aside for argument the untimeliness of this demand, Defendants submit the following:

**1. General Ledger.** As counsel for Defendants set forth in his February 23, 2022 email, even if relevant, the Defendants could not produce the "General Ledger." Plaintiff is correct that in response to certain questions (not specifically or fairly identified as topics in the deposition notice), Ms. Vanns responded that she would need to refer to the general ledger for drill-down or supporting detail. Ms. Vanns also testified that the general ledger is "an application saved on our server." (Vanns Dep. Tr. 132:13-14.) Thus, Plaintiff already knows that the "general ledger" is a not a document that can be produced and that the information in the general ledger houses transaction detail for "[a]ll entities that are … included in the consolidated financials … ." (Vanns Dep. Tr. 133:1-15; *see also* 20:4-7 ("The general ledger is where the economics is recorded for each of the legal entities and ultimately the financial reporting and the financial statements are presented.").) When counsel for Plaintiff demanded the "General Ledger" in the weeks after Ms. Vanns' deposition, counsel for Defendants invited Plaintiff to make any particular request for financial information by interrogatory or by deposition upon written questions such that Plaintiff could then receive that specific information by verified response. Counsel for Plaintiff, however, did not serve any requests and instead has moved the Court to compel access to wholly irrelevant information. Defendants invited Plaintiff to request specific financial information behind the tax returns or financial statements months ago. Plaintiff declined. Plaintiff is not entitled to the far-reaching access Plaintiff now demands.

**2. MSA.** Plaintiff claims that Defendants' rebuttal expert asserts that the MSA "is needed to consider Defendants' financial condition." But Mr. Wisehart asserts no such thing. Mr. Wisehart *does* opine that "[m]anagement services arrangements in the medical industry are not unusual" and that there are "205 [Management Services Organizations] providing services to nearly 300 physician groups or similar entities" in California alone. (Rebuttal Report, Sec. V.a.; *see also id.* at Sec. VI.3.) But Mr. Wisehart does not opine that Ms. Stalker's opinions are unreliable because she did not consider the MSA. Rather, Mr. Wisehart opines that Ms. Stalker's opinions are unreliable because she failed to perform each of the three tests for solvency as she describes in a manner consistent with professional industry

standards. Among other things, Ms. Stalker conflates book value and fair value and fails to consider cash flows and other available financial resources. Nor does the fact that Ms. Vanns referred to the MSA as a source for certain specific financial information (not noticed with particularity) at her deposition evidence that the MSA itself is relevant to Plaintiff's claims. Again, to the extent Plaintiff believed particular financial terms of the MSA were relevant or necessary, Defendants invited Plaintiff to request such information by interrogatory or deposition upon written questions months ago. Plaintiff declined to do so.

**3. Audited Financial Statements.** As Ms. Vanns detailed in her September 30, 2202 Declaration:

> a. The Wellpath Entities and CFMG do not prepare audited financial statements in the normal course of business. Instead, consistent with Generally Accepted Accounting Principles (GAAP), the Wellpath Entities and CFMG are included in the consolidated financial statements for CCS-CMGC Intermediate Holdings, Inc. along with dozens of other entities.
>
> b. CCS-CMGC Intermediate Holdings, Inc. is a privately-held company and does not prepare consolidated financial statements with entity-specific financial information in a manner in which Plaintiff might identify the financial condition of the Wellpath Entities and of CFMG.
>
> c. In an effort to provide Plaintiff with the information Plaintiff requested, we extracted relevant financial information from the audited consolidated financial statements in a manner consistent with GAAP principles to create an entity-specific Balance Sheet and Statement of Operations for 2019, 2020, and 2021 for each of Wellpath LLC, Wellpath Management, Inc. and CFMG.
>
> d. The Plaintiff's expert would not be able to determine any other specific entity information from the consolidated financial statements themselves, as those statements do not segment the reporting by entity.
>
> 14. The Plaintiff writes in the Motion that "Defendants have produced unaudited financial statements that they have said they created specifically for this case." The Wellpath Entities and CFMG have been transparent about the need to produce the specific financial information that Plaintiff requested in a readable format. Plaintiff implies that the underlying financial information is untested. That is not correct.

Nothing in Ms. Vanns' deposition testimony was inconsistent with the above sworn statements. The financial information that Plaintiff has already received is included in the audited consolidated financial statements.

In fact, counsel for Defendants noted that counsel for Plaintiff appeared to have misunderstood

Ms. Vanns' testimony on this issue in his February 23, 2022 email:

> Ms. Vanns did not testify that the named defendants have standalone audited financial statements. Instead, consistent with Paragraph 13 of her Declaration, Ms. Vanns testified that the named defendants' financial information is audited in the context of Deloitte preparing consolidated audited financial statements for CCS-CMGC Intermediate Holdings, Inc. The be clear, the only audited financial statements that consider the financial information for the named defendants are those consolidated statements. And, as Ms. Vanns noted in Paragraph 13 of her Declaration, those consolidated statements do not segment the reporting by entity.

(Cardinale Decl., Ex. 3.) Counsel for Defendants heard nothing further on this point until, months later, receiving the dispute notification contained herein.

The named Defendants do not have standalone audited financial statements. The consolidated financial statements do not provide entity-specific information, which Defendants have already produced in another format. Plaintiffs demand for any additional information should be denied.

**4. Tax returns for CCS-CMGC Intermediate Holdings, Inc.** Ms. Vanns attested in her September 30, 2022 Declaration that: "The consolidated federal tax returns (Form 1120) for CCS-CMGC Intermediate Holdings 2, Inc. and the California tax returns (Form 100) for Jessamine Healthcare, Inc. reflect all income and loss of the parent corporation and its underlying subsidiaries, which includes [Wellpath Management, Inc. and Wellpath LLC]." (ECF 150-2, ¶ 9.) Defendants have already produced, among other things: (i) the federal tax filings for CCS-CMGC Intermediate Holdings 2, Inc. & Subs; and (ii) the California tax returns for Jessamine Healthcare Inc. & Affiliates. Additionally, the entity that Plaintiff identifies in this dispute statement – CCS-CMGC Intermediate Holdings, Inc. – does not file its own tax return. Counsel for Defendants communicated the same to counsel for Plaintiff in his February 23, 2023 email response. (Cardinale Decl., Ex. 3.) Defendants cannot produce any documents in response to this demand.

**5. 2022 Tax Returns.** On May 26, 2023, Defendants produced the Application for Automatic Extension of Time to File Certain Business Income Tax, Information, and Other Returns (Form 7004) for each of California Forensic Medical Group, Inc., Wellpath LLC, and CCS-CMGC Intermediate Holdings 2, Inc. These documents reflect that the afore-mentioned tax filers have not yet filed returns for the year ending December 31, 2022. Thus, Defendants do not have any additional documents to produce in response to this demand.

### 2. PLAINTIFF'S REQUEST FOR DEFENDANTS' RESPONSES TO COUNTY OF SHASTA'S REQUESTS FOR PROPOSALS

**PLAINTIFF'S REQUEST FOR PRODUCTION NO. 14:**

Please produce all DOCUMENTS related to any "Bid Packages" or responses to Requests for Proposals or Bids produced by CFMG to obtain the contract, in effect at the time of the INCIDENT, with Shasta County and/or the Shasta County Sheriff's Office to provide services at the facility where the INCIDENT occurred.

**DEFENDANTS' JANUARY 27, 2020, RESPONSES TO REQUEST FOR PRODUCTION NO. 14:**

Defendant will obtain any response to a RFP that relates to the contract in force and effect at the time of the incarceration of decedent and provide it along with the related contract once obtained.

**DEFENDANTS' FEBRUARY 17, 2020, SUPPLEMENTAL RESPONSES TO REQUEST FOR PRODUCTION NO. 14:**

Defendant will continue to try to obtain any RFP that relates to the contract in force and effect at the time of the incarceration of decedent and provide it along with the related contract once obtained.

**PLAINTIFF'S POSITION:**

After the Pretrial Conference on May 12, 2023, Plaintiff's counsel learned about highly relevant documents related to RFP No. 14 from documents produced by Shasta County in another case, *Adena v. Shasta County and Wellpath Management, Inc., et al*. E.D. Cal. Case No. 2:21-cv-00770-MCE. (Haddad Decl., ¶¶ 3, 7). The documents are Defendant CFMG's response to Shasta County's Request for Proposals for the contract in effect in this case, and include numerous corporate admissions, including:

> • "It's easy for a provider to offer a lower price up-front by proposing to hire lower cost, less qualified staff, by cutting hours, by skimping on staff training, and even by not filling shifts when staff members are sick or absent. The problem is that the long-term consequences and higher long-term costs are often hidden, and can add up to far more than the apparent savings in the contract. Costs like … Increased risk of litigation."
>
> • "… [W]e don't cut corners when it comes to staffing. … We never throw an untrained person into a new situation, which can lead to unhappy staff, poorly served inmates and a dangerous level of inconsistency."

(ECF No. 182, pp. 14, 80). The evidence here will show that, in fact, CFMG did all of these things it promised not to do when soliciting the contract for jail health care from Shasta County. These admissions go to CFMG/Wellpath's liability and punitive damages.

Additionally, the document that Plaintiff's counsel received in *Adena* was supposed to include, but omitted, Appendix 1 to this CFMG document: "We have been financially solvent for over 31 years, with a 2014 annual gross sales volume as detailed in *Appendix 1, 2013 & 2014 Audited Financial Statements*." (ECF No. 182, p. 13). Defendants do not deny having the complete document in their files – they just complain that it is too late to be compelled to produce that which they twice promised to produce.

On May 16, 2023, Plaintiff's counsel, Michael J. Haddad, requested defense counsel produce the bid documents Defendants had twice promised to produce and claimed they were searching for. Despite the Rule 26 requirement that Defendants supplement their disclosures "in a timely manner" and at least 30 days before trial (Fed. R. Civ. P. 26(e)(1) and 26(a)(3)(B)), defense counsel Paul Cardinale twice refused Plaintiff's counsel's request, stating "We will not be producing these documents 5 weeks before trial." The complete email string of the parties' meeting and conferring on this issue is filed at (ECF No. 182, pp. 98-101)**.** The parties also met and conferred by zoom regarding this issue on May 26, 2023.

Defendants have stated they have no intention to supplement their discovery responses to produce these obviously relevant documents, despite the requirement that they supplement their disclosures and their failure to search for, or concealment of, these documents for over three years. Plaintiff only learned of the existence of these relevant documents from production by a third-party in another case.

Plaintiff respectfully requests an order requiring Defendants CFMG/Wellpath to supplement their disclosures and discovery response to include "*Appendix 1, 2013 & 2014 Audited Financial Statements,*" to the 2015 CFMG response to Shasta County's Request for Proposals. (ECF 182).

**DEFENDANTS' POSITION:**

The Responses to Plaintiff's Request for Production of Documents that Plaintiff is referencing above were served on January 27, 2020, almost 3 ½ years ago. There was no attempt to meet and confer on this issue until May 16, 2023. While Plaintiff claims the documents from *Adena v. Shasta County and Wellpath Management, Inc., et al*. E.D. Cal. Case No. 2:21-cv-00770-MCE were "recently produced," Defendants have just learned that they were actually produced in that matter on February 14, 2022, well over a year ago. Again, Plaintiff has waited until a month before trial to make this request. The requested records have not been part of the record or the evidence and fact discovery has been closed since December 17, 2021.

Respectfully Submitted,

DATED: June 2, 2023

HADDAD & SHERWIN LLP

*/s/ Michael J. Haddad*

MICHAEL J. HADDAD
Attorneys for Plaintiff

DATED: June 2, 2023

MEDICAL DEFENSE LAW GROUP
RILEY & JACOBSON

*/s/ Paul A. Cardinale*

PAUL A. CARDINALE
JOHN JACOBSON
Attorneys for Defendants
CALIFORNIA FORENSIC MEDICAL GROUP, INC.; WELLPATH, INC.; WELLPATH MANAGEMENT, INC.; WELLPATH LLC; KERI RUBALCAVA, R.N.; AMANDA REAM, R.N.; LINDA SMITH, R.N.; JOHN MAIKE; CYNTHIA COLLINS, L.V.N.; and DEBORAH SAEGER, MFT

# EXHIBIT B

LINDSEY M. ROMANO (SBN: 69838)
GORDON REES SCULLY MANSUKHANI, LLP
315 Pacific Avenue
San Francisco, CA 94111
Telephone: (415) 875-4126
Facsimile: (415) 986-8054
lromano@grsm.com

Attorneys for Defendants
CALIFORNIA FORENSIC MEDICAL GROUP, INC.; WELLPATH MANAGEMENT, INC.; WELLPATH LLC; TRACY LEWIS, L.M.F.T.; PAM JOHANSEN, L.C.S.W.; and DANIEL DELLWO, P.A.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ADENA, Deceased, by and through his Co-Successors in Interest, CIRCE ADENA and RICHARD ADENA; CIRCE ADENA, Individually, and RICHARD ADENA, Individually,<br><br>Plaintiffs,<br><br>vs.<br><br>SHASTA COUNTY, a public entity; SHASTA COUNTY JAIL DEPUTIES JOSEPH GRADY, NATHANIAL NEVES, HECTOR CORTEZ; CALIFORNIA FORENSIC MEDICAL GROUP, INC., a California Corporation; WELLPATH MANAGEMENT, INC., a Delaware Corporation; WELLPATH LLC, a Delaware Limited Liability Company; TRACI LEWIS, L.M.F.T.; PAM JOHANSEN, L.C.S.W.; DANIEL DELLWO, P.A.; AMANDA REAM, R.N., and DOES 2–20; individually, jointly and severally,<br><br>Defendants. | CASE NO. 2:21-cv-00770-MCE-DMC<br><br>**DECLARATION OF BLAIR LUKASIK** |



Gordon Rees Scully Mansukhani, LLP
315 Pacific Avenue
San Francisco, CA 94111

Gordon Rees Scully Mansukhani, LLP
315 Pacific Avenue
San Francisco, CA 94111

STATE OF TENNESSEE

COUNTY OF DAVIDSON

I, Blair Lukasik, declare as follows:

1. I am a Certified Public Accountant and Vice President of Tax at Wellpath.

2. I have reviewed all the financial documents produced to Plaintiff, including documents with Bates numbers CFMG 000431-00510, CFMG 000739-000929, CFMG 001272-001581, and the additional signature pages produced in conjunction with this declaration.

3. I can confirm that all of the documents produced to Plaintiff listed above are complete, and no pages or portions were withheld.

4. The Defendants' wealth, financial conditions, and financial positions are fully represented in the GAAP-compliant audit reports that were produced.

5. As noted in paragraph 6 of the declaration from Plaintiff's expert, Annette Stalker, California Forensic Medical Group ("CFMG") "is a variable interest entity ("VIE") within the overall "Wellpath family" of companies. By definition, as a VIE, CFMG is not independent and relies on other organization(s) for continued funding/existence." It is precisely *because* CFMG is a VIE that the only accurate financial picture of the Defendants must be on a consolidated basis. As the Company's tax returns have not been filed on a consolidated basis with the VIE's, it would be distortive to rely on the tax return as an accurate determinant of the financial results and condition of the company as a whole and would additionally result in difficulty reviewing and understanding the various tax filings.

6. Wellpath LLC has filed a 1065 informational report inclusive of its own activity and the activity of wholly-owned single member LLC's whose income is fully captured within the consolidated tax returns produced. Although Wellpath LLC is the named entity on the return, Wellpath LLC does not file a tax return reporting only its stand-alone operations.

Gordon Rees Scully Mansukhani, LLP
315 Pacific Avenue
San Francisco, CA 94111

Further, the partnership income of Wellpath LLC is not representative of the company's overall financial condition due to Internal Revenue Code ("IRC") 743(b) adjustments (partner level rather than partnership) and addback of interest expense required under IRC 163(j)—therefore, the true financial condition of the company is more accurately reflected in the consolidated financial documents that have already been produced to Plaintiff.

7. The financial statements produced do not include an underlying combining or consolidating schedule which would provide accurate balance sheet information at the subsidiary level because the Defendants' audited financial statements are only produced at the consolidated level. Information on each entity individually would be meaningless for evaluating the financial condition of the group due to substantial intercompany transactions between the entities.

8. For example, paragraph 15 of Plaintiff's declaration from Annette Stalker asserts that "the correlation between Holdings 2 and Holdings is not clear." Within the consolidated income tax provided, Mrs. Stalker can easily see that neither of these entities produce any revenue and both are merely holding companies (see "Consolidated Schedules 1120 Page 1" where both entities report "NONE"). We, however, understand Mrs. Stalker's confusion when reconciling the gross receipts from the financial statements to the tax returns. The financial statement does not reconcile to the consolidated tax return provided because the tax return does not include the variable interest entities, like CFMG, which operate across the United States or the gross receipts of Wellpath LLC and its wholly owned subsidiaries. If Mrs. Stalker seeks a report that shows consolidated revenue that aligns with her expectations from external data, this may only be seen in the consolidated financial statements audited by Deloitte.

9. While the Company may report contracting and various operations by entity, some activities, such as financing and SG&A, may not be pushed down to each subsidiary. As

such, when looking for an accurate picture of the Defendant's financial situation, the only reliable source is the audited financial statements which are produced on a consolidated basis.

10. The facts stated herein are based on my own personal knowledge and if called to testify to same, I am competent to do so.

Dated: October 28, 2024

By: Blair Lukasik

Blair Lukasik

Gordon Rees Scully Mansukhani, LLP
315 Pacific Avenue
San Francisco, CA 94111

# EXHIBIT C

United States Bankruptcy Court
Southern District of Texas
**ENTERED**
January 26, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATED BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO: 24-90566** |
| **WELLPATH SF HOLDCO, LLC,** | § | |
| **Debtors.** | § | **Jointly Administered** |
| | § | **CHAPTER 11** |

**REVISED AND AMENDED CLARIFYING ORDER ENFORCING (A) THE FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF WELLPATH HOLDINGS, INC. AND CERTAIN OF ITS DEBTOR AFFILIATES, AND (B) THE TRUST DISTRIBUTION PROCEDURES**
**(Relates to ECF No. 690)**

Upon the *Wellpath Liquidating Trust's Motion for Clarifying Order Enforcing (A) the First Amended Joint Chapter 11 Plan of Reorganization of Wellpath Holdings, Inc. and Certain of Its Debtor Affiliates and (B) the Trust Distribution Procedures (ECF No. 690)* (the "Motion")[1] of the Wellpath Liquidating Trust (the "Trust"), for entry of an order (this "Order") clarifying and enforcing process, status, and rights provided for under the Plan (Case No. 24-90533, ECF No. 2596) and Trust Distribution Procedures ("TDPs") (Case No. 24-90533, ECF No. 2679, pages 344 to 374); and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334 and the *Order of Reference to Bankruptcy Judges*, General Order 2012-6 (S.D. Tex. May 24, 2012) (Hinojosa, C.J.); and this Court finding this to be a core proceeding pursuant to 28 U.S.C. § 157; and this Court having considered the Motion and having determined that the legal and factual basis set forth in the Motion establish just cause for the relief granted herein; and this Court having found that the relief requested in the Motion is in the best interest of parties in interest; and

[1] Capitalized terms used but not otherwise defined herein shall have the meaning given to them in the Motion.

after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1. In accordance with Article IV.J of the TDPs, Holders of General Unsecured Claims arising from alleged pre-petition personal injury tort or wrongful death may "proceed in the appropriate civil court and litigate such claim with the [Trust] included as a ***nominal defendant***." (emphasis added). As a nominal defendant, the Trust is not required to file answers, participate in discovery or hearings, or take an active role in any such litigation; *provided, however,* that nothing herein or in the Plan or TDPs shall prevent the Trust from participating in any such case at the direction of the Trustee or engaging in settlement discussions for purposes of determining stipulated Allowed Claim Amounts at the discretion of the Trustee.

2. The Plan does not permit any party to proceed against the Post-Restructuring Debtors or any Debtor, including but not limited to Wellpath LLC, in any capacity, including as a nominal defendant.[2] Pursuant to the Plan, the Court will permit parties to proceed with pre-petition claims (*i.e.*, before November 11, 2024) against a Debtor only where such inclusion is necessary for the party to seek or maintain insurance coverage for their claim. Any motion filed by a Holder of an Unsecured Claim seeking an order of this Court to proceed against a Debtor for purposes of pursuing insurance proceeds must provide sufficient evidence to this Court that (a) insurance coverage exists for such claims and (b) either (i) there is no applicable SIR or (ii) such claim will exceed the applicable SIR.

3. To the extent a Holder of General Unsecured Claims arising from alleged personal injury tort or wrongful death has, as of the

[2] Nothing in this Order impacts or negates the Agreed Proposed Order this Court entered at ECF No. 238, regarding the Hirsch litigation in Hirsch v. Will County, et al., 19 CV 7398, currently pending in the Northern District of Illinois, Eastern Division, including the entry of judgment.

date of this Order, filed such claims against the Post-Restructuring Debtor or any Debtor, including but not limited to Wellpath LLC, and (a) no insurance coverage exists for such claims or (b) (i) there is an applicable SIR and (ii) such claim will not exceed the applicable SIR, that Holder must substitute the Liquidating Trust as a nominal defendant in place of the Post-Restructuring Debtor in that litigation. Substitution of the Trust as a nominal defendant is procedural only and shall not alter the relevance of the Debtor's conduct, policies, or actions, nor the scope of discovery reasonably necessary to liquidate a claim or determine liability or apportionment. The Trust may be substituted as a nominal defendant in any dispositive motion currently pending in any such litigation against the Post-Restructuring Debtor or any Debtor.

4. To the extent a Holder of General Unsecured Claims attempts to pursue pre-petition claims against any Debtor, including but not limited to Wellpath LLC, or to pursue such claims against the Trust in any capacity other than proceeding against the Trust as a nominal defendant, all such attempts are contrary to the Plan and barred by the injunction as set forth in the Plan and/or the discharge injunction under Bankruptcy Code § 524(a)(2). *See* Plan, Case No. 24-90533, Docket No. 2596, Exhibit A, Article IX.F (page 134 of the PDF); 11 U.S.C. § 524(a)(2).

5. A party that proceeds in violation of the Plan, which incorporates the TDPs, as clarified and enforced by this Order, shall be subject to the jurisdiction of this Court, and the Trust or the Post-Restructuring Debtors may seek any and all remedies available under the Bankruptcy Code against such a party for interference with the Plan including, but not limited to, monetary sanctions. To the extent any such monetary remedies are awarded, those amounts shall, to the extent not already paid, be otherwise debited from monies or property.

6. To the extent a Holder of General Unsecured Claims obtains a judgment resulting from or relating to actions inconsistent

with the Plan, TDPs, or this Order, said judgment will not be considered in determining the Holder's Allowed Claim Amount.

7. Notwithstanding anything to the contrary in this Order, a court of appropriate jurisdiction may determine the responsibility of or liability of any Debtor if necessary for determining the liability of or judgment against any other person, provided that no Post-Restructuring Debtor shall be required to participate in any manner (other than through appropriate third-party discovery) in such litigation or be personally liable to the plaintiff on account of such determination of the Debtor's responsibility or liability. For the avoidance of doubt, the extent to which the Post-Restructuring Debtors or any Debtor need not participate in any such litigation, as described in this Order, does not affect the Post-Restructuring Debtors' or any Debtors' obligation to otherwise comply with subpoenas, requests for production of documents or ESI, depositions including those under Fed. R. Civ. P. 30(b)(6), identification of custodians or witnesses, or other discovery pursuant to Fed. R. Civ. P. 45 and its state equivalents reasonably necessary to determine responsibility, liability, or apportionment.

8. This Court remains the sole forum, subject only to appeals, to which the party may be entitled, for the resolution of disputes concerning General Unsecured Claims which do not arise from alleged bodily injury or wrongful death.

9. For the avoidance of doubt, nothing in this Order or the Plan imposes any restrictions upon a party's right or ability to seek third-party discovery from any person or entity, including, but not limited to, the Post-Restructuring Debtors, pursuant to Fed. R. Civ. P. 45 and its state equivalents. The removal or substitution of Wellpath as a party defendant shall not, by itself, be a basis to stay, deny, or limit third-party discovery.

10. Nothing in this Order impacts, alters, amends or otherwise modifies any insurance policies issued to or covering the Debtors, nor

any treatment of such policies contained in the Plan or the Confirmation Order.

11. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

12. The Trust is authorized to take all necessary and appropriate action to further and effectuate relief granted pursuant to this Order and in accordance with the Motion.

13. The Court retains jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Order, and exclusive jurisdiction with respect to any relief from the injunctions set forth in the Plan.

SIGNED 01/25/2026

Alfredo R Pérez
United States Bankruptcy Judge

# EXHIBIT D

United States Bankruptcy Court
Southern District of Texas
**ENTERED**
June 04, 2025
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| WELLPATH HOLDINGS, INC., *et al.*,[1] | Case No. 24-90533 (ARP) |
| Post-Restructuring Debtors. | (Jointly Administered) |

**GENERAL FORM OF ORDER REGARDING LIFT STAY MOTIONS**

The Court having:

a. entered the *Findings of Fact, Conclusions of Law, and Order (I) Confirming the First Amended Joint Chapter 11 Plan of Reorganization of Wellpath Holdings, Inc. and Certain of its Debtor Affiliates and (II) Approving the Disclosure Statement on a Final Basis* [Docket No. 2596] (the "Confirmation Order") on May 1, 2025; and

b. entered the *Order (I) Further Extending the Automatic Stay to the Non- Debtor Defendants and (II) Granting Related Relief* [Docket No. 2599] (the "Extension Order");[2]

**IT IS HEREBY FOUND, ORDERED, AND ADJUDGED THAT:**

1. The Plan became effective and was substantially consummated on **May 9, 2025** (the "Effective Date") as set forth in the *Notice of (I) Entry of Confirmation Order, (II) Occurrence of Effective Date, and (III) Administrative Claims Bar Date* [Docket No. 2680].

2. As set forth in Article XIII.H of the Plan and the Extension Order, the automatic stay no longer remains in effect against the Debtors or the Non-Debtor Defendants. Except in such instances where third-party insurance proceeds are available, holders of Claims' rights to proceed

[1] A complete list of the Post-Restructuring Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/Wellpath. The Post-Restructuring Debtors' service address for these chapter 11 cases is 3340 Perimeter Hill Drive, Nashville, Tennessee 37211.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Confirmation Order, the Extension Order, or the *First Amended Joint Chapter 11 Plan of Reorganization of Wellpath Holdings, Inc. and Certain of its Debtor Affiliates (with Technical Modifications)* (as modified, amended, or supplemented from time to time, the "Plan"), a copy of which is attached as Exhibit A to the Confirmation Order. The rules of interpretation set forth in Article I.B of the Plan shall apply hereto. For the avoidance of doubt, unless otherwise specified, all references herein to "Articles" refer to articles of the Plan.

against the Debtors are limited by the injunction resulting from the discharge outlined in paragraph 3 below as well as the injunction outlined in Article IX.F. of the Plan. To the extent holders of Claims did not or do not timely elect to opt out of the third-party releases contained in the Plan, the injunction outlined in Article IX.F applies to claims against Non-Debtor Defendants who meet the definition of "Released Parties" in the Plan.

3. As set forth in Article IX.A of the Plan, all Claims and Causes of Action of any nature whatsoever against the Debtors are discharged. The distributions, rights, and treatment that are provided in the Plan are in complete satisfaction of such Claims and Causes of Action.

4. Holders of personal injury tort and wrongful death Claims against the Debtors are subject to the Trust Distribution Procedures ("TDPs"), including the non-binding alternative dispute resolution process set forth therein to determine, if necessary, the allowed amount for their Claim. Such holders of personal injury tort and wrongful death claims may also seek determinations of the Debtors' liability by the appropriate civil court pursuant to 28 U.S.C. § 157(b)(5) with the Liquidating Trust as a nominal party (a) to the extent such inclusion is necessary to recover against available third-party insurance proceeds or an unreleased Non-Debtor Defendant, or (b) to establish or liquidate the amount of their claim for distribution under the Plan from the Liquidating Trust; *provided*, *however*, outside of the Pro Rata distribution from the Liquidating Trust as well as recovery from any applicable insurance plan, the Holders of such claims may not seek satisfaction of, and are permanently enjoined from seeking payment of, any judgment, award, settlement, claim, distribution, indemnification right, or any other payment amount resulting from their lawsuit from, or in connection with, the Debtors, the Debtors' estates, or the Post-Restructuring Debtors.

5. Holders of Claims or Interests that affirmatively elected to opt out of the Plan's Third-Party Release may bring or continue to pursue claims against all Non-Debtor Defendants, including employees of the Debtors and/or Post-Restructuring Debtors. Such holders of Claims and Interests remain enjoined from enforcing recovery from the Debtors, the Debtors' estates, or the Post-Restructuring Debtors with respect to any indemnification obligations for such employees; provided, that nothing shall prevent the Post-Restructuring Debtors from electing to honor such indemnification rights pursuant to the provisions of the Plan.

6. Pursuant to Article IX of the Plan, each Holder of a Claim or Interest that did not affirmatively elect to opt out of the Plan's Third-Party Release may not bring Claims that arose prior to the Petition Date (*i.e.*, before November 11, 2024) against the non-Debtor Released Parties (including, the Debtors' past and present directors, officers, and employees (to the extent that they were acting within the scope of their employment) and H.I.G. Capital, LLC and its affiliates, directors, officers, and employees); *provided*, pursuant to paragraph 43 of the Confirmation Order, each Holder of a Claim that is or was an incarcerated individual has until **11:59 p.m. (prevailing Central Time) on July 30 , 2025** (*i.e.*, 90 days after the Confirmation Date) to opt out from the Third-Party Release set forth in Article IX.D of the Plan. For the avoidance of doubt, the deadline has already passed for all other parties to opt out of the Third-Party Release.

7. Nothing in this Order shall prevent a party from requesting a hearing with this Court by contacting the Court's case manager by email at Tyler_Laws@txs.uscourts.gov or by phone at (713) 250-5421.

8. For the avoidance of doubt, cases filed before the Petition Date against the Professional Corporations, the Professional Corporations' current and former employees, and the

Debtors' customers and clients may now proceed because these parties were not released under the Plan and the automatic stay no longer remains in effect as to the Non-Debtor Defendants.

9. No disposition or, or determination of any question of fact or law in the course of the disposition of, any claim against a non-Debtor or in any proceeding nominally against one or more Debtor but limited solely to such Debtor(s)' insurance coverage (collectively, a "Non-Bankruptcy Proceeding"), shall dispose of, constitute *res judicata* in respect of, estop the creditor from asserting any basis of allowance, estop the Liquidating Trust from asserting any basis of disallowance of, or in itself form all or part of the basis for excusable neglect for the failure to file, any Claim arising from the same or related alleged acts or omissions.

10. To the extent any inconsistency may exist between paragraphs 3-6 of this Order and the Plan, the Plan shall govern in all respects.

Signed: June 04, 2025

Alfredo R Pérez
United States Bankruptcy Judge